Yolanda Huang (State Bar No. 104543)
LAW OFFICES OF YOLANDA HUANG
2748 Adeline Street, Suite A
Berkeley, California 94703
Telephone:     (510) 329-2140
Facsimile:     (510) 580-9410
E-Mail:        yhuang.law@gmail.com

Mark E. Merin (State Bar No. 043849)
Paul H. Masuhara (State Bar No. 289805)
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone:     (916) 443-6911
Facsimile:     (916) 447-8336
E-Mail:        mark@markmerin.com
               paul@markmerin.com

Attorneys for Plaintiffs
ESTATE OF JESUS ERIC MAGANA
and JESUS MAGANA DUARTE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ESTATE OF JESUS ERIC MAGANA and JESUS MAGANA DUARTE, <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC & WELLPATH MANAGEMENT, INC., also known as LIQUIDATING TRUST, a nominal party, RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20, <br><br> Defendants. | Case No. 3:24-cv-04716-JD <br><br> **FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS** <br><br> **DEMAND FOR JURY TRIAL** |

1

## INTRODUCTION

26-year-old JESUS ERIC MAGANA was arrested and booked into the Santa Rita Jail in the custody of the ALAMEDA COUNTY SHERIFF'S OFFICE and placed under the care and supervision of the jail's staff, including contracted medical provider CALIFORNIA FORENSIC MEDICAL GROUP doing-business-as WELLPATH. JESUS ERIC MAGANA's health rapidly deteriorated and the jail's staff were deliberately indifferent to his serious medical needs. On April 27, 2023, JESUS ERIC MAGANA was found by inattentive jail staff unresponsive in his cell and subsequently died.

## JURISDICTION & VENUE

1.      This Court has jurisdiction of the federal claims under 28 U.S.C. § 1331 (in that they arise under the United States Constitution) and 28 U.S.C. § 1343(a)(3) (in that the action is brought to address deprivations, under color of state authority, of rights, privileges, and immunities protected by the U.S. Constitution). This Court has supplemental jurisdiction of the state claims under 28 U.S.C. § 1367.

2.      Venue is proper in the United State District Court for the Northern District of California pursuant to 28 U.S.C. § 1391(b) because Defendants are located in the Northern District of California and a substantial part of the events or omissions giving rise to the action occurred in the Northern District of California.

3.      Intradistrict venue is proper in the San Francisco Division or the Oakland Division of the Northern District of California pursuant to Civil Local Rule 3-2(d) because a substantial part of the events or omissions giving rise to the action occurred in the County of Alameda, California.

## EXHAUSTION

4.      On October 10, 2023, the ESTATE OF JESUS ERIC MAGANA, through special representative Zachary Young, and JESUS MAGANA DUARTE submitted a timely and substantially compliant government claim relating to the claims asserted in this action to the COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE pursuant to California Government Code § 910 *et seq*.

5.      By November 27, 2023, the COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE failed or refused to act on the government claim pursuant to California Government Code § 912.4.

2

## PARTIES

6.     Plaintiff ESTATE OF JESUS ERIC MAGANA appears by and through the decedent JESUS ERIC MAGANA's personal representative and court-appointed administrator of the estate, Zachary Young, pursuant to California Code of Civil Procedure § 377.30. *In re Estate of Jesus Eric Magana*, No. 23 PR 046288 (Cal. Super. Ct., Alameda County).

7.     Plaintiff JESUS MAGANA DUARTE is a resident of Mexico, State of Michoacán, Municipality of Tangancícuaro. Plaintiff JESUS MAGANA DUARTE is the biological father of JESUS ERIC MAGANA. Plaintiff JESUS MAGANA DUARTE brings this action on behalf of himself, in an individual capacity.

8.     Defendant COUNTY OF ALAMEDA is located in the State of California. Defendant COUNTY OF ALAMEDA is a "public entity," pursuant to California Government Code § 811.2.

9.     Defendant ALAMEDA COUNTY SHERIFF'S OFFICE is located in the State of California, County of Alameda. Defendant ALAMEDA COUNTY SHERIFF'S OFFICE is a "public entity," pursuant to California Government Code § 811.2.

10.     Defendant YESENIA SANCHEZ is and was, at all times material herein, a law enforcement officer and the Sheriff for Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE, acting under color of state law and within the scope of employment. Defendant YESENIA SANCHEZ is sued in an individual capacity.

11.     Defendant ERIK BAKER is and was, at all times material herein, a law enforcement officer employed by Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE, acting under color of state law and within the scope of employment. Defendant ERIK BAKER is sued in an individual capacity.

12.     Defendant ZACHARY TSANG-LEE is and was, at all times material herein, a law enforcement officer employed by Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE, acting under color of state law and within the scope of employment. Defendant ZACHARY TSANG-LEE is sued in an individual capacity.

13.     Defendant PETER CANDELARIO is and was, at all times material herein, a law enforcement officer employed by Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY

3

SHERIFF'S OFFICE, acting under color of state law and within the scope of employment. Defendant PETER CANDELARIO is sued in an individual capacity.

14. Defendant LUIS MARTINEZ, substituted in for Doe 1, is and was, at all times material herein, a law enforcement officer employed by Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE, acting under color of state law and within the scope of employment. Defendant LUIS MARTINEZ is sued in an individual capacity.

15. Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC. is a California corporation licensed to and doing business in the State of California as a contracted provider of healthcare/medical services to Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and YESENIA SANCHEZ's jail facilities.

16. WELLPATH LLC is a Delaware corporation doing business in the State of California as a contracted provider of healthcare/medical services to Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and YESENIA SANCHEZ's jail facilities.

17. Defendant WELLPATH MANAGEMENT, INC. is a Delaware corporation doing business in the State of California as a contracted provider of healthcare/medical services to Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and YESENIA SANCHEZ's jail facilities.

18. WELLPATH HOLDINGS, INC. filed for bankruptcy under Chapter 11, in November, 2024. (Case No. 24-90533 (ARP). A bankruptcy plan was approved and substantially consummated on May 9, 2025 (the "effective Date"), and "[h]olders of personal injury tort and wrongful death Claims against the Debtors are subject to the Trust Distribution Procedures….Such holders of personal injury tort and wrongful death claims" are permitted to proceed "with the Liquidating Trust as a nominal party…." for the purpose of liquidating "the amount of their claim….." Therefore, plaintiffs have amended to denote WELLPATH LLC and WELLPATH MANAGEMENT, INC. as the "Liquidating Trust."

19.

20. Defendant RAJENDRA MAHAJAN is and was, at all times material herein, a doctor of medicine (MD) employed by Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC.,

4

WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC., and contracted by Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE, acting under color of state law and within the scope of employment. Defendant RAJENDRA MAHAJAN is sued in an individual capacity.

21.     Defendant SUMEET CHAGGER is and was, at all times material herein, a registered nurse (RN) employed by Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC., and contracted by Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE, acting under color of state law and within the scope of employment. Defendant SUMEET CHAGGER is sued in an individual capacity.

22.     Defendant HARKAMALJIT HUNDAL is and was, at all times material herein, a registered nurse (RN) employed by Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC., and contracted by Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE, acting under color of state law and within the scope of employment. Defendant HARKAMALJIT HUNDAL is sued in an individual capacity.

23.     Defendants DOE 2 to 20 are and/or were agents, contractors, or employees of Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC., acting under color of state law and within the scope of agency or employment. Defendants DOE 1 to 20 are sued by fictitious names, where their true and correct identities will be substituted when ascertained.

## GENERAL ALLEGATIONS

24.     At all times relevant herein, all wrongful acts described were performed under color of state law and/or in concert with or on behalf of those acting under the color of state law.

25.     JESUS ERIC MAGANA was 26 years old when he died on April 27, 2023.

### County of Alameda

26.     Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and YESENIA SANCHEZ operate and manage jail facilities, including the Santa Rita Jail located in

5

1    Dublin, California.

2         27.    Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE,

3    and YESENIA SANCHEZ are responsible for the actions and/or inactions and the policies and customs

4    of their employees and agents, including responsibilities for ensuring the provision of emergency and

5    basic healthcare/medical services to all inmates at the Santa Rita Jail.

6         28.    Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE,

7    and YESENIA SANCHEZ have authority to make contracts, to provide for jails and corrections, and to

8    operate and/or be responsible for county health facilities including jails through contracts, joint ventures,

9    or partnerships.

10        29.    Effective August 2016, Defendant COUNTY OF ALAMEDA entered into a contract with

11   Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or

12   WELLPATH MANAGEMENT, INC. (acquired by H.I.G. CAPITAL, LLC in January 2013; rebranded

13   WELLPATH in October 2018) to provide through its employees, agents, and representatives

14   healthcare/medical services to inmates in Defendants COUNTY OF ALAMEDA and ALAMEDA

15   COUNTY SHERIFF'S OFFICE's jail facilities including the Santa Rita Jail.

16        30.    Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC,

17   and/or WELLPATH MANAGEMENT, INC. provide a governmental function and stand in the same

18   capacity as Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE in

19   carrying out duties and providing healthcare/medical services to inmates in jail facilities including the

20   Santa Rita Jail.

21        31.    Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE,

22   and YESENIA SANCHEZ, jointly with Defendants CALIFORNIA FORENSIC MEDICAL GROUP,

23   INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC., are and were responsible for

24   developing joint policies and procedures relating to healthcare/medical services to inmates in jail

25   facilities including the Santa Rita Jail, from the time detainees are booked until they are released from

26   custody.

27        32.    Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE,

28   and YESENIA SANCHEZ are responsible for overseeing that Defendants CALIFORNIA FORENSIC

6

MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC.'s staff complies with their contractual duties and responsibilities to provide healthcare/medical services to inmates in jail facilities including the Santa Rita Jail.

33.     Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC. contracts with Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE to provide healthcare/medical services for inmates in Santa Rita Jail through a global capitation contract. The global capitation contract covering Santa Rita Jail is large and expensive (between $34,000,000 and $45,000,000 million in 2023) relative the small size of the inmate population in Santa Rita Jail (approximately between 1,500 and 1,600 inmates). The global capitation contract stipulates a fixed amount paid to Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC. to provide a comprehensive range of healthcare/medical services for inmates. The final payment is dependent on the size of the inmate population and is structured so that at lower numbers of inmates, the contract is much more expensive to Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE in terms of payment-per-inmate. The contract renewal in 2022, provided that the annual amount of the contract was $26,342,098. On information and belief, if the average annual payment-per-inmate was at the lowest threshold of 1,900 patients, the payment-per-inmate was approximately $13,846—or, more than double the average annual cost of care for a Medi-Cal enrollee ($7,929).

34.     The 2020–2021 Alameda County Grand Jury Report detailed that Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC.'s medical director who worked at Santa Rita for five years had her employment terminated in August 2020 for improper use of jail prescription pads to self-prescribe medication. Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE failed to observe the on-the-job use of illicit drugs by a senior medical team member, and Santa Rita Jail officials were unaware of the incident until 24 hours before the medical director's termination.

35.     The 2020–2021 Alameda County Grand Jury Report also noted that 20% of all grievances filed by inmates at Santa Rita Jail pertained to medical care, and noted demand for medical care exceeded available capacity. The Grand Jury further noted that although the contract required minimum

7

staffing by job function and a low error rate across quality audits, Defendant ALAMEDA COUNTY SHERIFF'S OFFICE had failed to pursue penalties in each instance when contract requirements were not met.

36.     Commencing in 2021, Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE initiated a monthly, independent quality assessment of health care provided to inmates through contract with the Forvis Mazars auditing group. Per the monthly assessments by Mazars, Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC. failed to meet the contract compliance specifications in the majority of criteria, and frequently on a month-to-month basis had declining compliance rather than improving compliance.

37.     Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE assign a lieutenant to be a contract compliance manager for Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC.'s healthcare/medical services. From 2021 through 2024, none of the assigned contract compliance managers has a college degree; none is trained in biology, medicine, medical systems, or any other science field; and none has training in law or contract enforcement. Due to the lack of subject matter competency and contract oversight ability, Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE failed to perform any meaningful oversight or contract compliance regarding Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC.'s contract. On information and belief, Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE failed to engage in active or meaningful contract compliance review or enforcement related to Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC.'s healthcare/medical services, including for inmates housed at the Santa Rita Jail.

**H.I.G. Capital aka California Forensic Medical Group dba Wellpath**

38.     Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC. has also been known as CORRECTIONAL MEDICAL GROUP COMPANIES, INC. since 2013. H.I.G. CAPITAL, LLC acquired Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC. rebranding its name under

the umbrella of CORRECTIONAL MEDICAL GROUP COMPANIES, INC. in 2013.

39.     Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC. has also been known as WELLPATH LLC and/or WELLPATH MANAGEMENT, INC. since October 1, 2018. On October 1, 2018, H.I.G. CAPITAL, LLC announced acquisition and the joining of forces between CORRECTIONAL MEDICAL GROUP COMPANIES, INC. and CORRECT CARE SOLUTIONS, LLC creating a partnership with management and rebranding as "WELLPATH."

40.     Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC. were and are owned and controlled by H.I.G. CAPITAL, LLC.  In November WELLPATH HOLDINGS, INC., et al filed a bankruptcy action in the Southern District of Texas, Action No. 24-90533.  A final plan was approved on May 1, 2025.  As part of the final plan, the plaintiffs in this case filed an opt out, permitting them to continue with this litigation as to all non-debtor defendants, including individual defendants, and as to the Liquidating Trust.  In all places where the First Amended Complaint mentions or refers to WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC, for the purposes of this litigation, the Liquidating Trust is the stand in entity for these Wellpath entities.

41.      Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC. act on behalf of H.I.G. CAPITAL, LLC were and are responsible for the hiring, retaining, training, and supervising of the conduct, policies and practices of employees and agents of Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC.

42.     H.I.G. CAPITAL, LLC acquired Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC. in 2013 and rebranded its name to CORRECTIONAL MEDICAL GROUP COMPANIES, INC. H.I.G. CAPITAL, LLC is the owner, manager, and partner of Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC.

43.     Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC.'s executives, directors, supervisors and managers, physicians, nurses, licensed vocational nurses, health providers act on behalf of H.I.G. CAPITAL, LLC.

9

44. H.I.G. CAPITAL, LLC is the alter ego of Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC., and vice versa.

45. H.I.G. CAPITAL, LLC places its in-house professionals as board members of Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC. to ensure control, unity of interest, ownership, and lack of separate personalities between H.I.G. CAPITAL, LLC and Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC. and their employees and agents.

46. H.I.G. CAPITAL, LLC places at least two managing directors and one principal of its private equity team as board members, chief financial officers, or other executive officers for Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC., ensuring continuity of financial and practical control and management.

47. H.I.G. CAPITAL, LLC uses Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC. as a shell, instrumentality, or conduit to financially profit from providing mental/medical care to inmates/prisoners.

48. Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC. are engaged in the practice of medicine. California law prohibits the corporate practice of medicine, and requires that healing arts practitioners have control over decisions regarding, *inter alia*, inventory, supplies, design specifications for offices, financial aspects of the practice, choice of laboratory, and treatment decisions. On information and belief, decisions required to be made by healing arts practitioners are controlled and made by corporate interests, Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC.'s decisions focus on the profitability of business enterprise rather than the quality of healthcare/medical services provided to inmates.

### Arrest & Booking

49. On March 28, 2023, Livermore Police Department crime prevention officer Tim Ford arrested JESUS ERIC MAGANA on suspicion of committing a burglary on March 18, 2023.

50. JESUS ERIC MAGANA was booked as a pre-trial detainee into the Santa Rita Jail, in the

10

custody of Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and YESENIA SANCHEZ.

51.     JESUS ERIC MAGANA was identified by jail staff as a Behavioral Health Inmate (BHI) and classified for housing in Step 1 of the Restrictive Housing Unit (RHU).

### Restrictive Housing Unit

52.     The RHU is reserved for those inmates whose presence in the general population poses a serious threat to life, property, self, staff, other inmates, or to the security or orderly running of the facility. The RHU is separated into two categories: Step 1 and Step 2. RHU inmates initially begin with a Step 1 designation and thereafter may progress to Step 2. Inmates are designated as Step 1 if they present an immediate and serious danger such that no reasonable alternative housing is possible. Step 1 inmates are housed and recreate alone in isolation. Step 2 inmates are housed alone but are permitted to recreate in groups.

53.     On April 26, 2023, JESUS ERIC MAGANA was ill inside of his cell, 1-D-09.

54.     JESUS ERIC MAGANA's cell was littered with trash including on the floor and desk of his cell.

55.     At about 4:47 p.m., Zachary Gilkerson, a deputy sheriff, observed the trash which littered JESUS ERIC MAGANA's cell. Zachary Gilkerson ordered JESUS ERIC MAGANA to pick-up and throw-away the trash in his cell into a garbage can located in the cell.

56.     JESUS ERIC MAGANA "refused" because he was too ill to pick-up and throw-away the trash which had accumulated in his cell.

57.     On April 27, 2023, around 10:12 a.m., Defendant ERIK BAKER, a deputy sheriff, was serving lunch to inmates in the area of the jail in which JESUS ERIC MAGANA was housed.

58.     Defendant ERIK BAKER was informed by an inmate that JESUS ERIC MAGANA was "projectile vomiting" inside of his cell.

59.     Defendant ERIK BAKER approached JESUS ERIC MAGANA's cell. Defendant ERIK BAKER observed that the "cell floor was covered in a wet substance and it appeared to be vomit" and that JESUS ERIC MAGANA wore "no shoes on his feet and the bottom of his pants were wet."

60.     Defendant ERIK BAKER asked JESUS ERIC MAGANA if he was "ok and if he was

11

feeling well." JESUS ERIC MAGANA "shook his head side to side in a 'no' gesture."

61.     Defendant ERIK BAKER and asked JESUS ERIC MAGANA "if he had been throwing up." JESUS ERIC MAGANA responded by "nodding his head [']yes.[']"

62.     Defendant ERIK BAKER told JESUS ERIC MAGANA that he "would contact a nurse to check on him."

63.     Defendant ERIK BAKER failed to contact a nurse to check on JESUS ERIC MAGANA's condition.

64.     At around 10:35 a.m., Defendant ERIK BAKER observed JESUS ERIC MAGANA "projectile vomiting" inside of his cell.

65.     Defendant ERIK BAKER again told JESUS ERIC MAGANA that he "would contact a nurse."

66.     Defendant ERIK BAKER again failed to contact a nurse to check on JESUS ERIC MAGANA's condition.

67.     Defendant ERIK BAKER failure to notify and summon medical staff to determine whether JESUS ERIC MAGANA's presentation indicated the need for medical treatment exhibited deliberate indifference to JESUS ERIC MAGANA's serious medical needs, including a heightened risk of illness and death, where he made an intentional decision with respect to JESUS ERIC MAGANA's ongoing medical condition which put him at substantial risk of suffering serious harm, and he did not take reasonable available measures to abate that risk, including by timely notifying medical staff of JESUS ERIC MAGANA's serious medical needs, where a reasonable officer in the circumstances would have appreciated the high degree of risk involved, including the "projectile vomiting" exhibited by JESUS ERIC MAGANA.

68.     Defendants ERIK BAKER failed to utilize appropriate policies, training, standards, and procedures, including California Commission on Peace Officer Standards and Training ("POST") Learning Doman 31 (Custody).

69.     At about 10:38 a.m., Defendant ERIK BAKER called Zachary Gilkerson, told him that he observed JESUS ERIC MAGANA "projectile vomiting" inside of his cell, and asked him to come to the cell.

12

70.     Zachary Gilkerson responded to JESUS ERIC MAGANA's cell.

71.     Zachary Gilkerson observed that the floor and toilet of the cell was "covered in a clear liquid" and the cell remained littered with trash which he had ordered JESUS ERIC MAGANA to pick-up and throw-away on the previous day.

72.     Zachary Gilkerson notified Luis Martinez, a sergeant supervisor, that JESUS ERIC MAGANA had a medical condition which required attention.

73.     At about 10:40 a.m., Luis Martinez responded to JESUS ERIC MAGANA's cell.

74.     Luis Martinez and Zachary Gilkerson watched as JESUS ERIC MAGANA "continuously" drank "copious amounts of water while vomiting," including about 15-to-20 cups of water from the sink inside of his cell. Zachary Gilkerson reported that it was possible JESUS ERIC MAGANA drank even more water because he was "unsure how much water [JESUS ERIC MAGANA] drank prior to this moment" that he personally observed.

75.     Luis Martinez observed a "copious amount of water mixed [] with what [he] believed to be vomit" on the floor of JESUS ERIC MAGANA's cell including "vomit in and around [the cell's] toilet."

76.     Luis Martinez asked JESUS ERIC MAGANA "how he was doing and what was going on." JESUS ERIC MAGANA "said he was throwing up."

77.     Luis Martinez observed that JESUS ERIC MAGANA's clothes were wet and "soiled from his vomit."

78.     Par Kaur, a registered nurse (RN), arrived at JESUS ERIC MAGANA's cell.

79.     Luis Martinez informed Par Kaur that JESUS ERIC MAGANA "had been projectile vomiting."

80.     JESUS ERIC MAGANA continued drinking water from the sink in his cell using a cup.

81.     Zachary Gilkerson commanded JESUS ERIC MAGANA, "Stop drinking so much water!" JESUS ERIC MAGANA "did not comply."

82.     Luis Martinez asked JESUS ERIC MAGANA, "What's going on?" JESUS ERIC MAGANA "did not respond."

83.     Luis Martinez asked the deputy sheriffs present if JESUS ERIC MAGANA "was

13

purposefully drinking water."

84.     Zachary Gilkerson responded, "He is doing that consistently until he throws up."

85.     Luis Martinez stated his concern to Par Kaur that "a person could 'actually die' from drinking too much water."

86.     Psychogenic polydipsia (PPD), or water intoxication, is used to describe compulsive water drinking. Generally, the condition causes an uncontrolled need to drink huge volumes of water which dilutes necessary electrolytes, especially sodium. The condition generally develops in three phases: first, polydipsia (excessive thirst) and polyuria (excessive urine production); second, hyponatremia (water is retained as the kidneys fail to excrete the excess fluid, resulting in low sodium serum values, and dysfunction of the central nervous system with cerebral edema); and third, water intoxication which may manifest as nausea, vomiting, delirium, ataxia, seizures, coma, or death.

87.     An association between polydipsia and psychiatric disorders, especially schizophrenia, is well-established.  Jesus Eric Magana was diagnosed with schizophrenia, which is noted in his Wellpath medical records.  Between 11 to 20% of patients with schizophrenia have associated psychogenic polydipsia.  Of patients with this association, 20% will develop severe hyponatremia.

88.     Par Kaur looked inside JESUS ERIC MAGANA's cell and "noticed the vomit on the floor and [JESUS ERIC MAGANA] drinking water." Par Kaur witnessed JESUS ERIC MAGANA rapidly drink 15 to 20 eight (8) ounce cups of water.  Par Kaur asked JESUS ERIC MAGANA if he was "ok." JESUS ERIC MAGANA did not respond.

89.     Luis Martinez stated, "We gotta get him out of there. He has to stop drinking all that water." Par Kaur responded, "I know."

90.     JESUS ERIC MAGANA "continued drinking water."

91.     Luis Martinez ordered that the water supply inside of JESUS ERIC MAGANA's cell be shut-off.

92.     Zachary Gilkerson walked to the control tower and a technician turned-off the water supply in the cell.

93.     Luis Martinez provided JESUS ERIC MAGANA with clean and dry clothing, including pants, shirt, boxers, and socks. JESUS ERIC MAGANA changed into the clean and dry clothing.

14

94.    Luis Martinez advised Par Kaur that JESUS ERIC MAGANA should be housed in the Outpatient Housing Unit (OPHU) where he could be medically observed by a doctor. Par Kaur agreed and asked custody staff to transport JESUS ERIC MAGANA to the OPHU.

**Outpatient Housing Unit**

95.    The OPHU is reserved for inmates requiring acute and chronic medical care. Inmates housed in the OPHU are subject to safety checks every 30 minutes.

96.    At about 10:45 a.m., custody staff applied restraints to JESUS ERIC MAGANA's arms, waist, and legs and secured him in a wheelchair.

97.    At around 10:50 a.m., Luis Martinez, Christopher Krol, Shaun Williams, and Zachary Gilkerson transported JESUS ERIC MAGANA by wheelchair to the OPHU.

98.    When he arrived at the OPHU, JESUS ERIC MAGANA's "body began shaking as if he was cold."

99.    Par Kaur telephoned Defendant RAJENDRA MAHAJAN, a doctor of medicine (MD), and informed him that JESUS ERIC MAGANA "had been projectile vomiting in his cell."

100.    At about 10:52 a.m., Defendant RAJENDRA MAHAJAN arrived. Par Kaur "brief[ed]" Defendant RAJENDRA MAHAJAN on JESUS ERIC MAGANA's condition including stating: "He had vomit all over his cell. But he was forcefully drinking water -- at least 15 to 20 cups, I saw him. So, he didn't say anything over there."

101.    Defendant RAJENDRA MAHAJAN asked JESUS ERIC MAGANA "if it started this morning." JESUS ERIC MAGANA "nodded ['[yes[']".

102.    Defendant RAJENDRA MAHAJAN asked Par Kaur "how many times [JESUS ERIC MAGANA] vomited." Par Kaur responded, "Deputies saw him projectile vomiting" and that she observed "Everything was vomit, water on the floor."

103.    Defendant RAJENDRA MAHAJAN asked JESUS ERIC MAGANA "if he had ingested any drugs or alcohol." JESUS ERIC MAGANA responded, "No."

104.    JESUS ERIC MAGANA exhibited several severe symptoms of over-hydration and water intoxication, including compulsive fluid consumption, nausea and vomiting, confusion, difficulty walking or balancing, and drowsiness.

15

105. Defendant RAJENDRA MAHAJAN ordered JESUS ERIC MAGANA receive a shot of Ondansetron, a medication used to prevent nausea and vomiting. Par Kaur administered the shot into JESUS ERIC MAGANA.

106. At about 10:55 a.m., Defendant RAJENDRA MAHAJAN admitted JESUS ERIC MAGANA into the OPHU "for a four[-]hour medical observation due to [his] being nauseous."

107. Following the appointment, Defendant RAJENDRA MAHAJAN reported: "Subjective … : 27 yus old male booked 3/28/23 and hosed in HU #1 with hx of severe psychiatric history and violent aggressive and impulsive with hx of attacking deputy, was seen to be vomiting all over cell and was brought to trauma room when seen he was awake alert oriented x3 (spanish speaking) in wheel chair vitals normal not in any distress or discomfort was non toxic sitting quietly in chair with hand cuffed on asking said had 5 projectile vomitings since am to day denied eating new food or left overs no blood in vomiting and no abd pain or tenderness and denied any diarrhea sob cough chest pain fever chills ha dizziness"; "Objective … : vitals normal BP 133/96 rr 16 temp 98.7 hr 96 and pulse ox 98 % has no distress breathing quietly awake alert orientedx3 HEENT : Head AT NV. eyes PERRLA, normal eom no focal facial sensory motor loss no nasal or ear bleeding/discharge no icterus CVS tachycardia rest unremarkable RS; CTA abdomen : soft NT ND BS normal no mass or guarding Beuro normal by observation no focal deficits noted psych : quiet at present but hx of psychosis"; "Assessment … : 1) acute gastritis with vomiting 2) severe mental health issues 3) high safety risk"; "Plan …: 1) IM Zofran 4 mg given 2) Advised to take gatorade 3 time /day keep hydrated 3) patient refused protonix /mylanta 4) will observe for 4 hrs in OPHU and if stable will transfer him back to HU"; and "Education … : cooperate keep calm drink fluids."

108. Defendant RAJENDRA MAHAJAN failed to conduct a proper medical screening of JESUS ERIC MAGANA to ensure initiation of the medically appropriate protocols for PPD/water intoxication. Defendant RAJENDRA MAHAJAN's actions and inactions were medically unacceptable under the circumstances, for example, where he ignored the reports that JESUS ERIC MAGANA had been observed drinking 15 to 20 8 ounce cups of water, and failed to detect the several severe symptoms of PPD/water intoxication exhibited by JESUS ERIC MAGANA, "[a]dvised [JESUS ERIC MAGANA] to take gatorade 3 time /day keep hydrated" and "drink fluids,", failed to consult with mental health

16

experts, and failed to follow-up or to supervise JESUS ERIC MAGANA's condition.

109.     Defendant RAJENDRA MAHAJAN's failure to provide necessary care and monitoring exhibited deliberate indifference to JESUS ERIC MAGANA's serious medical needs, including a heightened risk of illness and death, where he made an intentional decision with respect to JESUS ERIC MAGANA's ongoing medical condition which put him at substantial risk of suffering serious harm, and she did not take reasonable available measures to abate that risk, including consultation with more skilled medical personnel who could diagnose and/or treat PPD/water intoxication; referral or transfer to a hospital or facility with the resources to provide adequate care; and/or increased and more probing patient monitoring and supervision, and a reasonable official in the circumstances would have appreciated the high degree of risk involved, including the several severe symptoms of over-hydration and water intoxication recently exhibited by JESUS ERIC MAGANA.

110.     Defendant RAJENDRA MAHAJAN failed to utilize appropriate policies, training, standards, and procedures, including:

(a)     National Commission on Correctional Health Care's Standards for Health Services in Jails ("NCCHC") Standard J-B-07 (Communication on Patients' Health Needs); Standard J-D-08 (Hospitals and Specialty Care); Standard J-E-01 (Patient Care and Treatment); Standard J-E-09 (Continuity, Coordination, and Quality of Care During Incarceration); Standard J-F-01 (Patients with Chronic Disease and Other Special Needs); Standard J-F-04 (Medically Supervised Withdrawal and Treatment); and Standard J-G-02 (Segregated Inmates).

(b)     Institute for Medical Quality ("IMQ") Standard 109 (Decision Making – Special Needs); Standard 110 (Transfer of Inmates with Acute Illness); Standard 304 (Access to Treatment); Standard 319 (Continuity of Care); Standard 320 (Monitoring of Patients in Segregation); Standard 322 (Hospital Care); and Standard 328 (Health Maintenance).

(c)     American Correctional Association ("ACA") Standard 4-ALDF-2A-45, 4-ALDF-2A-53, 4-ALDF-2A-55, 4-ALDF-2A-56 (Special Management Patients); Standard 4-ALDF-4C-01 (Access to Care); Standard 4-ALDF-4C-04 (Continuity of Care); Standard 4-ALDF-4C-05 (Referrals); Standard 4-ALDF-4C-07 (Treatment Plan); Standard 4-ALDF-4C-19 (Chronic Care); Standard 4-ALDF-4D-12 (Notifications); Standard 4-ALDF-4D-14 (Information Sharing); Standard 4-ALDF-4D-20

17

(Transfer); Standard 4-ALDF-4C-22 (Health Screens); and Standard 4-ALDF-4C-36 (Detoxification).

(d)     Wellpath Policies & Procedures ("Wellpath") Policy HCD-110_A-01 (Access to Care); Policy HCD-110_B-07 (Communications on Patients' Health Needs); Policy HCD-110_D-08 (Hospitals and Specialty Care); Policy HCD-110_E-09 (Continuity, Coordination, and Quality of Care During Incarceration); Policy HCD-110_F-01 (Patients with Chronic Disease and Other Special Needs); and Policy HCD-110_G-02 (Segregated Inmates).

111.    At about 11:05 a.m., Defendants ZACHARY TSANG-LEE and PETER CANDELARIO, deputy sheriffs assigned to the OPHU, and Zachary Gilkerson and Christopher Krol, deputy sheriffs assigned to the RHU, transported JESUS ERIC MAGANA to the OPHU and confined him in a medical observation cell, OPHU-WEST-11.

112.    JESUS ERIC MAGANA was "placed on the bed face down" in the cell and the restraints were removed from his arms, waist, and legs.

113.    At about 11:09 a.m., Defendant SUMEET CHAGGER, a registered nurse (RN), along with Defendants ZACHARY TSANG-LEE and PETER CANDELARIO, attempted to speak with JESUS ERIC MAGANA. JESUS ERIC MAGANA did not respond.

114.    After he was transferred to the OPHU, JESUS ERIC MAGANA's condition continued to deteriorate and he was experiencing medical distress including loss of consciousness.

115.    Defendants ZACHARY TSANG-LEE, PETER CANDELARIO, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20 were responsible for monitoring and supervising JESUS ERIC MAGANA including his observed medical condition. Defendants ZACHARY TSANG-LEE, PETER CANDELARIO, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20 failed to observe and detect JESUS ERIC MAGANA's immediate medical needs, including loss of consciousness.

116.    Defendants ZACHARY TSANG-LEE, PETER CANDELARIO, and DOE 1 to 20's failure to conduct direct-view safety checks sufficient to determine whether JESUS ERIC MAGANA's presentation indicated the need for medical treatment exhibited deliberate indifference to JESUS ERIC MAGANA's serious medical needs, including a heightened risk of illness and death, where they made an intentional decision with respect to JESUS ERIC MAGANA's ongoing medical condition which put him

18

at substantial risk of suffering serious harm, and they did not take reasonable available measures to abate that risk, including by timely and sufficient direct-view safety checks, where a reasonable officer in the circumstances would have appreciated the high degree of risk involved, including the several severe symptoms of over-hydration and water intoxication recently exhibited by JESUS ERIC MAGANA.

117. Defendants ZACHARY TSANG-LEE, PETER CANDELARIO, and DOE 1 to 20 failed to utilize appropriate policies, training, standards, and procedures, including California Commission on Peace Officer Standards and Training ("POST") Learning Doman 31 (Custody).

118. Defendants SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20 failed to conduct a proper medical screening of JESUS ERIC MAGANA to ensure initiation of the medically appropriate protocols for PPD/water intoxication. Defendants SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20's actions and inactions were medically unacceptable under the circumstances, for example, where they ignored or failed to detect the several severe symptoms of PPD/water intoxication exhibited by JESUS ERIC MAGANA, and failed to follow-up or to supervise JESUS ERIC MAGANA's condition.

119. Defendants SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20's failure to provide necessary care and monitoring exhibited deliberate indifference to JESUS ERIC MAGANA's serious medical needs, including a heightened risk of illness and death, where they made an intentional decision with respect to JESUS ERIC MAGANA's ongoing medical condition which put him at substantial risk of suffering serious harm, and they did not take reasonable available measures to abate that risk, including consultation with more skilled medical personnel and/or mental health personnel who could diagnose and/or treat PPD/water intoxication; referral or transfer to a hospital or facility with the resources to provide adequate care; and/or increased and more probing patient monitoring and supervision, and a reasonable official in the circumstances would have appreciated the high degree of risk involved, including the several severe symptoms of over-hydration and water intoxication recently exhibited by JESUS ERIC MAGANA.

120. Defendants SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20 failed to utilize appropriate policies, training, standards, and procedures, including:

(e)     National Commission on Correctional Health Care's Standards for Health Services

19

in Jails ("NCCHC") Standard J-B-07 (Communication on Patients' Health Needs); Standard J-D-08 (Hospitals and Specialty Care); Standard J-E-01 (Patient Care and Treatment); Standard J-E-09 (Continuity, Coordination, and Quality of Care During Incarceration); Standard J-F-01 (Patients with Chronic Disease and Other Special Needs); Standard J-F-04 (Medically Supervised Withdrawal and Treatment); and Standard J-G-02 (Segregated Inmates).

(f)  Institute for Medical Quality ("IMQ") Standard 109 (Decision Making – Special Needs); Standard 110 (Transfer of Inmates with Acute Illness); Standard 304 (Access to Treatment); Standard 319 (Continuity of Care); Standard 320 (Monitoring of Patients in Segregation); Standard 322 (Hospital Care); and Standard 328 (Health Maintenance).

(g)  American Correctional Association ("ACA") Standard 4-ALDF-2A-45, 4-ALDF-2A-53, 4-ALDF-2A-55, 4-ALDF-2A-56 (Special Management Patients); Standard 4-ALDF-4C-01 (Access to Care); Standard 4-ALDF-4C-04 (Continuity of Care); Standard 4-ALDF-4C-05 (Referrals); Standard 4-ALDF-4C-07 (Treatment Plan); Standard 4-ALDF-4C-19 (Chronic Care); Standard 4-ALDF-4D-12 (Notifications); Standard 4-ALDF-4D-14 (Information Sharing); Standard 4-ALDF-4D-20 (Transfer); Standard 4-ALDF-4C-22 (Health Screens); and Standard 4-ALDF-4C-36 (Detoxification).

(h)  Wellpath Policies & Procedures ("Wellpath") Policy HCD-110_A-01 (Access to Care); Policy HCD-110_B-07 (Communications on Patients' Health Needs); Policy HCD-110_D-08 (Hospitals and Specialty Care); Policy HCD-110_E-09 (Continuity, Coordination, and Quality of Care During Incarceration); Policy HCD-110_F-01 (Patients with Chronic Disease and Other Special Needs); and Policy HCD-110_G-02 (Segregated Inmates).

121.  Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC.'s policies and customs related to safety checks of inmates, including JESUS ERIC MAGANA, were deficient because jail staff, including Defendants ZACHARY TSANG-LEE, PETER CANDELARIO, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20, were not required sufficiently to monitor or supervise inmates to determine whether their presentation indicated the need for medical treatment. For example, Defendant ALAMEDA COUNTY SHERIFF'S OFFICE's Detention and Corrections Policy 8.12 (Inmate Observations and Direct Visual

20

Supervision) only mandates that custody staff "check for signs of life" when observing inmates but does not mandate that custody staff check whether inmates' presentation indicates the need for medical treatment including signs of medical distress such as unconsciousness or coma.

122. Defendants ZACHARY TSANG-LEE, PETER CANDELARIO, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20 were the jail staff responsible for monitoring and supervising JESUS ERIC MAGANA and could and should have observed and reported JESUS ERIC MAGANA's immediate medical need based on available information. Defendants ZACHARY TSANG-LEE, PETER CANDELARIO, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20 acted pursuant to Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC.'s deficient policies and customs when inadequately monitoring and supervising JESUS ERIC MAGANA's medical condition including conducting insufficient safety checks.

123. Around 11:12 a.m., Defendant ZACHARY TSANG-LEE reported conducting a "Well-Being Check Inmate and Cell" on JESUS ERIC MAGANA in his cell which lasted no more than seconds. Defendant ZACHARY TSANG-LEE failed to conduct a safety check sufficient to determine that JESUS ERIC MAGANA's presentation indicated the need for medical treatment.

124. Around 11:38 a.m., Defendant ZACHARY TSANG-LEE reported conducting a "Well-Being Check Inmate and Cell" on JESUS ERIC MAGANA in his cell which lasted no more than seconds. Defendant ZACHARY TSANG-LEE failed to conduct a safety check sufficient to determine that JESUS ERIC MAGANA's presentation indicated the need for medical treatment.

125. Around 12:05 p.m., Defendant ZACHARY TSANG-LEE reported conducting a "Well-Being Check Inmate and Cell" on JESUS ERIC MAGANA in his cell which lasted no more than seconds. Defendant ZACHARY TSANG-LEE failed to conduct a safety check sufficient to determine that JESUS ERIC MAGANA's presentation indicated the need for medical treatment.

126. Around 12:30 p.m., Defendant ZACHARY TSANG-LEE reported conducting a "Well-Being Check Inmate and Cell" on JESUS ERIC MAGANA in his cell which lasted no more than seconds. Defendant ZACHARY TSANG-LEE failed to conduct a safety check sufficient to determine

21

that JESUS ERIC MAGANA's presentation indicated the need for medical treatment.

127. Around 1:07 p.m., Defendant ZACHARY TSANG-LEE reported conducting a "Well-Being Check Inmate and Cell" on JESUS ERIC MAGANA in his cell which lasted no more than seconds. Defendant ZACHARY TSANG-LEE failed to conduct a safety check sufficient to determine that JESUS ERIC MAGANA's presentation indicated the need for medical treatment, and failed to conduct a safety check in a timely manner within 30 minutes of the prior safety check as required by OPHU procedure.

128. Around 1:37 p.m., Defendant ZACHARY TSANG-LEE reported conducting a "Well-Being Check Inmate and Cell" on JESUS ERIC MAGANA in his cell which lasted no more than seconds. Defendant ZACHARY TSANG-LEE failed to conduct a safety check sufficient to determine that JESUS ERIC MAGANA's presentation indicated the need for medical treatment.

129. Around 2:10 p.m., Defendant ZACHARY TSANG-LEE observed JESUS ERIC MAGANA unresponsive and unconscious in his cell. Defendant ZACHARY TSANG-LEE did not call for an emergency medical response. Defendant ZACHARY TSANG-LEE requested Defendant PETER CANDELARIO to observe JESUS ERIC MAGANA.

130. Defendants ZACHARY TSANG-LEE and PETER CANDELARIO walked to JESUS ERIC MAGANA and observed JESUS ERIC MAGANA through the cell door. Defendant PETER CANDELARIO kicked the cell door three times in attempt to elicit a response from JESUS ERIC MAGANA. JESUS ERIC MAGANA remained unresponsive and unconscious. Defendant PETER CANDELARIO said, "Yeah, his fingers are moving. Yeah, look. You can see his fingers moving."

131. Defendant ZACHARY TSANG-LEE looked into the cell and observed that JESUS ERIC MAGANA remained unresponsive and unconscious. Defendant PETER CANDELARIO said, "The ones that's by his chin." Defendant ZACHARY TSANG-LEE watched JESUS ERIC MAGANA for about 25 seconds without any response. Defendant PETER CANDELARIO said, "You don't see them?" Defendant ZACHARY TSANG-LEE said, "No."

132. Defendant PETER CANDELARIO looked into the cell, kicked the cell door three more times, and observed that JESUS ERIC MAGANA remained unresponsive and unconscious. Defendant PETER CANDELARIO watched JESUS ERIC MAGANA for about one minute and 30 seconds without

22

any response. Defendant PETER CANDELARIO said, "Yeah, he is moving. I can see his fingers

moving." Defendants ZACHARY TSANG-LEE and PETER CANDELARIO walked away from the cell.

133.    JESUS ERIC MAGANA was in medical distress, including from the acute effects of

PPD/water intoxication, and required immediate medical attention. Defendants ZACHARY TSANG-

LEE and PETER CANDELARIO ignored JESUS ERIC MAGANA and made no further efforts to

observe his medical distress.

134.    Around 2:46 p.m., Defendant ZACHARY TSANG-LEE reported conducting a "Well-

Being Check Inmate and Cell" on JESUS ERIC MAGANA in his cell which lasted no more than

seconds. Defendant ZACHARY TSANG-LEE failed to conduct a safety check sufficient to determine

that JESUS ERIC MAGANA's presentation indicated the need for medical treatment, and failed to

conduct a safety check in a timely manner within 30 minutes of the prior safety check as required by

Alameda County Sheriff's Office Policy & Procedure 8.12 (Inmate Observations and Direct Visual

Supervision) and 8.13 (Safety Cells, Temporary Holding Cell, and Multipurpose Rooms).

135.    JESUS ERIC MAGANA was in medical distress from the acute effects of PPD/water

intoxication including loss of consciousness. JESUS ERIC MAGANA required immediate medical

attention.

136.    Defendant ZACHARY TSANG-LEE reported that he "observed [JESUS ERIC

MAGANA]'s chest slightly rising and falling" during his safety check. Defendant ZACHARY TSANG-

LEE failed to conduct a safety check sufficient to determine that JESUS ERIC MAGANA's presentation

indicated the need for medical treatment.

137.    Defendants ZACHARY TSANG-LEE and PETER CANDELARIO's failure to conduct a

safety check sufficient to determine that JESUS ERIC MAGANA's presentation indicated the need for

medical treatment exhibited deliberate indifference to JESUS ERIC MAGANA's serious medical needs,

including a heightened risk of illness and death, where he made an intentional decision with respect to

JESUS ERIC MAGANA's ongoing medical condition which put him at substantial risk of suffering

serious harm, and they did not take reasonable available measures to abate that risk, including sufficient

direct-view safety checks to determine whether medical treatment was needed, and a reasonable officer

in the circumstances would have appreciated the high degree of risk involved, including the several

23

severe symptoms of over-hydration and water intoxication recently exhibited by JESUS ERIC MAGANA.

138. At about 3:19 p.m., Defendants ZACHARY TSANG-LEE, PETER CANDELARIO, and HARKAMALJIT HUNDAL reported conducting a safety check within the OPHU.

139. Defendants PETER CANDELARIO and ZACHARY TSANG-LEE reported observing JESUS ERIC MAGANA inside of his cell, lying face-up on a mattress with his eyes closed, "unresponsive," and without "any signs of life" such as "respiratory activity" or a rise-and-fall of the chest.

140. Defendant PETER CANDELARIO reported that he "rattled" the cell door of JESUS ERIC MAGANA's cell but he did not move or respond, and that he "shouted" JESUS ERIC MAGANA's name and "nudged his left foot" but he did not respond.

141. Defendant PETER CANDELARIO used his radio to request a "Code 3" emergency medical response to JESUS ERIC MAGANA's cell.

142. At about 3:26 p.m., Defendant RAJENDRA MAHAJAN and Asaad Traina, a doctor of medicine (MD), and Durbin, Viray, Baath, and Sadia registered nurses (RN), responded and began life-saving measures on JESUS ERIC MAGANA.

143. At about 3:27 p.m., Durbin administered a single dose of Narcan into JESUS ERIC MAGANA's nasal passage.

144. At about 3:28 p.m., Defendant PETER CANDELARIO requested a "Code 3" emergency medical response from Alameda County Fire Department and Falck Ambulance.

145. At about 3:33 p.m., Baath administered a second dose of Narcan into JESUS ERIC MAGANA's nasal passage.

146. At about 3:36 p.m., personnel from the Alameda County Fire Department arrived on-scene and took-over the application of life-saving measures to JESUS ERIC MAGANA. The fire department personnel utilized a Lund University Cardiopulmonary Assist System (LUCAS) device which is a mechanical chest compression machine that autonomously performs cardiopulmonary resuscitation (CPR) on subjects to which the device is applied.

147. At about 4:06 p.m., medical personnel discontinued life-saving measures on JESUS ERIC

24

MAGANA and he was pronounced deceased.

148.    JESUS ERIC MAGANA's autopsy and coroner investigator's report "determined the cause of death to be acute water intoxication," and the toxicology report "did not show any common controlled substances in his blood."

### *Babu* Consent Decree

149.    On December 21, 2018, a class action lawsuit was filed against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and ex-sheriff Gregory Ahern alleging that officials in Santa Rita Jail subject "individuals with mental health diagnoses and/or other psychiatric disabilities" to "cruel and unusual use of isolation" as well as failing to respect their due process rights by not providing "adequate mental health care" and "reasonable accommodations" to those with mental disabilities. *Babu v. Ahern*, No. 5:18-cv-07677-NC (N.D. Cal.).

150.    On February 7, 2022, a consent decree was approved and entered by the court which required officials responsible for operating Santa Rita Jail: (a) to ensure inmates receive adequate mental health care, including adequate staffing, establishing levels of care, creating treatment plans for eligible individuals, providing treatment services, and implementing Therapeutic Housing Unit(s); (b) to ensure inmates are offered adequate out-of-cell time each day; (c) to take measures to prevent suicide and self-harm, including severely curtailing the use of safety cells and limiting placement in them to no more than 8 hours, and implementing procedures and assessments to identify individuals at risk upon arrival; (d) to ensure that inmates with mental health disabilities can access programs and services; (e) to implement a new classification system that limits the use and duration of restrictive housing; (f) to change use-of-force policies and procedures and train staff; and (g) to appoint an ombudsperson, designate an ADA coordinator, and set up an Inmate Advisory Council. *Babu*, *supra*, ECF No. 436 (N.D. Cal. Feb. 7 2022).

151.    Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ agreed "implement revised policies and procedures to ensure appropriate access to therapeutic and behavioral health services throughout the jail, including staffing, levels of care, witin six (6) months of the Effective Date, and to insure coordination between mental health and custody staff. Babu, supra, ECF. 266-1, p. 299)

152.    From March 28, 2023, to April 27, 2023, during JESUS ERIC MAGANA's incarceration

25

at Santa Rita Jail, Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, and their personnel failed substantially to implement and comply with the *Babu* consent decree's requirements related to JESUS ERIC MAGANA, where:

        (a)    JESUS ERIC MAGANA did not receive mental health care services;

        (b)    JESUS ERIC MAGANA did not receive medications for his diagnosed medical conditions;

        (c)    JESUS ERIC MAGANA was isolated from other inmates, including during out-of-cell time; and

        (d)    JESUS ERIC MAGANA was completely shackled from hand-to-foot, including during out-of-cell time.

        (e)    Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, and their personnel failed to even summon mental health professionals to examine or check JESUS ERIC MAGANA;

        (f)    Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, and their personnel, despite their recognition that JESUS ERIC MAGANA was engaged in aberrant and abnormal behavior in his water consumption, failed to even consult with mental health professionals regarding JESUS ERIC MAGANA's condition and behavior.

**Electronic Evidence**

153.    Alameda County Sheriff's Office has a written policy, General Order 8.17, which states in part:

"E. DETENTIONANDCORRECTIONS:
Agency Members assigned to the D&C (Detentions & Corrections) Division shall activate their BWCs in accordance with written directives as well as while in the performance of the following duties:

1. Anytime an inmate is removed or escorted from their cell or holding area

2. Entering a cell, dormitory housing, or holding area occupied by an inmate. These situations include, but are not limited to:

    1. Conducting a count

    2. Serving of Meals

    3. Window checks

4. Observation checks, including general observations, Intensive Observation Logs (IOL), and other regular checks "

154. Alameda County Sheriff's Office's Detentions and Corrections Division has a policy D&C 8.12, which states in part:

"N. OBSERVATION COMPLIANCE AND AUDITS BY SUPERVISORS:

1. Throughout the duration of their shift, supervisors shall monitor the Guardian RFID, "Compliance Monitor" to ensure proper observations are being conducted within the prescribed time frames.

2. At least once per shift, supervisors shall conduct a random audit of designated housing units equipped with fixed security camera systems to ensure quality observations are being performed in accordance with this written directive.

1. Supervisors shall compare video from the fixed camera systems to the timestamps recorded in the Guardian RFID system.

2. These random audits shall be documented in the team's End of Shift report.

3. Refer to D&C P&P 10.03 – Sergeant/Shift Supervisor Post Order for additional requirements. "

Plaintiffs in their tort claim act, specifically requested that defendant Sheriff's Office "take all necessary steps to preserve all records related to the incidents described herein--including. but not limited to, documents (e.g., police/incident reports, assignment sheets, logs, use of force logs, medical logs, witness statements, etc.), audio and video recordings (e.g., surveillance recordings, body- worn camera recordings, recording activation data, ete.), communications (eg., email messages. SMS/text messages, MDT messages, etc.). 911 telephone calls, radio communications (whether on the main channel or other channels), computer communications, Computer Assisted Dispatch (**CAD*)reports/logs, PIC, and other radio transmissions or print purges."

155. To date, defendant Alameda County. Sheriff's Office and Sheriff Yesenia Sanchez have claimed that sheriff deputies completed 7 Intensive Observations of JESUS ERIC MAGANA, while he was held in the OPHU on April 27, 2023.

156. To date, defendant Alameda County. Sheriff's Office and Sheriff Yesenia Sanchez have produced only two body worn camera videos of two Intensive Observations and not 7 Intensive Observations, and claim that they have provided all such body worn camera videos.

157. To date, defendants Alameda. County Sheriff's Office and Sheriff Yesenia Sanchez have produced no video footage from fixed camera systems of any Intensive Observations of Jesus Eric

27

Magana in the OPHU on April 27, 2023.

158.    Defendants Alameda. County Sheriff's Office and Sheriff Yesenia Sanchez stated in their responses to plaintiffs' Request for Production, that they "will produce all DOCUMENTS responsive….".

### California Public Records Act Request

159.    On February 8, 2024, Plaintiff ESTATE OF JESUS ERIC MAGANA, through its legal representative, presented a written authorization to Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and YESENIA SANCHEZ requesting production of documents related to JESUS ERIC MAGANA's in-custody death at Santa Rita Jail pursuant to the California Government Code § 7920.000 *et seq*., including "investigative reports; photographic, audio, and video evidence; transcripts or recordings of interviews; autopsy reports; all materials compiled and presented for review to the district attorney or to any person or body charged with determining whether to file criminal charges against an officer in connection with an incident, or whether the officer's action was consistent with law and agency policy for purposes of discipline or administrative action, or what discipline to impose or corrective action to take; documents setting forth findings or recommended findings; and copies of disciplinary records relating to the incident, including any letters of intent to impose discipline, any documents reflecting modifications of discipline due to the Skelly or grievance process, and letters indicating final imposition of discipline or other documentation reflecting implementation of corrective action."

160.    On February 29, 2024, Defendant ALAMEDA COUNTY SHERIFF'S OFFICE produced a one-page crime lab report and an investigation report. Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and YESENIA SANCHEZ failed to produce requested records, including an autopsy report, photographs, recordings, and interviews.

161.    On July 12, 2024, Plaintiff ESTATE OF JESUS ERIC MAGANA, through its legal representative, sent a follow-up email to Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and YESENIA SANCHEZ demanding production of unproduced documents.

162.    On July 12, 2024, Defendant ALAMEDA COUNTY SHERIFF'S OFFICE responded that

28

it had no other documents beyond what had been already been produced. Defendant ALAMEDA COUNTY SHERIFF'S OFFICE's response was false, where the investigation report which was produced referenced the existence of various other unproduced documents, including photographs and video recordings.

163. To date, Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and YESENIA SANCHEZ continue to refuse and have failed to produce the complete records including an autopsy report, photographs, recordings, and interviews.

164. On information and belief, Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and YESENIA SANCHEZ's failure to produce the records requested by Plaintiff ESTATE OF JESUS ERIC MAGANA was an effort to delay, obstruct, and suppress the discovery of misconduct and malfeasance related to his in-custody death.

**Medical Records Request**

165. On July 12, 2024, Plaintiff ESTATE OF JESUS ERIC MAGANA, through its legal representative, presented a written authorization to Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC. requesting production of JESUS ERIC MAGANA's medical records pursuant to California Evidence Code § 1158.

166. Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC. failed to produce the requested medical records, in violation California Evidence Code § 1158(d)'s requirement that JESUS ERIC MAGANA's medical records be produced "within five days after the presentation of the written authorization…"

167. On July 16, 2024, Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC.'s representative stated: "The law firm of Gordon Rees Scully Mansukhani will be handling this records request going forward. If you have any further questions, please contact Lindsay Romano."

168. Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH

29

MANAGEMENT, INC. failed and refused to produce JESUS ERIC MAGANA's medical records as required by California Evidence Code § 1158.

169.    On information and belief, Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC.'s failure to produce JESUS ERIC MAGANA's medical records was an effort to delay, obstruct, and suppress the discovery of misconduct and malfeasance related to his in-custody death.

## POLICY AND CUSTOM ALLEGATIONS

170.    Defendant YESENIA SANCHEZ is the elected Sheriff for Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE. Defendant YESENIA SANCHEZ has been employed by Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE since 1997. Defendant YESENIA SANCHEZ has possessed policymaking authority since she became a division commander overseeing the Santa Rita Jail in 2001. Defendant YESENIA SANCHEZ assumed office as Sheriff in January 2023.

171.    Defendant YESENIA SANCHEZ is a final policymaking authority in her capacity as Sheriff for Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE, including as it relates to the maintenance and operation of jail and detention facilities such as the Santa Rita Jail; the hiring, screening, training, supervision, counseling, discipline, and control of law enforcement officers acting under his command; the safekeeping of inmates/prisoners in the custody of Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE; the prompt transfer of inmates to appropriate out-of-facility placements; and the promulgation of the policies and procedures and allowance of the practices and customs. *See* Cal. Const. Art. XI § 1(b); Cal. Pen. Code § 4000; Cal. Pen. Code § 4006; Cal. Gov. Code § 26605; Cal. Gov. Code § 26610; *see also* Alameda County Administrative Code Chapter 2.56 (Sheriff's Office).

172.    Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC. were charged by law with the administration of the maintenance and operation of Santa Rita Jail including the delivery of healthcare/medical services to inmates such as

30

JESUS ERIC MAGANA.

173.     Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and YESENIA SANCHEZ failed adequately to monitor the administration of the obligations imposed by the contract with Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC., including staffing and delivery of healthcare/medical services at Santa Rita Jail.

174.     Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC., including their custody and medical staff, had a duty to provide inmates with adequate medical treatment, including JESUS ERIC MAGANA, and a duty to respond with reasonable diligence to treat serious acute medical conditions where they knew or should have known that immediate medical attention was required.

175.     Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC., including their custody and medical staff, exhibited a pattern of deliberate indifference to the serious acute medical and mental health conditions of JESUS ERIC MAGANA. For example:

        (a)     The custody and medical staff failed adequately to screen, assess, classify, and assign JESUS ERIC MAGANA's housing and monitoring;

        (b)     The custody staff failed adequately to observe, inform, and notify the medical staff and mental health staff of JESUS ERIC MAGANA's need for immediate medical attention;

        (c)     The medical staff failed adequately to provide healthcare/medical services to JESUS ERIC MAGANA;

        (d)     The medical staff failed to request mental health services for JESUS ERIC MAGANA;

        (e)     The medical staff failed to consult with mental health services regarding JESUS ERIC MAGANA's abnormal behavior demonstrated by his water consumption; and,

        (f)     The custody and medical staff failed adequately to arrange, secure, and execute

31

JESUS ERIC MAGANA's transfer to an outside facility which could provide adequate healthcare/medical services.

176. Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC., including their custody and medical staff, maintained policies and customs of inadequate supervision and reporting relating to healthcare/medical services and treatment at Santa Rita Jail, resulting in the violation of constitutional rights of persons held in their detention facilities, including JESUS ERIC MAGANA. For example, inadequate polices, customs, training, supervision, and discipline of custody and medical staff resulted in the following deficiencies:

(a) Failure promptly to assess, identify, and recognize whether newly arrived inmates are suffering or will suffer from acute medical and/or mental health conditions such as PPD/water intoxication/psychogenic polydipsia;

(b) Failure adequately to observe, monitor, and review inmates for possible acute medical conditions and/or mental health such as PPD/water intoxication/psychogenic polydipsia;

(c) Failure adequately to provide jail staff with training on inmates with acute medical and/or mental health conditions such as PPD/water intoxication;

(d) Failure adequately to provide jail staff with training on inmates with mental health conditions such as schizophrenia, and the fact that schizophrenic patients have an association with hyponatremia and are susceptible to death from hyponatremia;

(e) Failure adequately to provide access to healthcare/medical/mental-health services and treatment, continuity of care, and access to a higher level of care not available at the jail;

(f) Failure adequately to classify, house, and monitor inmates suffering from medical and/or mental health disabilities in compliance with statutory mandates;

(g) Failure adequately to maintain sufficient, competent, required, and contracted healthcare/medical/mental-health services;

(h) Failure adequately to utilize appropriate national and local accepted minimum standards, procedures, and practices for handling inmates suffering from acute medical conditions such as PPD/water intoxication/psychogenic polydipsia;

32

(i)     Failure adequately to institute, require, and enforce proper and adequate training, supervision, policies, procedures and practices concerning inmates suffering from acute medical conditions such as PPD/water intoxication/psychogenic polydipsia;

(j)     Failure adequately to comply with, enforce, and implement self-imposed policies and procedures;

(k)     Failure adequately to maintain competent supervision and training of jail staff concerning inmates suffering from acute medical conditions such as PPD/water intoxication/ psychogenic polydipsia;

(l)     Failure to adequately to place inmates' safety and needs, including duties and responsibilities to provide sufficient and competent healthcare/medical services to patients/inmates, above financial interests and/or profits;

(m)     Failure adequately to provide inmates with access to necessary and appropriate healthcare/medical/mental-health services;

(n)     Failure adequately to utilize isolation or segregation/separation housing;

(o)     Failure adequately to monitor inmates in isolation or segregation/separation housing;

(p)     Failure promptly to evaluate and transfer inmates to a hospital or facility providing appropriate and necessary healthcare/medical/mental-health services, where an inmate presents a serious medical need;

(q)     Failure adequately to implement necessary emergency treatment policies; and/or

(r)     Failure adequately to provide necessary staffing and training at Santa Rita Jail for the purpose of providing minimally-adequate healthcare/medical/mental-health services.

177.   Standards: Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC.'s policies and customs are inconsistent with state law and widely-accepted standards. For example:

(a)     California Code of Regulations title 15 § 1027 (Number of Personnel/Medical Receiving Screening), § 1027.5 (Safety Checks), § 1028 (Access to Treatment), and § 1210

33

(Individualized Treatment Plans).

(b)     National Commission on Correctional Health Care ("NCCHC") Standards for Health Services in Jails, including Standard J-A-01 (Access to Care); Standard J-B-07 (Communication on Patients' Health Needs); Standard J-C-04 (Health Training for Correctional Officers); Standard J-C-07 (Staffing); Standard J-D-08 (Hospitals and Specialty Care); Standard J-E-01 (Patient Care and Treatment); Standard J-E-02 (Receiving Screening); Standard J-E-04 (Initial Health Assessment); Standard J-E-08 (Nursing Assessment Protocols and Procedures); Standard J-E-09 (Continuity, Coordination, and Quality of Care During Incarceration); and Standard J-F-01 (Ongoing Care for Chronic Illness).

(c)     Institute for Medical Quality ("IMQ") Standards, including Standard 109 (Decision Making – Special Needs); Standard 110 (Transfer of Inmates with Acute Illness); Standard 204 (Basic Training for Correctional Personnel); Standard 302 (Receiving Screening); Standard 304 (Access to Treatment); Standard 306 (Clinic Care); Standard 307 (Health Inventory & Communicable Disease Screening); Standard 318 (Standardized Procedures/Treatment Protocols); Standard 319 (Continuity of Care); and Standard 328 (Health Maintenance).

(d)     American Correctional Association ("ACA") Standards, including 4-ALDF-2A-15 (Staffing); Standard 4-ALDF-7B-10 (Training and Staff Development); Standard 4-ALDF-4C-01 (Access to Care); Standard 4-ALDF-4C-04 (Continuity of Care); Standard 4-ALDF-4C-05 (Referrals); Standard 4-ALDF-4C-07 (Treatment Plan); Standard 4-ALDF-4C-19 (Chronic Care); Standard 4-ADLF-4C-22 (Health Screens); Standard 4-ALDF-4C-24, 4-ALDF-4C-25 (Health Appraisal); Standard 4-ALDF-4D-12 (Notifications); Standard 4-ALDF-4D-14 (Information Sharing); Standard 4-ALDF-4D-20 (Transfer); and Standard 4-ALDF-6B-07 (Inmates with Disabilities).

178.    _Babu_ Litigation, Consent Decree, and Monitoring Reports: On December 21, 2018, a class action lawsuit was filed against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and ex-sheriff Gregory Ahern alleging that officials in Santa Rita Jail subject "individuals with mental health diagnoses and/or other psychiatric disabilities" to "cruel and unusual use of isolation" as well as failing to respect their due process rights by not providing "adequate mental health care" and "reasonable accommodations" to those with mental disabilities. *Babu v. Ahern*, No.

34

5:18-cv-07677-NC (N.D. Cal.).

179. In 2019, a panel of neutral experts published reports based on tours of Santa Rita Jail, interviews with jail staff and inmates, and document reviews. Therein, the experts found, *inter alia*:

(a) "staff is inadequate to safely operate the Santa Rita Jail Facility," ECF No. 111-1;

(b) "ADA training is not sufficient"; "[s]evere custody staffing vacancies/shortages/ re-directions cause or significantly contribute to negative impacts on" mental health inmates' conditions, safety, and access to treatment; "medical screening process is inadequate"; "safety cells are overused for inmates in crisis or with suicide ideation/attempts"; "[t]here are no suicide resistant cells"; "[t]here is no validated suicide risk assessment tool or comprehensive suicide prevention training for custody staff"; "[t]here is no urgent or emergent expedited ADA grievance response timelines"; "[i]nmates housed in the OPHU [outpatient housing unit] are not being provided access to equivalent programs, services and activities consistent with their custody level as inmates who are housed in other units," ECF No. 111-2;

(c) "[m]ental health staffing appeared to be insufficient"; "custody staffing levels appeared to negatively impact the provision of mental health services"; "delays in medication continuity upon arrival to the facility"; "[t]he facility should consider the discontinuation of the use of safety cells as the primary means of suicide prevention"; "[t]he facility should examine the use of IOL and consider amending clinical contacts based upon actual suicide risk rather than weekly for all inmates under observation"; "[t]he facility should utilize an accepted suicide risk assessment tool which can assist staff in the appropriate determination of suicide risk"; "[t]he facility should ensure a system for the appropriate follow-up for inmates after the discontinuation of suicide monitoring"; "a system for mortality review for serious suicide attempts and completed suicides should be developed," ECF No. 111-3;

(d) "it is clear that mental health clinical personnel are spread thin, are not running sufficient groups in mental health units, are not called upon to support in crisis situations and are not present for overnight shifts"; "[c]ustody personnel may also be leaving inmates in cells who have made a suicidal statement, or they are moving those inmates to a safety cell or other environment without a timely mental health assessment"; |[t]e use of safety cells is troubling"; "the jail appears to be over reliant on segregation, and inmates in administrative separation are not being afforded ample access to out of

35

cell opportunities and programming"; "of all suicide reviews provided, all were determined to be within policy," despite that "opportunities for system improvements would have been identified with more thorough reviews"; "critical unaddressed questions from virtually all morbidity reviews provided," ECF No. 111-4; and

(e)     "observations suggest a chronic shortage of security staff"; "on one site visit there was one inmate who had been held in a temporary isolation cell for what appeared to have been for several weeks"; "more staff (both custody and behavioral health) are required," ECF No. 111-5.

180.    On February 7, 2022, a consent decree was approved and entered by the court which required officials responsible for operating Santa Rita Jail: (a) to ensure inmates receive adequate mental health care, including adequate staffing, establishing levels of care, creating treatment plans for eligible individuals, providing treatment services, and implementing Therapeutic Housing Unit(s); (b) to ensure inmates are offered adequate out-of-cell time each day; (c) to take measures to prevent suicide and self-harm, including severely curtailing the use of safety cells and limiting placement in them to no more than 8 hours, and implementing procedures and assessments to identify individuals at risk upon arrival; (d) to ensure that inmates with mental health disabilities can access programs and services; (e) to implement a new classification system that limits the use and duration of restrictive housing; (f) to change use-of-force policies and procedures and train staff; and (g) to appoint an ombudsperson, designate an ADA coordinator, and set up an Inmate Advisory Council. ECF No. 436.

181.    Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, ex-sheriff Gregory Ahern, and/or YESENIA SANCHEZ failed substantially to implement and comply with the experts' recommendations and consent decree's requirements, based on monitoring experts' tours of Santa Rita Jail occurring in February 2022, October 2022, June 2023, and June 2024. <https://rbgg.com/santa-rita-consent-decree/>.

182.    <u>Grand Jury Report</u>: On June 6, 2022, the 2021–2022 Alameda County Grand Jury Final Report was issued. <https://grandjury.wpengine.com/wp-content/uploads/2022/12/Grand.Jury_.Report.2022.for_.ITD_.Web_.pdf>. Therein, the Alameda County Grand Jury recognized a "multiple-year pattern of lawsuits concerning conditions" and identified numerous issues with the Santa Rita Jail, including "[s]erious safety violations, inadequate medical

36

services and poor sanitation" which "warrant urgent attention." The grand jury's investigation included extensive interviews and reviews of thousands of pages of records and made nearly 30 recommendations for improving conditions at the Santa Rita Jail. See Lakshmi Sarah & Matthew Green, *Grand Jury: Major Health and Safety Violations at Santa Rita Jail Require 'Urgent Attention'* (June 30, 2022), available at: <https://www.kqed.org/news/11918230/grand-jury-major-health-and-safety-violations-at-santa-rita-jail-require-urgent-attention>.

183.    DOJ Report: On April 22, 2021, the U.S. Department of Justice, Civil Rights Division, issued an "Investigation of Alameda County, John George Psychiatric Hospital, and Santa Rita Jail." <https://www.justice.gov/crt/case-document/file/1388891/download>. Therein, the DOJ concluded that there was "reasonable cause" to believe that Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE violated inmates' civil rights by failing to provide proper mental health services, especially in the Santa Rita Jail where 19 people have committed suicide since 2014. *See, e.g.*, Robert Jablon, *Feds Say Santa Rita Jail Violates Rights of Mentally Ill* (April 24, 2021), available at: <https://www.nbcbayarea.com/news/local/east-bay/feds-say-santa-rita-jail-violates-rights-of-mentally-ill/2527370/>; Lisa Fernandez, *DOJ finds mental health care, overuse of isolation at Santa Rita Jail unconstitutional* (April 22, 2021), available at: <https://www.ktvu.com/news/doj-finds-mental-health-care-overuse-of-isolation-at-santa-rita-jail-unconstitutional>.

184.    Incidents of Inadequate Medical Care: "Santa Rita Jail … has the highest number of inmate deaths in the Bay Area, and has an even higher jail death rate than Los Angeles County, which has the largest jail system in the country…" Lisa Fernandez, *A look at the 45 inmates who have died at Santa Rita Jail in the last five years* (Oct. 4, 2019, updated Jan. 17, 2020), available at: <https://www.ktvu.com/news/a-look-at-the-45-inmates-who-have-died-at-santa-rita-jail-in-the-last-five-years>. Additionally, classes of inmates have filed litigation against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC. for inadequate medical care at Santa Rita Jail. *Gonzalez v. County of Alameda*, No. 3:19-cv-07423-JSC (N.D. Cal.); *Mohrbacher v. Alameda County Sheriff's Office*, No. 3:18-cv-00050-JD (N.D. Cal.). For example:

(a)    Daniel Gonzalez suffered a severe toothache while incarcerated at Santa Rita Jail.

37

His multiple requests for medical attention were denied until he was in such serious distress that he threatened self-harm. His condition deteriorated and medical attention was delayed until a severe infection developed which required the pulling of the infected tooth. A civil rights lawsuit was filed. *Gonzalez v. County of Alameda*, No. 3:19-cv-07423-JSC (N.D. Cal.). The case remains pending.

(b)     Cedric Henry contracted COVID multiple times while incarcerated at Santa Rita Jail. He was placed in a cold, unsanitary cell covered in dirt, left-over food, and feces, and received no medical treatment—not even a cough drop. A civil rights lawsuit was filed. *Gonzalez v. County of Alameda*, No. 3:19-cv-07423-JSC (N.D. Cal.). The case remains pending.

(c)     Michael Lockhart suffered a severe toothache while incarcerated at Santa Rita Jail. His complaints of pain were ignored for eight months, until his attorney obtained a court order for medical treatment pursuant to California Penal Code § 4011.5. His condition deteriorated and medical attention was delayed until a severe infection developed which required the pulling of the infected tooth. A civil rights lawsuit was filed. *Gonzalez v. County of Alameda*, No. 3:19-cv-07423-JSC (N.D. Cal.). The case remains pending.

(d)     Eric Rivera suffered a concussion and loss of consciousness after slipping, falling, and striking his head on the ground while incarcerated at Santa Rita Jail. He was not subject to the concussion protocol but instead medical staff provide him with pain medication and x-rays. He requested additional pain medication but was denied by medical staff, and written-up by custody staff when he protested. A civil rights lawsuit was filed. *Gonzalez v. County of Alameda*, No. 3:19-cv-07423-JSC (N.D. Cal.). The case remains pending.

(e)     Tikisha Upshaw suffered injuries to her head, neck, and hands after slipping, falling, and striking her head while incarcerated at Santa Rita Jail. She was denied medical attention to her injured head and neck, despite complaints of pain and headaches. After being transferred from Santa Rita Jail, she was diagnosed as having cervical spondylolisthesis, most likely caused by a cervical fracture, which caused chronic neck pain and headaches. A civil rights lawsuit was filed. *Gonzalez v. County of Alameda*, No. 3:19-cv-07423-JSC (N.D. Cal.). The case remains pending.

(f)     Eric Wayne contracted a bacterial or fungal infection on his left leg while incarcerated at Santa Rita Jail. His leg became completely covered with a fungus and the skin peeled

38

away revealing the flesh below causing severe pain. Over the course of five months, his leg was treated only with hydrocortisone cream and some type of salve which did not resolve the problem but the infection was never cultured or identified. He was never permitted to be seen by a medical doctor and treated only by nurses. His leg became swollen and black and he now has trouble walking and standing. A civil rights lawsuit was filed. *Gonzalez v. County of Alameda*, No. 3:19-cv-07423-JSC (N.D. Cal.). The case remains pending.

(g)     James Mallett contracted a staph infection while incarcerated at Santa Rita Jail. He experienced earaches and had discharge from his left ear. He was denied necessary medical treatment for approximately six months. He suffered significant hearing loss in his left ear as a result. A civil rights lawsuit was filed. *Gonzalez v. County of Alameda*, No. 3:19-cv-07423-JSC (N.D. Cal.). The case remains pending.

(h)     Rasheed Tucker sustained a gunshot wound to his left hand prior to being incarcerated at Santa Rita Jail. He received no medical attention to his injured hand. After the wound healed, he lost the ability to use or control several of his left digits. A civil rights lawsuit was filed. *Gonzalez v. County of Alameda*, No. 3:19-cv-07423-JSC (N.D. Cal.). The case remains pending.

(i)     Elizabeth Laurel was found unresponsive in her cell and later pronounced dead on February 13, 2023. She was booked into Santa Rita Jail two days before her death on a felony warrant for drug trafficking and suspicion of drug possession. She was placed in a cell alone where she was "on withdrawal protocols for various substances, including opioids and alcohol." She was provided inadequate medical treatment and supervision, resulting in her death. Jo Ellen Nott, *Fifth Detainee Dies in 2023 at California's Santa Rita Jail* (July 15, 2023), available at: <https://www.prisonlegalnews.org/news/2023/jul/15/fifth-detainee-dies-2023-californias-santa-rita-jail/>.

(j)     Leonard Brown Jr. died by suicide while incarcerated at the Santa Rita Jail on March 9, 2022. He was a documented mental health inmate housed at the Santa Rita Jail from September 10, 2021, to March 9, 2022. He was moved in-and-out of a "safety" cell at least 15 times and received outside psychiatric treatment three times for suicidal ideation and attempts. On March 9, 2022, while in administrative segregation, he hung himself with bedsheets present in his cell. A civil rights lawsuit was

filed. *Estate of Brown v. County of Alameda*, No. 3:22-cv-05457-VC (N.D. Cal.). The case was settled pretrial for $2,000,000.

(k) Jonas Park died by suicide while incarcerated at the Santa Rita Jail on February 9, 2022. He was arrested and booked into the jail on February 4, 2022, exhibiting symptoms of withdrawal. He unsuccessfully attempted suicide by a ligature tied to a bunk. Later, he requested and received a bedsheet which, within 16 minutes, he was able to wrap around his neck and successfully commit suicide. Joe Dworetzky, *County sued over another suicide at Santa Rita Jail* (Mar. 27, 2022), available at: <https://www.pleasantonweekly.com/news/2022/03/27/county-sued-over-another-suicide-at-santa-rita-jail>. A civil rights lawsuit was filed. *K.P. v. County of Alameda*, No. 4:22-cv-01817-DMR (N.D. Cal.). The case remains pending.

(l) Lee Anderson died of cardiopulmonary arrest while incarcerated at the Santa Rita Jail on May 16, 2021. He was found unresponsive in her cell, after obtaining access to drugs which were smuggled into the jail during the booking process, due to the chronically unsafe conditions at the Sant Rita Jail. Lisa Fernandez, *Family sues Santa Rita Jail after woman dies of drug overdose* (March 17, 2022), available at: <https://www.ktvu.com/news/family-sues-santa-rita-jail-after-woman-dies-in-custody-of-drug-overdose>. A civil rights lawsuit was filed. *Anderson v. County of Alameda*, No. 3:22-cv-01577-JSC (N.D. Cal.). The case remains pending.

(m) Christopher Crosby died by suicide while incarcerated at the Santa Rita Jail on December 4, 2019. He was booked into the Santa Rita Jail in February 2018 and classified as a suicide risk. The jail and mental health staff failed properly to monitor him and permitted him access to a "plastic bag," which he was able to place over his head suffocate himself to death. Lisa Fernandez, *Deadly year at Santa Rita ends with 10 inmate deaths* (Jan. 2, 2020), available at: <https://www.ktvu.com/news/deadly-year-at-santa-rita-ends-with-10-inmate-deaths>. A civil rights lawsuit was filed. *Crosby v. County of Alameda*, No. 3:20-cv-08529-MMC (N.D. Cal.). The case was settled pretrial.

(n) Maurice Monk died while incarcerated at the Santa Rita Jail on November 15, 2021. He suffered from severe conditions, including diabetes, high blood pressure, and schizophrenia. The jail and medical staff failed to provide him with sufficient medical care for his conditions and placed

40

him in a solitary cell. His sister attempted to bring his pills to the jail but staff refused to accept them, instructing her to send an email containing the prescription information to the jail. The emails were filtered to a "junk" inbox and were never received. Finally, the jail instructed her to fax the prescription information. Before she could so do, she was informed that her brother was dead. He was deprived his necessary medications and missed critical medical appointments while held in jail and was subsequently found dead in his cell. Lisa Fernandez & Cristina Rendon, *Security guard arrested after not wearing mask on bus dies in Santa Rita Jail* (Nov. 18, 2021), available at: <https://www.ktvu.com/news/security-guard-arrested-after-not-wearing-mask-on-bus-dies-in-santa-rita-jail>. A civil rights lawsuit was filed. *Estate of Maurice Monk v. Alameda County*, No. 3:22-cv-04037-TSH (N.D. Cal.). The case was settled pretrial for $7,000,000.

      (o)    Raymond Reyes Jr. died by suicide while incarcerated at the Santa Rita Jail on July 24, 2019. He expressed suicidal ideations to jail staff during booking but he was not placed on suicide watch. He was permitted to ingest a lethal dose of methamphetamine while under jail supervision. The staff attempted to revive him with naloxone, a drug used to treat heroin overdose—but not methamphetamine overdose. Lisa Fernandez, Simone Aponte & Alex Savidge, Death rate at Santa Rita exceeds nation's largest jail system as critics call for reform (Oct. 1, 2019), available at: <https://www.ktvu.com/news/death-rate-at-santa-rita-exceeds-nations-largest-jail-system-as-critics-call-for-reform>. A civil rights lawsuit was filed. *Reyes v. County of Alameda*, No. 4:20-cv-03971-DMR (N.D. Cal.). The case was settled pretrial.

      (p)    Christopher Thomas died by attempted suicide while incarcerated at the Santa Rita Jail on July 6, 2019. He expressed suicidal ideations to jail staff but he was not placed on suicide watch. He was permitted to hang himself with a bedsheet around his neck on June 30, 2019, was found hanging by jail staff, and was transported to a hospital where he was diagnosed with an anoxic brain injury and later died on July 6, 2019. Lisa Fernandez, *A look at the 45 inmates who have died at Santa Rita Jail in the last five years* (Oct. 4, 2019, updated Jan. 17, 2020), available at: <https://www.ktvu.com/news/a-look-at-the-45-inmates-who-have-died-at-santa-rita-jail-in-the-last-five-years>.

      (q)    Christian Madrigal died by suicide while incarcerated at the Santa Rita Jail on June 15, 2019. He was arrested after acting "erratically" and "aggressively" after he ingested psychedelic

41

mushrooms. He was booked into Santa Rita Jail, where a lieutenant ordered him to be chained to a door. He was left chained to the door for hours, and when deputies returned to check on him, he had hanged himself with the chains they provided him. Lisa Fernandez, *Alameda County to pay $5M to Fremont family of young man chained to Santa Rita Jail door* (Oct. 22, 2020, updated Nov. 3, 2020), available at: <https://www.ktvu.com/news/alameda-county-to-pay-5m-to-fremont-family-of-young-man-chained-to-santa-rita-jail-door>. A civil rights lawsuit was filed. *Jaime v. County of Alameda*, No. 3:19-cv-08367-RS (N.D. Cal.). The case was settled pretrial for $5,000,000.

(r)     Hector Hernandez Jr. died of pneumonia while incarcerated at the Santa Rita Jail on June 5, 2019. He had been incarcerated for two months prior to his death, during which time jail and medical staff ignored and failed to conduct mandated safety checks, as his physical and mental health deteriorated until he was found dead in his cell. Brooks Jarosz , Lisa Fernandez & Simone Aponte, *Santa Rita Jail's medical provider is target of lawsuits, complaints about lack of care* (May 5, 2021), available at: <https://www.ktvu.com/news/santa-rita-jails-medical-provider-is-target-of-lawsuits-complaints-about-lack-of-care>. A civil rights lawsuit was filed. *Hernandez v. County of Alameda*, No. 4:20-cv-02884-HSG (N.D. Cal.).

(s)     Logan Masterson died by suicide while incarcerated at the Santa Rita Jail on April 4, 2018. He was arrested and booked into the jail on April 4, 2018, where he was initially placed in a safety cell on suicide watch. His housing on suicide watch was discontinued and he was moved to an isolation cell. He remained in the isolation cell until he was permitted to hang himself to death inside of his cell on April 6, 2018. Erin Allday & Megan Cassidy, *Family of man who died by suicide in Alameda County jail files lawsuit* (Mar. 29, 2019), available at: <https://www.sfchronicle.com/bayarea/article/Family-of-man-who-died-by-suicide-in-Alameda-13727587.php>. A civil rights lawsuit was filed. *Masterson v. County of Alameda*, No. 4:19-cv-01625-PJH (N.D. Cal.). The case was settled pretrial.

(t)     Edwin Villalta died by suicide while incarcerated at the Santa Rita Jail on November 28, 2017. He entered the jail with diagnoses of anxiety and PTSD and was assigned to segregation housing and held in isolation. He expressed feelings of depression but medical staff failed to provide necessary medications. He was found dead in his cell during a routine cell check, after hanging

42

himself from a bunk with a blanket around his neck. Lisa Fernandez, *A look at the 45 inmates who have died at Santa Rita Jail in the last five years* (Oct. 4, 2019, updated Jan. 17, 2020), available at: <https://www.ktvu.com/news/a-look-at-the-45-inmates-who-have-died-at-santa-rita-jail-in-the-last-five-years>.

(u)     Miguel Gomez died by suicide while incarcerated at the Santa Rita Jail on October 26, 2017. He was single-celled in the jail's protective custody housing. He expressed suicidal ideations which were known to jail staff. He was found hanging in his cell with bedsheets around his neck on October 23, 2027. He was transported to a hospital where he died three days later. Lisa Fernandez, *A look at the 45 inmates who have died at Santa Rita Jail in the last five years* (Oct. 4, 2019, updated Jan. 17, 2020), available at: <https://www.ktvu.com/news/a-look-at-the-45-inmates-who-have-died-at-santa-rita-jail-in-the-last-five-years>.

(v)     Barry Heisner Jr. died by suicide while incarcerated at the Santa Rita Jail on October 30, 2016. He was found hanging in his cell with bedsheets around his neck. Lisa Fernandez, *A look at the 45 inmates who have died at Santa Rita Jail in the last five years* (Oct. 4, 2019, updated Jan. 17, 2020), available at: <https://www.ktvu.com/news/a-look-at-the-45-inmates-who-have-died-at-santa-rita-jail-in-the-last-five-years>.

(w)     Balvir Singh died by suicide while incarcerated at the Santa Rita Jail on July 15, 2016. He was a mental health inmate subject to special housing, and expressed suicidal ideations to jail staff. He was found hanging in his cell with bedsheets around his neck. Lisa Fernandez, *A look at the 45 inmates who have died at Santa Rita Jail in the last five years* (Oct. 4, 2019, updated Jan. 17, 2020), available at: <https://www.ktvu.com/news/a-look-at-the-45-inmates-who-have-died-at-santa-rita-jail-in-the-last-five-years>.

(x)     John Bonardi died by suicide while incarcerated at the Santa Rita Jail on December 10, 2015. He was housed in the jail's protective custody. He was found hanging in his cell with bedsheets around his neck. Lisa Fernandez, *A look at the 45 inmates who have died at Santa Rita Jail in the last five years* (Oct. 4, 2019, updated Jan. 17, 2020), available at: <https://www.ktvu.com/news/a-look-at-the-45-inmates-who-have-died-at-santa-rita-jail-in-the-last-five-years>.

43

(y) Christopher Angulo died by suicide while incarcerated at the Santa Rita Jail on June 19, 2015. He had documented mental health issues. He cut his right wrist and hemorrhaged to death before being discovered dead by jail staff. Lisa Fernandez, *A look at the 45 inmates who have died at Santa Rita Jail in the last five years* (Oct. 4, 2019, updated Jan. 17, 2020), available at: <https://www.ktvu.com/news/a-look-at-the-45-inmates-who-have-died-at-santa-rita-jail-in-the-last-five-years>.

(z) Michael Brown died by suicide while incarcerated at the Santa Rita Jail on April 4, 2015. He was assigned to segregation housing and held in isolation, without a documented explanation. He was found hanging in his cell with bedsheets around his neck. Lisa Fernandez, *A look at the 45 inmates who have died at Santa Rita Jail in the last five years* (Oct. 4, 2019, updated Jan. 17, 2020), available at: <https://www.ktvu.com/news/a-look-at-the-45-inmates-who-have-died-at-santa-rita-jail-in-the-last-five-years>. A civil rights lawsuit was filed. The case was settled pretrial for $200,000. Scott Morris, *The most dangerous place in Alameda County* (May 7, 2019), available at: <https://www.oaklandreporter.org/2019/05/the-most-dangerous-place-in-alameda-county.html>.

(aa) Gary Oldham died by suicide while incarcerated at the Santa Rita Jail on March 3, 2015. He was subject to "neurochecks" by staff and was required to sleep on a mattress on the floor "for safety." He was found hanging in his cell with bedsheets around his neck on February 21, 2015. He was transported to a hospital where he died several days later. Lisa Fernandez, *A look at the 45 inmates who have died at Santa Rita Jail in the last five years* (Oct. 4, 2019, updated Jan. 17, 2020), available at: <https://www.ktvu.com/news/a-look-at-the-45-inmates-who-have-died-at-santa-rita-jail-in-the-last-five-years>. A civil rights lawsuit was filed. Lucas Guilkey, *Nearly one third of Glenn Dyer prisoners wrap up hunger strike* (Oct. 27, 2017), available at: <https://oaklandnorth.net/2017/10/27/nearly-one-third-of-glenn-dyer-prisoners-wrap-up-hunger-strike/>.

(bb) Dennis Jimenez died by suicide while incarcerated at the Santa Rita Jail on September 1, 2012. He unsuccessfully attempted suicide by cutting his wrists on August 9, 2012. He again attempted suicide by hanging himself with a bedsheet three days later, and was pronounced dead on the way to the hospital. Kristofer Noceda, *Inmate Commits Suicide at Santa Rita Jail* (Sep 4. 2012), available at: <https://patch.com/california/livermore/inmate-commits-suicide-at-santa-rita-jail>. A civil

44

rights lawsuit was filed. *Jimenez v. County of Alameda*, No. 3:13-cv-04620-CRB (N.D. Cal.). The case was settled pretrial for $275,000.

185. <u>Contracted Healthcare/Medical Services</u>: Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE employ a private for-profit company, Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC., to deliver constitutionally-mandated medical services to inmates, with knowledge that the services provided are non-compliant with the contractually bargained-for services, constitutionally inadequate, and unlawful. For example:

(a)    "Wellpath provides health care in 34 of California's 56 county jail systems…" "In multiple instances, the for-profit company has secured multimillion-dollar county contracts without facing a single competitive bid…" "Wellpath hasn't lost a single contract to provide health care in a California county jail since its 2018 founding, even when serious allegations have surfaced." Wellpath is subject to "more than 1,000 lawsuits in U.S. federal courts, filed by prisoners, their families and civil rights groups, naming the company as a defendant, and three recent investigations involving Wellpath's quality of care by the U.S. Department of Justice." There exist "four FBI investigations — three into the company's health care delivery and one into bribery allegations involving Gerard 'Jerry' Boyle, the founder of one of the two companies that merged to become Wellpath and who pleaded guilty to conspiracy to commit mail fraud." "In San Luis Obispo County, the Justice Department concluded that Wellpath did not provide a 'significant' improvement over a jail's former government-run system after the company's takeover in February 2019 — a system whose deficient care had prompted the investigation." "In a 2020 probe into the Massachusetts Department of Corrections, the DOJ found Wellpath's mental health care was so abysmal that it may have violated the U.S. Constitution's protections against 'cruel and unusual punishment,' with 'vague' policies that increased the risk of self-harm and suicide among mentally ill prisoners" and "[a] follow-up report [in 2023] revealed that Wellpath had low staffing levels and high rates of unlicensed mental health providers." "[Another] investigation focused on Correct Care Solutions, which became Wellpath in 2018 after merging with California Forensic Medical Group," where "[i]nvestigators found that the company failed to develop a quality-control plan and overbilled the state for its medical services in a Florida prison. The Federal

45

Bureau of Prisons, which had awarded the contract to CCS, agreed with the DOJ's recommendations on how it could better monitor the company's performance." "A 2020 Reuters investigation of large jails found that patients at institutions using Wellpath and other private providers died at higher rates than at jails with public health care. The investigation found that from 2016 to 2018, for every 10,000 inmates in Wellpath's care, 16 died; in publicly run jails, that rate was 13 per 10,000." "[Wellpath] routinely fails to adequately staff California county jails with qualified nurses and doctors, meaning that sick patients often must wait weeks — or, in emergency situations, crucial minutes or hours — to be treated." "In Yuba County, attorneys appointed by the local Superior Court to monitor the jail's compliance with a decades-old settlement agreement alleging poor conditions found that Wellpath consistently failed to staff enough nurses and therapists to abide by the settlement's terms in both 2020 and 2021." "At the Sonoma County Jail, the National Union of Healthcare Workers, a group that represents many Wellpath nurses in California, sent a report to the Sonoma County Board of Supervisors finding that from December 2021 through March 2022, the jail staffed less than two-thirds of the nurse-hours that were required by their contract. The staffing levels in the jail were so low last March, the union's report found, that for every 500 prisoners in the Sonoma system, just one registered nurse was on duty at any given time." "Three of the five [former Wellpath employees questioned] said they were often responsible for a number of patients that felt unsafe or impossible to manage," including one former nurse stating: "I don't feel safe with 600 patients. That's not an OK ratio. Nowhere in the world is that an OK ratio." Susie Neilson, *Its patients are 'literally a captive market.' Is this California health care giant failing them?* (July 25, 2023), available at: <https://www.sfchronicle.com/california/article/wellpath-health-care-jails-17917489.php>.

(b)     Defendant WELLPATH "has been sued nearly 500 times over the last five years across the country, according to an online review of lawsuits." KTVU FOX 2, Brooks Jarosz , Lisa Fernandez & Simone Aponte, *Santa Rita Jail's medical provider is target of lawsuits, complaints about lack of care* (May 5, 2021), available at: <https://www.ktvu.com/news/santa-rita-jails-medical-provider-is-target-of-lawsuits-complaints-about-lack-of-care>.

(c)     Tamario Smith died from hyponatremia (water intoxication) at the Santa Cruz County Jail on May 10, 2020, while under the medical care of Defendants CALIFORNIA FORENSIC

MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC.. Tamario Smith showed signs overhydration and was observed on camera drinking dirty mop bucket water but was confined to a solitary cell and provided with a treatment plan of medication. Subsequently, Tamario Smith was found dead in his cell and his cause of death as identified as hyponatremia and choking on his own vomit. A civil rights lawsuit was filed. *Smith v. County of Santa Cruz*, No. 5:21-cv-00421-EJD (N.D. Cal.). The case remains pending.

(d)     Rafael Ramirez Lara died from hyponatremia (water intoxication) at the Monterey County Jail in December 2019, while under the medical care of Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC.. Rafael Ramirez Lara was repeatedly denied mental and medical treatment during the course of his four-month incarceration, until he was found dead in his cell. Royal Calkins, *Another Monterey County Jail death claim settled* (Oct. 19, 2022), available at: <https://voicesofmontereybay.org/2022/10/19/another-monterey-county-jail-death-claim-settled/>. A civil rights lawsuit was filed. *Estate of Ramirez Lara v. County of Monterey*, No. 4:21-cv-02409-PJH (N.D. Cal.). The case was settled pretrial for $2,500,000.

(e)     In 2015, Defendant CALIFORNIA FORENSIC MEDICAL GROUP entered into a class action settlement which required it to address issues of inadequate medical and mental healthcare, inadequate staffing, and accommodations for disabled prisoners and serious safety problems at the Monterey County Jail. *Hernandez v. County of Monterey*, No. 5:13-cv-02354-BLF, ECF No. 485 (N.D. Cal. May 15, 2015). Defendant CALIFORNIA FORENSIC MEDICAL GROUP failed completely to comply with the terms of the settlement, and the court issued an order compelling its compliance. *Id*. ECF No. 617 (N.D. Cal. Nov. 1, 2017).

(f)     In August 2021, the Civil Rights Division and the United States Attorney's Office for the Central District of California completed an investigation into the conditions of confinement at the San Luis Obispo County Jail, where medical and mental health services were operated by Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC. since February 2019. Therein, the investigative report concluded, *inter alia*: "Wellpath and its staff appear not to take seriously prisoner grievances or the grievance process as a mechanism for prisoners to raise legitimate medical concerns"; "Wellpath fails to provide adequate

47

staffing to prevent delays in medical care that place prisoners at substantial risk of serious harm"; "[t]he Jail provided no evidence that Wellpath has corrected these deficiencies" related to failure to "conduct critical incident reviews, and when prisoners died, death reviews … includ[ing] a meaningful analysis into causal factors or systemic issues"; "Wellpath does not routinely analyze the quality of care that it provides"; and "Wellpath in fact seems to discourage routine follow-up mental health care." <https://www.justice.gov/opa/press-release/file/1429076/download?utm_medium=email&utm_source=govdelivery>.

(g)     On June 24, 2017, 29-year-old Luis Patino was housed at the Merced County Main Jail, where he remained until his death on September 27, 2017. Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC. was responsible for Luis Patino's medical care. Luis Patino developed valley fever (coccidioidomycosis), a fungal infection caused by coccidioides which was easily diagnosed and treated. In the weeks before his death, Luis Patino complained that he was having chest pain and difficulty breathing. The medical staff failed to diagnose or treat Luis Patino's illness but, instead, prescribed inappropriate and inadequate pain and cold medications. On September 27, 2017, Luis Patino died of disseminated coccidioidomycosis, the most serious form of valley fever. A civil rights lawsuit was filed by Luis Patino's family. *Patino v. County of Merced*, No. 1:18-cv-01468-AWI-SAB (E.D. Cal.). The case was settled pretrial for $150,000.

(h)     "HIG Capital's California Forensic Medical Group (CFMG), now part of Wellpath, and its clients have agreed to pay out millions of dollars in settlements to families of incarcerated people who have alleged negligence in the care the company provided." Jim Baker, *HIG Capital's and Wellpath's Correctional Healthcare Investment Risks* (July 2019), available at: <https://pestakeholder.org/wp-content/uploads/2019/07/HIG-Capitals-Correctional-Healthcare-Investment-Risks-PESP-070819.pdf>.

(i)     "Analysis of California department of justice data by Fairwarning found that about 200 inmates died under the care of California Forensic Medical Group (CFMG), the Californian arm of the [Correctional Medical Group Companies], between 2004 and 2014. Excluding homicide, it works out at a death rate of 1.7 per 1,000 inmates at CFMG jails compared with 1.5 in other jails." Todd Murphy, a director of business development for Correctional Medical Group Companies, stated that "the main

48

reason counties are choosing to outsource their jail healthcare is not to reduce daily costs, but for the comfort of knowing that a lawsuit brought by the family of a dead inmate would be brought against the company and not the county. 'We provide a full partnership to our county partners,' he said. 'But the biggest thing we do is indemnify the county against risk and reliability, do everything we can to keep them out of trouble.'" Rupert Neate, *Welcome to Jail Inc: how private companies make money off US prisons* (June 16, 2026), available at: <https://www.theguardian.com/us-news/2016/jun/16/us-prisons-jail-private-healthcare-companies-profit>.

(j)    In 2013–2014, the Santa Cruz County Grand Jury addressed multiple deaths in the county jail where Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC. provided services. The investigation reviewed five in-custody deaths between August 2012 and July 2013, including two suicides by hanging and four deaths which occurred after Defendant CALIFORNIA FORENSIC MEDICAL GROUP assumed responsibility for the medical services at the jail. Each of the individuals who died in-custody had medical problems, mental health problems, or both. In each in-custody death case, the report identified failures at critical points in the process, sometimes finding that individuals were incorrectly classified, not properly monitored, or inadequately treated. <https://www.co.santa-cruz.ca.us/Portals/0/County/GrandJury/GJ2014_final/2013-2014_SantaCruzCountyGrandJuryFinalReport_complete.pdf>.

(k)    In August 2023,  Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC. and the County of Alameda paid $2,000,000 to settle a federal civil rights lawsuit involving the suicide of a 37-year-old man at Santa Rita Jail. *Estate of Brown v. County of Alameda*, No. 3:22-cv-05457-VC (N.D. Cal.).

(l)    In June 2018, Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC. and the County of Lake paid $2,000,000 to settle a federal civil rights lawsuit involving the suicide of an 86-year-old woman at a county jail. The case revealed the "jail's medical services provider was in violation of state regulations" and utilized "lesser trained vocational nurses to make key medical and mental health decisions for prisoners." Julie Johnson, *Lake County settles jail suicide case for $2 million* (June 18, 2018), available

at: <https://www.pressdemocrat.com/article/news/lake-county-settles-jail-suicide-case-for-2-million/?sba=AAS>.

(m)     As of 2015, over a 10-year period, county jails contracting with Defendant CALIFORNIA FORENSIC MEDICAL had a rate of suicide 50 percent higher than in other county jails in California, and at least three county grand juries had criticized its role in inmate deaths. According to California Department of Justice records, 72 people committed suicide in the last decade while in a jail served by Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC., and the company's suicide prevention efforts have been challenged in the federal lawsuits in multiple municipalities, including the County Monterey, County of Lake, and County of Ventura. Brad Branan, *California for-profit company faces allegations of inadequate inmate care* (Jan. 17, 2015), available at: <https://amp.sacbee.com/article7249637.html>.

(n)     In 2013–2014, the Santa Cruz County Grand Jury addressed multiple deaths in the county jail where Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC. provided services. The investigation reviewed five in-custody deaths between August 2012 and July 2013, including two suicides by hanging and four deaths which occurred after Defendant CALIFORNIA FORENSIC MEDICAL GROUP assumed responsibility for the medical services at the jail. Each of the individuals who died in-custody had medical problems, mental health problems, or both. In each in-custody death case, the report identified failures at critical points in the process, sometimes finding that individuals were incorrectly classified, not properly monitored, or inadequately treated. <https://www.co.santa-cruz.ca.us/Portals/0/County/GrandJury/GJ2014_final/2013-2014_SantaCruzCountyGrandJuryFinalReport_complete.pdf>.

(o)     In August 2015, Pierce County, Washington, cancelled its contract with Defendant WELLPATH. The next month, Pierce County's Prosecuting Attorney sent Defendant WELLPATH a letter in response to a demand for payment. In that letter, the Prosecuting Attorney laid out the "many areas in which [Wellpath] was in default," providing the following list: failure to verify medications at booking; delays in care; poor quality of care; poor record keeping at every level; failure to triage; lag times in getting reports to providers; continued staff shortages and almost weekly turnover; constant lack

50

of leadership; lack of trained personnel; unscheduled shifts; failure to provide basic services; failure to timely review or address inmate requests for medical services; significant pharmacy problems; inmates not getting their medications; staff failure to keep medical records on patients; and many others. The letter continued, "Indeed, the only things [Wellpath] can fault the County for are (1) believing [Wellpath] when they made assurances that they would implement measures to bring their operation of the clinic up to medical standards and (2) giving [Wellpath] time to accomplish it." The letter explained that "[a] lawsuit against Pierce County would flush out [Wellpath's] deplorable performance in running the medical clinic, which would not only result in considerable cost and embarrassment to [Wellpath], but would also provide evidence to support claims filed by other institutions who suffered the same disappointment as Pierce County." The letter noted that the County "compiled independent, detailed documentation of countless errors by [Wellpath] staff that "will shock the conscience of the court." The letter concluded by stating that "[a] jury would likely find that [Wellpath's] operation of the jail medical clinic was incompetent, unprofessional and morally reprehensible." In March 2019, a jury found that Defendant WELLPATH had violated its contract with Pierce County and ordered it to pay the County $1,560,000.

(p)     In January 2016, Dillon Blodgett committed suicide at the detention facility in Montrose County, Colorado. Blodgett had been placed in solitary confinement and had reported suicidal ideations and a previous suicide attempt. Defendant WELLPATH was responsible for providing medical and mental health care at the Montrose County facility but failed adequately to do so. In November 2017, Blodgett's estate sued Defendant WELLPATH, alleging its long history of inadequate medical and mental health care provided in Colorado and across the country.

(q)     In March 2016, sheriff Terry Box of the Collin County (Texas) Sheriff's Office wrote that, when Defendant WELLPATH was providing the medical and mental health care at his jail, "we had a list of 80 inmates waiting to see the psychiatrist." With a new provider, which is not Defendant WELLPATH, he wrote that "[n]ow we don't have a waiting list. Most inmates are seen within 48 to 72 hours and sometimes the same day as the request or referral is made."

(r)     In August 2017, Teresa Nall twice attempted suicide in the Kitsap County (Washington) Jail. After her first suicide attempt, Nall was placed in a solitary crisis cell for a brief

51

period. Shortly after a counselor released her from that cell, Nall attempted suicide again and suffered serious permanent injuries. Nall did not see a psychiatrist, psychologist, or medical doctor after her first suicide attempt. Defendant WELLPATH was responsible for providing medical and mental health care at the Kitsap County facility but failed adequately to do so.

(s)     In September 2017, Jesses Binam hung himself in the Mesa County (Colorado) Detention Center. Binam died from his injuries after being transferred to a local hospital. During his week in custody, Binam made suicide statements and required medication and treatment for serious mental illness. He was taken off suicide watch and moved to administrative segregation because of his behavior. He then hung himself in the segregation cell. Defendant WELLPATH was responsible for providing medical and mental health care at the facility but failed adequately to do so.

(t)     In October 2017, Fulton County (Georgia) notified Defendant WELLPATH that it was terminating for cause its services contract to provide medical services for inmates at the Fulton County Jail. The termination letter described a series of uncured deficiencies and noted that "most seriously, the Fulton County Sheriff's Office has reported five deaths at the Fulton County Jail in the last seventy-five days . . . ."

(u)     In November 2017, Sheriff Gary Simpson of the Kitsap County (Washington) Sheriff's Office sent a letter to Defendant WELLPATH detailing several problems with the medical services being provided. Sheriff Simpson wrote, "In light of recent events and questions I have been asking our staff, I am finding the more I learn, the more questions arise regarding our partnership and relationship with [Wellpath]." The problems included staffing issues, questions about the "veracity and ability to effectively supervise and manage staff" of the Health Services Administrator, and Defendant WELLPATH's failure to perform initial health assessments in a timely fashion.

(v)     In January 2018, Brian Roundtree died by suicide at the Arapahoe County (Colorado) Detention Facility. Roundtree was suffering from severe mental illness and initially was placed on suicide watch when he was booked into the jail. Less than 24 hours later, he was removed from suicide watch by a counselor. He never saw a psychiatrist, a psychologist, or a medical doctor. He died of suicide later that day. Defendant WELLPATH was responsible for providing medical and mental health care at this facility but failed adequately to do so.

(w)     In May 2018, commander Mike Anderson of the Clark County (Washington) Sheriff's Office sent a letter to Wellpath. Anderson noted that "[Wellpath] has always referred to Clark County as their flag ship on the west coast. During our discussion I communicated to you that your flag ship was taking on water and in danger of sinking. This is directly related to [Wellpath]'s inability to staff and provide mental health services from 1/12/18 as required by the contract." Anderson described problems staffing mental health positions for several months, along with a lengthy waiting list of people who needed to see a mental health professional. He concluded: "It is painfully obvious that there is disconnect somewhere in the communication process at the corporate level or other levels of management within [Wellpath]. I would like to know what your plan is to rectify this situation."

(x)     In July 2018, Janelle Butterfield was booked into the Josephine County (Oregon) Jail after failing to appear in court on some misdemeanor charges. Butterfield had a history of severe mental illness that was known to the staff at the jail, including to its medical and mental health providers. During her 40 days in custody, Butterfield did not see a single doctor, nurse practitioner, physician's assistant, or nurse employed by the medical or mental health providers. She was placed in a segregation unit and checked once a day by persons with an EMT licenses. Herantipsychotic medication was discontinued without explanation after 16 days in custody. After 40 days, she died by suicide in her segregation cell. Defendant WELLPATH was responsible for providing medical and mental health care at this facility but failed adequately to do so.

(y)     In March 2021, Carlos Patino Regalado died by suicide at the Monterey County (California) Jail. Regalado had been in custody for about a month and had been on and off suicide watch several times, sometimes for expressing suicidal thoughts, other times because of actual suicide attempts. Earlier on the day he hung himself, Regalado had been on a suicide watch because he had just returned from the hospital following a "psychiatric emergency." The watch was discontinued, and he was placed in an isolation cell that contained a number of hanging points. Defendant WELLPATH was responsible for providing medical and mental health care at this facility but failed adequately to do so.

(z)     In April 2022, Carlos Chavez died by apparent suicide at the Monterey County (California) Jail. Chavez had been on suicide watch; after being removed from the watch, he died less than a day later. Defendant WELLPATH was responsible for providing medical and mental health care at

this facility but failed adequately to do so.

186.     Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC. were aware of the policies and customs described above, including repeated in-custody deaths at Santa Rita Jail due to the custody and medical staff's indifference and deficiencies in the delivery of healthcare/medical services in violation of national and local standards, such as the National Commission on Correctional Healthcare ("NCCHC"), Institute for Medical Quality ("IMQ"), and American Correctional Association ("ACA"), including for inadequate screening and assessments concerning inmates suffering from acute medical conditions such as PPD/water intoxication.

187.     Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC. were or should have been on notice regarding the need to discontinue, modify, or implement new and different versions of deficient policies or customs because the inadequacies constituted life-threatening decision and were so obvious and likely to result in violations of the rights of inmates housed at Santa Rita Jail, including JESUS ERIC MAGANA.

188.     Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC.'s inadequate policies, customs, training, and supervision proximately caused violations of the rights of inmates housed at Santa Rita Jail, including JESUS ERIC MAGANA.

## FIRST CLAIM

### Deliberate Indifference / Special Relationship

### (U.S. Const. Amend. XIV; 42 U.S.C. § 1983)

189.     Plaintiff ESTATE OF JESUS ERIC MAGANA (pursuant to California Code of Civil Procedure § 377.30) asserts this Claim against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET

54

CHAGGER, HARKAMALJIT HUNDAL, and DOE 2 to 20.

190. The allegations of the preceding paragraphs 1 to 187 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

191. *Individual Liability*: Defendants ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, LUIS MARTINEZ in place of Doe 1 and DOE 2 to 20 exhibited deliberate indifference to JESUS ERIC MAGANA's serious medical needs, including PPD/water intoxication, putting him at substantial risk of suffering serious harm, and did not take reasonable available measures to abate that risk, where a reasonable official in the circumstances would have appreciated the high degree of risk involved, in the violation of the Fourteenth Amendment to the United States Constitution.

192. *Municipal / Supervisory Liability*: Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC. maintained policies or customs of action and inaction and knew or should have known that jail staff under their command were inadequately trained, supervised, or disciplined resulting from either the lack of proper training, pursuant to policy, or the result of the lack of policy, in violation of the Fourteenth Amendment to the United States Constitution.

193. Defendants YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 2 to 20's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to rights, or were wantonly or oppressively done.

194. JESUS ERIC MAGANA was injured as a direct and proximate result of Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 2 to 20's actions and inactions, entitling Plaintiff ESTATE OF JESUS ERIC MAGANA to receive compensatory

55

(survival) and nominal damages against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 2 to 20; and punitive damages against Defendants YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 2 to 20.

WHEREFORE, Plaintiff ESTATE OF JESUS ERIC MAGANA prays for relief as hereunder appears.

## SECOND CLAIM

### Title II of the Americans with Disabilities Act

### (42 U.S.C. § 12101, *et seq.*)

195.    Plaintiff ESTATE OF JESUS ERIC MAGANA (pursuant to California Code of Civil Procedure § 377.30) asserts this Claim against Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE.

196.    The allegations of the preceding paragraphs 1 to 187 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

197.    Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE qualify as a "public entity" within the meaning of 42 U.S.C. § 12131(1)(A) and 28 C.F.R. § 35.104. Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE receive federal financial assistance. JESUS ERIC MAGANA had impairments that substantially limited one or more major life activities and had a record of such impairments.

198.    *Vicarious Liability*: Defendants ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20 failed reasonably to accommodate JESUS ERIC MAGANA's disabilities and impairments, where a reasonable accommodation was available, including: (a) by monitoring, classifying, and housing

56

JESUS ERIC MAGANA in a manner which he could receive necessary healthcare/medical services and treatment; (b) by providing JESUS ERIC MAGANA with necessary healthcare/medical services and treatment; and/or (c) by transferring JESUS ERIC MAGANA to an outside facility which could provide necessary healthcare/medical services and treatment, with deliberate indifference or reckless disregard, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

199. *Municipal / Vicarious Liability*: Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC. failed reasonably to accommodate JESUS ERIC MAGANA's disabilities and impairments, where a reasonable accommodation was available, including by maintaining adequate policies or customs of action and inaction, with deliberate indifference or reckless disregard, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

200. JESUS ERIC MAGANA was injured as a direct and proximate result of Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 2 to 20's actions and inactions, entitling Plaintiff ESTATE OF JESUS ERIC MAGANA to receive compensatory (survival) and nominal damages against Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE.

WHEREFORE, Plaintiff ESTATE OF JESUS ERIC MAGANA prays for relief as hereunder appears.

### THIRD CLAIM

#### § 504 of the Rehabilitation Act

#### (29 U.S.C. § 701, *et seq.*)

201. Plaintiff ESTATE OF JESUS ERIC MAGANA (pursuant to California Code of Civil Procedure § 377.30) asserts this Claim against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH

57

LLC, and WELLPATH MANAGEMENT, INC.

202. The allegations of the preceding paragraphs 1 to 187 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

203. Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC. receive federal financial assistance. JESUS ERIC MAGANA had impairments that substantially limited one or more major life activities and had a record of such impairments.

204. *Vicarious Liability*: Defendants ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20 failed reasonably to accommodate JESUS ERIC MAGANA's disabilities and impairments, where a reasonable accommodation was available, including: (a) by monitoring, classifying, and housing JESUS ERIC MAGANA in a manner which he could receive necessary healthcare/medical services and treatment; (b) by providing JESUS ERIC MAGANA with necessary healthcare/medical services and treatment; and/or (c) by transferring JESUS ERIC MAGANA to an outside facility which could provide necessary healthcare/medical services and treatment, with deliberate indifference or reckless disregard, in violation of the Rehabilitation Act, 29 U.S.C. § 794, *et seq*.

205. *Municipal / Vicarious Liability*: Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC. failed reasonably to accommodate JESUS ERIC MAGANA's disabilities and impairments, where a reasonable accommodation was available, including by maintaining adequate policies or customs of action and inaction, with deliberate indifference or reckless disregard, in violation of the Rehabilitation Act, 29 U.S.C. § 794, *et seq*.

206. JESUS ERIC MAGANA was injured as a direct and proximate result of Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC.,

58

RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 2 to 20's actions and inactions, entitling Plaintiff ESTATE OF JESUS ERIC MAGANA to receive compensatory (survival) and nominal damages against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC.

WHEREFORE, Plaintiff ESTATE OF JESUS ERIC MAGANA prays for relief as hereunder appears.

## FOURTH CLAIM

### Unwarranted Interference with Familial Association

### (U.S. Const. Amend. XIV; 42 U.S.C. § 1983)

207.    Plaintiff JESUS MAGANA DUARTE asserts this Claim against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 2 to 20.

208.    The allegations of the preceding paragraphs 1 to 187  are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

209.    Plaintiff JESUS MAGANA DUARTE shared a close relationship and special bond with JESUS ERIC MAGANA, his biological child, which included deep attachments, commitments, and distinctively personal aspects of their lives and was typical of a close familial relationship. For example, Plaintiff JESUS MAGANA DUARTE frequently lived, visited, and spoke with JESUS ERIC MAGANA and shared a loving father-son relationship, prior to JESUS ERIC MAGANA's death.

210.    *Municipal / Supervisory / Individual Liability*: Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20 caused termination of and interference with Plaintiff JESUS MAGANA DUARTE's familial relationship with JESUS ERIC

59

MAGANA, including by exhibiting deliberate indifference to JESUS ERIC MAGANA's need for mental health care or treatment, in violation of the Fourteenth Amendment to the United States Constitution.

211. Defendants YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 2 to 20's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

212. Plaintiff JESUS MAGANA DUARTE was injured as a direct and proximate result of Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 2 to 20's actions and inactions, entitling him to receive compensatory (wrongful death) and nominal damages against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER, LUIS MARTINEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20; and punitive damages against Defendants YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20.

WHEREFORE, Plaintiff JESUS MAGANA DUARTE prays for relief as hereunder appears.

## FIFTH **CLAIM**

### Failure to Summon Medical Care

### (Cal. Gov. Code § 845.6)

213. Plaintiff ESTATE OF JESUS ERIC MAGANA (pursuant to California Code of Civil Procedure § 377.30) asserts this Claim against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, , and DOE 1 to 20.

214. The allegations of the preceding paragraphs 1 to 187 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

215. *Individual Liability*: Defendants ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ and DOE 1 to 20 knew or had reason to know that JESUS ERIC MAGANA was in need of immediate medical care and failed to take reasonable action to summon such medical care, in violation of California Government Code § 845.6.

216. *Municipal / Supervisory Liability*: Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and YESENIA SANCHEZ maintained policies or customs of action and inaction, in violation of California Government Code § 845.6.

217. *Vicarious Liability*: Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE are vicariously liable, through the principles of *respondeat superior* and pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of agents, employees, and contractors acting within the scope of employment, including Defendants YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ and DOE 1 to 20.

218. Defendants YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

219. JESUS ERIC MAGANA was injured as a direct and proximate result of Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, , and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF JESUS ERIC MAGANA to receive compensatory (survival) and nominal damages against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER

61

CANDELARIO, LUIS MARTINEZ, , and DOE 1 to 20; and punitive damages against Defendants YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, , and DOE 1 to 20.

WHEREFORE, Plaintiff ESTATE OF JESUS ERIC MAGANA prays for relief as hereunder appears.

## SIXTH CLAIM

### California Public Records Act

### (Cal. Gov. Code § 7920.000 *et seq.*)

220. Plaintiff ESTATE OF JESUS ERIC MAGANA (pursuant to Cal. Code Civ. Proc. § 377.30) asserts this Claim against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and YESENIA SANCHEZ.

221. The allegations of the preceding paragraphs 1 to 187are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

222. Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and YESENIA SANCHEZ failed to produce public records, including in a timely and complete manner, in violation of California Government Code § 7920.000 *et seq*.

223. Plaintiff ESTATE OF JESUS ERIC MAGANA was injured as a direct and proximate result of Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and YESENIA SANCHEZ's actions and inactions, entitling it to receive declaratory and injunctive relief against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and YESENIA SANCHEZ.

WHEREFORE, Plaintiff ESTATE OF JESUS ERIC MAGANA prays for relief as hereunder appears.

## SEVENTH CLAIM

### Failure to Produce Patient Records

### (Cal. Evid. Code § 1158)

224. Plaintiff ESTATE OF JESUS ERIC MAGANA (pursuant to Cal. Code Civ. Proc. § 377.30) asserts this Claim against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY

62

SHERIFF'S OFFICE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC.

225. The allegations of the preceding paragraphs 1 to 187 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

226. Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC. failed to produce JESUS ERIC MAGANA's medical records, including in a timely and complete manner, in violation of California Evidence Code § 1158.

227. Plaintiff ESTATE OF JESUS ERIC MAGANA was injured as a direct and proximate result of Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC.'s actions and inactions, entitling it to receive reasonable expenses against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC.

WHEREFORE, Plaintiff ESTATE OF JESUS ERIC MAGANA prays for relief as hereunder appears.

## EIGHTH CLAIM

### Tom Bane Civil Rights Act

### (Cal. Civ. Code § 52.1)

228. Plaintiffs ESTATE OF JESUS ERIC MAGANA (pursuant to California Code of Civil Procedure § 377.30) and JESUS MAGANA DUARTE assert this Claim against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ,  CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20.

229. The allegations of the preceding paragraphs 1 to 187 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

Deliberate Indifference / Special Relationship

63

230. *Individual Liability*: Defendants ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20 exhibited deliberate indifference to JESUS ERIC MAGANA's serious medical needs, including PPD/water intoxication, putting him at substantial risk of suffering serious harm, and did not take reasonable available measures to abate that risk, where a reasonable official in the circumstances would have appreciated the high degree of risk involved, with deliberate indifference or reckless disregard, in violation of the Fourteenth Amendment to the United States Constitution and Article I, Section 7(a) of the California Constitution.

231. *Municipal / Supervisory Liability*: Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC. maintained policies or customs of action and inaction and knew or should have known that jail staff under their command were inadequately trained, supervised, or disciplined resulting from either the lack of proper training, pursuant to policy, or the result of the lack of policy, with deliberate indifference or reckless disregard, in violation of the Fourteenth Amendment to the United States Constitution and Article I, Section 7(a) of the California Constitution.

Section 504 of the Rehabilitation Act & Title II of the Americans with Disabilities Act

232. *Vicarious Liability*: Defendants ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, , RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20 failed reasonably to accommodate JESUS ERIC MAGANA's disabilities and impairments, where a reasonable accommodation was available, including: (a) by monitoring, classifying, and housing JESUS ERIC MAGANA in a manner which he could receive necessary healthcare/medical services and treatment; (b) by providing JESUS ERIC MAGANA with necessary healthcare/medical services and treatment; and/or (c) by transferring JESUS ERIC MAGANA to an outside facility which could provide necessary healthcare/medical services and treatment, with deliberate indifference or reckless disregard, in violation of the Rehabilitation Act, 29 U.S.C. § 701, *et seq*. and Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

233. *Municipal / Vicarious Liability*: Defendants COUNTY OF ALAMEDA, ALAMEDA

64

COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC. failed reasonably to accommodate JESUS ERIC MAGANA's disabilities and impairments, where a reasonable accommodation was available, including by maintaining adequate policies or customs of action and inaction, with deliberate indifference or reckless disregard, in violation of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.* and Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

Failure to Summon Medical Care

234. *Individual Liability*: Defendants ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ and DOE 1 to 20 knew or had reason to know that JESUS ERIC MAGANA was in need of immediate medical care and failed to take reasonable action to summon such medical care, and mental health care, with deliberate indifference or reckless disregard, in violation of California Government Code § 845.6.

235. *Municipal / Supervisory Liability*: Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC. maintained policies or customs of action and inaction, with deliberate indifference or reckless disregard, in violation of California Government Code § 845.6.

California Public Records Act

236. Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and YESENIA SANCHEZ failed to produce public records, including in a timely and complete manner, with specific intent (*i.e.*, deliberate indifference or reckless disregard), in violation of California Government Code § 7920.000 *et seq.*

Failure to Produce Patient Records

237. Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC. failed to produce JESUS ERIC MAGANA's medical records, including in a timely and complete manner, with specific intent (*i.e.*, deliberate indifference or reckless disregard), in violation of California Evidence Code § 1158.

65

Unwarranted Interference with Familial Association

238. *Municipal / Supervisory / Individual Liability*: Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ,  CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20 caused termination of and interference with Plaintiff JESUS MAGANA DUARTE's familial relationship with JESUS ERIC MAGANA, including by exhibiting deliberate indifference to JESUS ERIC MAGANA's need for mental health care or treatment, with specific intent (*i.e.*, deliberate indifference or reckless disregard), in violation of the First and Fourteenth Amendments to the United States Constitution; and Article I, Section 7(a) of the California Constitution.

\* \* \*

(Allegations Common to All Theories)

239. *Vicarious Liability*: Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC. are vicariously liable, through the principles of *respondeat superior* and pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of agents, employees, and contractors acting within the scope of employment, including Defendants YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ,  CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and/or DOE 1 to 20.

240. Defendants YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, , CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

241. JESUS ERIC MAGANA and Plaintiff JESUS MAGANA DUARTE were injured as a

direct and proximate result of Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20's actions and inactions, entitling Plaintiffs ESTATE OF JESUS ERIC MAGANA and JESUS MAGANA DUARTE to receive compensatory (survival and wrongful death) and treble damages and civil penalties against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, , CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20; and punitive damages against Defendants YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20.

WHEREFORE, Plaintiffs ESTATE OF JESUS ERIC MAGANA and JESUS MAGANA DUARTE pray for relief as hereunder appears.

## NINTH CLAIM

### Intentional Infliction of Emotional Distress

242. Plaintiff ESTATE OF JESUS ERIC MAGANA (pursuant to California Code of Civil Procedure § 377.30) asserts this Claim against Defendants YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20.

243. The allegations of the preceding paragraphs 1 to 187 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

244. *Individual Liability*: Defendants ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, RAJENDRA MAHAJAN, SUMEET CHAGGER,

67

HARKAMALJIT HUNDAL, and DOE 1 to 20 engaged in outrageous conduct, with intent or reckless disregard of the probability that JESUS ERIC MAGANA would suffer emotional distress and he did suffer severe emotional distress, including by exhibiting deliberate indifference to JESUS ERIC MAGANA's need for healthcare/medical services and treatment; by failing reasonably to accommodate JESUS ERIC MAGANA's disabilities and impairments; and/or by failing timely to summon necessary medical care in violation of California Government Code § 845.6.

245. *Supervisory Liability*: Defendants YESENIA SANCHEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., and DOE 1 to 20 engaged in outrageous conduct, including by maintaining policies or customs of action and inaction, with intent or reckless disregard of the probability that JESUS ERIC MAGANA would suffer emotional distress and he did suffer severe emotional distress.

246. *Vicarious Liability*: Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC. are vicariously liable, through the principles of *respondeat superior*, for injuries proximately caused by the acts and omissions of agents, employees, and contractors acting within the scope of employment, including Defendants RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20.

247. Defendants YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

248. JESUS ERIC MAGANA was injured as a direct and proximate result of Defendants YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, , CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF JESUS ERIC MAGANA to receive compensatory (survival), nominal, and punitive damages against Defendants YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS

68

MARTINEZ, , CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH

MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT

HUNDAL, and DOE 1 to 20.

WHEREFORE, Plaintiff ESTATE OF JESUS ERIC MAGANA prays for relief as hereunder

appears.

## TENTH CLAIM

### Negligence

249.    Plaintiff ESTATE OF JESUS ERIC MAGANA (pursuant to California Code of Civil

Procedure § 377.30) asserts this Claim against Defendants COUNTY OF ALAMEDA, ALAMEDA

COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE,

PETER CANDELARIO, LUIS MARTINEZ,  CALIFORNIA FORENSIC MEDICAL GROUP, INC.,

WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET

CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20.

250.    The allegations of the preceding paragraphs 1 to 187 are realleged and incorporated, to the

extent relevant and as if fully set forth in this Claim.

251.    *Individual Liability*: Defendants ERIK BAKER, ZACHARY TSANG-LEE, PETER

CANDELARIO, LUIS MARTINEZ,  RAJENDRA MAHAJAN, SUMEET CHAGGER,

HARKAMALJIT HUNDAL, and DOE 1 to 20 owed a duty of care to JESUS ERIC MAGANA and

breached that duty, including by failing to prevent foreseeable harm to JESUS ERIC MAGANA; by

exhibiting deliberate indifference to JESUS ERIC MAGANA's need for medical care; by failing

reasonably to accommodate JESUS ERIC MAGANA's mental impairment; and/or by failing timely to

summon medical care and/or mental health care in violation of California Government Code § 845.6.

252.    *Supervisory Liability*: Defendants YESENIA SANCHEZ, CALIFORNIA FORENSIC

MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC. owed a duty

of care to JESUS ERIC MAGANA, including by creating or increasing an unreasonable risk of harm to

JESUS ERIC MAGANA; through a special relationship (public protection and/or jailer-prisoner) with

JESUS ERIC MAGANA as a detainee; and/or through a special relationship (employer-employee) with

Defendants ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ,

69

RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and/or DOE 1 to 20 as employees, and breached that duty, including by maintaining policies or customs of action and inaction which resulted in harm to JESUS ERIC MAGANA.

253. *Municipal Liability*: Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE owed a duty of care to JESUS ERIC MAGANA created by California Government Code § 845.6 and breached that duty, including by maintaining policies or customs of action and inaction resulting in harm.

254. *Vicarious Liability*: Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC. are vicariously liable, through the principles of *respondeat superior* and pursuant to California Government Code § 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of agents, employees, and contractors acting within the scope of employment, including Defendants YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and/or DOE 1 to 20.

255. Defendants YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

256. JESUS ERIC MAGANA was injured as a direct and proximate result of Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF JESUS ERIC MAGANA to receive compensatory (survival) damages against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO,

70

LUIS MARTINEZ,  CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC,

WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER,

HARKAMALJIT HUNDAL, and DOE 1 to 20; and punitive damages against Defendants YESENIA

SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, ,

CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH

MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT

HUNDAL, and DOE 1 to 20.

WHEREFORE, Plaintiff ESTATE OF JESUS ERIC MAGANA prays for relief as hereunder

appears.

## ELEVENTH CLAIM

### Spoliation of Evidence

### (Federal Rules of Civil Procedure 37(e))

1.      Plaintiff JESUS MAGANA DUARTE asserts this Claim against Defendants COUNTY

OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, ERIK BAKER,

ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, , LUIS MARTINEZ, ,

CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH

MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT

HUNDAL, and DOE 1 to 20.

2.      The allegations of the preceding paragraphs 1 to 187 are realleged and incorporated, to the

extent relevant and as if fully set forth in this Claim.

3.      Defendants had a duty to preserve Electronically Stored Information.

4.      Defendants failed to do so, and intended to deprive  plaintiffs of the information's use in

this litigation.

5.      The lost information is presumed to be unfavorable to defendants.

WHEREFORE, Plaintiff ESTATE OF JESUS ERIC MAGANA prays for relief as hereunder

appears.

**TWELTH CLAIM**

**Wrongful Death**

**(Cal. Code Civ. Proc. § 377.60)**

6.    Plaintiff JESUS MAGANA DUARTE asserts this Claim against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, , LUIS MARTINEZ, , CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20.

7.    The allegations of the preceding paragraphs 1 to 187  are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

8.    Plaintiff JESUS MAGANA DUARTE and JESUS ERIC MAGANA shared a natural parent-child relationship, and Plaintiff JESUS MAGANA DUARTE held JESUS ERIC MAGANA as his own. For example, Plaintiff JESUS MAGANA DUARTE frequently lived, visited, and spoke with JESUS ERIC MAGANA and shared a loving father-son relationship, prior to JESUS ERIC MAGANA's death. Plaintiff JESUS MAGANA DUARTE is the biological parent of JESUS ERIC MAGANA and JESUS ERIC MAGANA died without issue, leaving Plaintiff JESUS MAGANA DUARTE as JESUS ERIC MAGANA's heir and successor-in-interest.

9.    *Individual Liability*: Defendants ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ,  CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20 caused JESUS ERIC MAGANA's death by wrongful act or neglect, including by failing to prevent foreseeable harm to JESUS ERIC MAGANA; by exhibiting deliberate indifference to JESUS ERIC MAGANA's need for medical care; and need for mental health care, by failing reasonably to accommodate JESUS ERIC MAGANA's mental impairment; and/or by failing timely to summon medical care in violation of California Government Code § 845.6.

10.    *Municipal / Supervisory Liability*: Defendants COUNTY OF ALAMEDA, ALAMEDA

COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, and CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC. caused JESUS ERIC MAGANA's death by wrongful act or neglect, including by maintaining policies or customs of action and inaction which resulted in harm to JESUS ERIC MAGANA.

11. *Vicarious Liability*: Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, and CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC. are vicariously liable, including through the principles of *respondeat superior* and pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of agents and employees acting within the scope of employment, including Defendants YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and/or DOE 1 to 20.

12. Defendants YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

13. JESUS ERIC MAGANA's death was caused as a direct and proximate result of Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20's actions and inactions, entitling Plaintiff JESUS MAGANA DUARTE to receive compensatory damages against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET

73

CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20; and punitive damages against Defendants YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20.

WHEREFORE, Plaintiff JESUS MAGANA DUARTE prays for relief as hereunder appears.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs ESTATE OF JESUS ERIC MAGANA and JESUS MAGANA DUARTE seeks Judgment as follows:

1.      For entry of default judgment;

2.      For an award of compensatory, general, special, and nominal damages (including survival and wrongful death damages under federal and state law) against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, , CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20, according to proof at trial;

3.      For an award of exemplary/punitive damages against Defendants YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, LUIS MARTINEZ, , CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20, in an amount sufficient to deter and to make an example of them, because their actions and/or inactions, as alleged, were motivated by evil motive or intent, involved reckless or callous indifference to constitutionally and statutorily protected rights, or were wantonly or oppressively done, and/or constituted oppression and/or malice resulting in great harm;

4.      For funeral and/or burial expenses;

5.      For an award of actual damages, treble damages, punitive damages, civil penalties, and any other available relief against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER

74

CANDELARIO, LUIS MARTINEZ, , CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20, pursuant to California Civil Code §§ 52, 52.1, and any other statute as may be applicable (except that no punitive damages are sought against Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE, pursuant to California Civil Code § 818);

      6.     For an award of declaratory and injunctive relief against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and YESENIA SANCHEZ, pursuant to California Government Code § 7923.000 *et seq*., including a peremptory writ of mandate compelling production of records described in California Penal Code § 832.10 immediately and without further delay; or, to the extent there are exceptional circumstances that make it unreasonable for production of any such records immediately, a peremptory writ of mandate compelling production of an estimated date that the records at issue will be available; or, a peremptory writ of mandate compelling production of a list of all records being withheld, specifying the exemptions for each record applicable; or, a writ of mandate compelling production of all requested records, except those records deemed exempt from disclosure;

      7.     For an award of reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988, 29 U.S.C. § 794, 42 U.S.C. § 12205, California Civil Code § 52.1, California Code of Civil Procedure § 1021.5, California Government Code § 7923.115, California Evidence Code § 1158, and any other statute as may be applicable;

      8.     For interest; and

      9.     For an award of any other further relief, as the Court deems fair, just, and equitable.

Dated: July 9, 2025                  Respectfully Submitted,

                         By:   */s/ Yolanda Huang*
                            Yolanda Huang
                            LAW OFFICES OF YOLANDA HUANG
                            2748 Adeline Street, Suite A
                            Berkeley, California 94703
                            Telephone: (510) 329-2140
                            Facsimile: (510) 580-9410

Mark E. Merin
Paul H. Masuhara
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone: (916) 443-6911
Facsimile: (916) 447-8336

Attorneys for Plaintiffs
ESTATE OF JESUS ERIC MAGANA
and JESUS MAGANA DUARTE

## JURY TRIAL DEMAND

A JURY TRIAL IS DEMANDED on behalf of Plaintiffs ESTATE OF JESUS ERIC MAGANA and JESUS MAGANA DUARTE.

Dated: July 9, 2025

Respectfully Submitted,

By: */s/ Yolanda Huang*
 Yolanda Huang
 LAW OFFICES OF YOLANDA HUANG
 2748 Adeline Street, Suite A
 Berkeley, California 94703
 Telephone: (510) 329-2140
 Facsimile: (510) 580-9410

 Mark E. Merin
 Paul H. Masuhara
 LAW OFFICE OF MARK E. MERIN
 1010 F Street, Suite 300
 Sacramento, California 95814
 Telephone: (916) 443-6911
 Facsimile: (916) 447-8336

 Attorneys for Plaintiffs
 ESTATE OF JESUS ERIC MAGANA
 and JESUS MAGANA DUARTE