Richard W. Osman, State Bar No. 167993
John K. Salcedo, State Bar No. 320340
BERTRAND, FOX, ELLIOT, OSMAN & WENZEL
2749 Hyde Street
San Francisco, California 94109
Telephone: (415) 353-0999
Facsimile: (415) 353-0990
Email: rosman@bfesf.com
jsalcedo@bfesf.com

Attorneys for Defendants
COUNTY OF ALAMEDA,
ALAMEDA COUNTY SHERIFF'S OFFICE,
YESENIA SANCHEZ, ERIK BAKER,
ZACHARY TSANG-LEE, PETER CANDELARIO,
& LUIS MARTINEZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF JESUS ERIC MAGANA and JESUS MAGANA DUARTE,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC & WELLPATH MANAGEMENT, INC., also known as LIQUIDATING TRUST, a nominal party, RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20,<br><br>Defendants. | Case No. 3:24-cv-04716-JD<br><br>**DEFENDANTS COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, LUIS MARTINEZ, ERIK BAKER, ZACHARY TSANG-LEE, AND PETER CANDELARIO NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date: October 2, 2025<br>Time: 10:00 AM<br>Location: San Francisco Courthouse<br>Courtroom 11, 19th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br><br>**Hon. James Donato** |

## Table of Contents


NOTICE ........ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

I. SUMMARY OF ARGUMENT AND STATEMENT OF ISSUES TO BE DECIDED ........ 1

II. STATEMENT OF FACTS ALLEGED BY PLAINTIFFS ........ 2

III. LEGAL ARGUMENT ........ 4

A. The Complaint Fails To State Facts To Withstand Dismissal Under FRCP Rule 12(b)(6) ........ 4

B. The First and Fourth Claim Fail to State §1983 Claims Against the Individual Defendants ........ 4

C. The First Claim Fails To State A §1983 *Monell* Claim Against The County ........ 6

1. No County Policy, Pattern Or Custom Is Shown ........ 7

2. No Facts Are Alleged To Show A Municipal Ratification Claim ........ 9

3. No Facts Are Stated To Show Municipal Liability For Inadequate Training ........ 10

D. The Second and Third Claims Fail to State a Claim (ADA & the Rehabilitation Act) ........ 11

E. The Fourth Claim Fails to State a Claim (§ 1983: Interference with Familial Association) ........ 12

F. Duarte's State Claims Are Barred for Failure to Present a Government Tort Claim ........ 12

G. The Fifth Cause Of Action Fails To State A Claim For Violation Of Govt. Code §845.6 ........ 13

H. The Eighth Claim Fails to State a Claim (Cal. Civ. C. § 52.1 (Bane Act)) ........ 13

I. The Ninth Claim Fails to State a Claim (Intentional Infliction of Emotional Distress) ........ 14

J. The Eleventh Claim Fails to State a Claim (Spoliation of Evidence) ........ 15

K. Sanchez is Immune From Liability From the Conduct of Others Under Govt. C. § 820.8 ........ 15

IV. CONCLUSION ........ 15

## Table of Authorities

**Cases**

*AE ex rel. Hernandez v. Cnty. of Tulare*
666 F.3d 631 (9th Cir. 2012) ........................................ 6, 7

*Albrecht v. Lund*
845 F.2d 193 (9th Cir. 1988) ........................................ 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................ 2, 4, 6, 14

*Bay Area Rapid Transit Dist. v. Superior Court*
38 Cal.App.4th 141 (1995) ........................................ 14

*Bd. of the Cnty. Comm'rs. of Bryan Cnty. v. Brown*
520 U.S. 397 (1996) ........................................ 6, 7, 8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................ 2, 6

*Castaneda v. Dept. of Corr. & Rehab.*
212 Cal.App.4th 1051 (2013) ........................................ 13

*Castro v. Cnty. of Los Angeles*,
833 F.3d 1060 (9th Cir. 2016) ........................................ 7

*Christensen v. Superior Court*
54 Cal.3d 868 (1991) ........................................ 14

*Christie v. Iopa*
176 F.3d 1231 (9th Cir. 1999) ........................................ 9

*City of Canton v. Harris*
489 U.S. 378 (1989) ........................................ 6, 10, 11

*City of Los Angeles v. Heller*
475 U.S. 796 (1986) ........................................ 6

*City of Simi Valley v. Superior Court*
111 Cal.App.4th 1077 (2003) ........................................ 14

*City of St. Louis v. Praprotnik*
485 U.S. 112 (1988) ........................................ 6, 8

Connick v. Thompson
563 U.S. 51 (2011) ........................................ 6, 10

*Corales v. Bennet*
567 F.3d 554 (9th Cir. 2009) ........................................ 15

*Davidson v. City of Westminster*
32 Cal.3d 197 (1982) ........................................ 14

*Davis v. Ellensburg*
869 F.2d 1230 (9th Cir. 1989) ....................7

*Duvall v. County of Kitsap*
260 F.3d 1124 (9th Cir. 2001) ....................11

*Eclectic Prop.'s East, LLC v. Marcus & Millichap Co.*
751 F.3d 990 (9th Cir. 2014) ....................4

Galindo v. City of San Mateo
2016 WL 7116927 (N.D. Cal. 2016)....................6

*Gausvik v. Perez*
392 F.3d 1006 (9th Cir. 2004) ....................12

*Gillette v. Delmore*
979 F.2d 1342 (9th Cir. 1992) ....................9

*Gordon v. County of Orange*
888 F.3d 1118 (9th Cir. 2018) ....................5

*Henderson v. City & Cnty. of San Francisco,*
2006 WL 3507944 (N.D. Cal. Dec. 1, 2006)....................7

*Hopkins v. Bonvicino*
573 F.3d 752 (9th Cir. 2009) ....................4

*Jett v. Dallas Indep. Sch. Dist.*
491 U.S. 701 (1989) ....................9

*Jett v. Penner*
439 F.3d 1091 (9th Cir. 2006) ....................13

*Johnson v. City of Vallejo*
99 F.Supp.3d 1212 (E.D. Cal. 2015)....................7

*K.M. v. Tustin Unified Sch. Dist.*
725 F.3d 1088 (2013) ....................11

*Kanae v. Hodson*
294 F.Supp.2d 1179 (D. Haw. 2003) ....................9

*Kinney v. Contra Costa Cnty.*
8 Cal.App.3d 761 (1970) ....................13

*Lee v. City of Los Angeles*
250 F.3d 668 (9th Cir. 2001) ....................12

*Lemire v. Cal. Dept. Corr. & Rehab.*
726 F.3d 1062 (9th Cir. 2013) ....................5

*Lucas v. City of Long Beach*
60 Cal.App.3d 341 (1976) ....................13

*McMillan v. Monroe County*
520 U.S. 781 (1997) ....................9

*Monell v. New York Dept. of Soc. Servs.*
436 U.S. 658 (1978) ........ passim

*Moss v. U.S. Secret Servs.*
572 F.3d 962 (9th Cir. 2009) ........ 4

*Munoz v. California*
33 Cal.App.4th 1767 (1995) ........ 13

*Navarro v. Block*
250 F.3d 729 (9th Cir. 2001) ........ 7

*Nelson v. Cnty. of Los Angeles*
113 Cal.App.4th 783 (Cal. Ct. App. 2003) ........ 13

*Nguyen v. L.A. Cty. Harbor/UCLA Med. Ctr.*
8 Cal. App. 4th 729 (1992) ........ 13

*O'Guinn v. Lovelock Corr. Ctr.*
502 F.3d 1056 (9th Cir. 2007) ........ 11

*Palmer v. Sanderson*
9 F.3d 1433 (9th Cir. 1993) ........ 6

*Payan v. Los Angeles Cmty. Coll. Dist.*
11 F.4th 729 (9th Cir. 2021) ........ 12

*Potter v. Firestone Tire & Rubber Co.*
6 Cal.4th 965 (1993) ........ 15

*Roach v. Lee*
369 F. Supp. 2d 1194 (C.D. Cal. 2005) ........ 15

*Sanchez v. City of Fresno*
914 F.Supp.2d 1079 (E.D. Cal. 2012) ........ 7

*Sandoval v. County of San Diego*
985 F.3d 657 (9th Cir. 2021) ........ 5

*Sandoval v. Cty. of Sonoma*
912 F.3d 509 (9th Cir. 2018) ........ 14

*Shirk v. Vista Unified Sch. Dist.*
42 Cal. 4th 201 (2007) ........ 12

*Starr v. Baca*
652 F.3d 1202 (2011) ........ 6

*Tekle v. United States*
511 F.3d 839 (9th Cir.2007) ........ 14

*Tolosko-Parker v. County of Sonoma*
2009 WL 498099 (N.D. Cal. 2009) ........ 14

*Trevino v. Gates*
99 F.3d 911 (9th Cir. 1996) ........ 7

*Updike v. Multnomah Cnty.*
870 F.3d 939 (9th Cir. 2017) ....................11

*Watson v. California*
21 Cal.App.4th 836 (1993) ....................13

**Statutes**

29 U.S.C. § 794....................11

42 U.S.C. § 1983....................passim

Americans with Disabilities Act of 1990 .................... 1, 2, 11

California Civil Code § 52.1.................... 2, 12, 13, 14

California Government Code § 820.8 ....................15

California Government Code § 845.6 ....................2, 13

**Rules**

Federal Rules of Civil Procedure, Rule 8....................4

Federal Rules of Civil Procedure, Rule 12(b)(6).................... 1, 2, 4

**NOTICE**

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE that on October 2, 2025 at 10:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 11, 19th Floor of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, LUIS MARTINEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO will and hereby do move this Court for an order granting dismissal of the claims specified below and contained in Plaintiffs' First Amended Complaint. This motion is brought pursuant to Federal Rules of Civil Procedure (FRCP), Rule 12(b), subsection (6), as set forth more fully in the Memorandum of Points and Authorities below, on the grounds that dismissal is appropriate because the Complaint fails to allege facts sufficient to state claims upon which relief can be granted against the County Defendants. This motion is based on this notice, the memorandum of points and authorities, the papers and pleadings on file herein, request for judicial notice, and on such oral and documentary evidence as may be adduced at the hearing of this matter.

The County Defendants also hereby request a jury trial in this action.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. SUMMARY OF ARGUMENT AND STATEMENT OF ISSUES TO BE DECIDED**

Plaintiffs Zachary Young, personal representative of the ESTATE OF JESUS ERIC MAGANA, and JESUS MAGANA DUARTE in his individual capacity ("Durate"), bring this action against the COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, LUIS MARTINEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO ("County Defendants"), CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, RAJENDRA MAHAJAN, SUMEET CHAGGER, HARPREET HUNDAL ("Wellpath Defendants") for violation of civil rights under 42 U.S.C. §1983, violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act, and other state law claims arising out of Jesus Eric Magana's ("Decedent") death while in jail custody as a pretrial detainee on April 27, 2023. Plaintiffs claim Decedent's death by acute water intoxication secondary to schizophrenia could have been prevented but for Defendants' failure to properly monitor Decedent and failure to provide appropriate medical attention. Plaintiffs' First

Amended Complaint ("FAC") fails to state facts to support each of their claims against the County Defendants as to either Plaintiff because they fail to meet their pleading burden to state facts showing a plausible right to relief on such claims asserted, therefore multiple claims are subject to dismissal under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Specifically, dismissal is warranted because:

(1) The First Claim fails to state a Section 1983 against the individual County Defendants;
(2) The First Claim fails to state a claim against the County under *Monell*;
(3) The Second and Third Claims for violation of the Americans with Disabilities Act and Rehabilitation Act are unsupported by facts to state a claim;
(4) The Fourth Claim for interference with familial association fails to state a claim;
(5) Duarte's Bane Act, Wrongful Death, and Spoliation of Evidence are barred for failure to present a timely claim under the Government Claims Act;
(6) The Fifth Claim for violation of Govt. C. § 845.6 fails to state a claim;
(7) The Eighth Claim for Cal. Civ. C. § 52.1 (Bane Act) fails to state a claim;
(8) The Ninth Claim for intentional infliction of emotional distress fails to state a claim; and
(9) The Eleventh Claim for Spoliation of Evidence fails to state a claim.

## II. STATEMENT OF FACTS ALLEGED BY PLAINTIFFS

Plaintiffs allege Decedent was arrested on suspicion of committing a burglary on March 18, 2023 and booked as a pre-trial detainee into the Santa Rita Jail. FAC ¶¶49, 50. Decedent was identified as a Behavioral Health Inmate and classified for Restrictive Housing. *Id* ¶51. On April 26, 2023, Plaintiffs claim Decedent was ill inside his cell. *Id*. ¶53. At 4:47 p.m. Deputy Gilkerson observed trash littered throughout Decedent's cell and instructed Decedent to pick up the trash, but he refused. *Id.* ¶55, 56.

At 10:12 a.m. on April 27, 2023 Defendant Baker was serving lunch to Decedent's housing unit and was informed by an inmate that Decedent was "projectile vomiting" in his cell. *Id.* ¶¶ 57, 58. Baker observed the cell floor was apparently covered in vomit. *Id.* ¶59. Decedent indicated to Baker he was throwing up and Baker advised Decedent he would contact a nurse but failed to do so until after 10:38 a.m. *Id.* ¶¶61, 62, 63, 64, 66, 69. At 10:38 Baker told Gilkerson that Decedent was vomiting in his cell and asked Gilkerson to come to his cell. *Id.* ¶69. Upon arriving, Gilkerson contacted Sgt. Luis Martinez for assistance, who responded to Decedent's cell at 10:40 a.m. *Id.* ¶71-73. Martinez and Gilkerson saw Decedent drink copious amounts of water while vomiting. *Id.* ¶74. Martinez advised Nurse Kaur that Decedent had been vomiting when she arrived at the cell. *Id.* ¶¶78, 79. Decedent drank 15-20 8 oz cups of water from the sink despite Gilkerson's instructions to stop. *Id.* ¶¶80, 81, 88. Martinez said Decedent

needed to be removed from the cell and Gilkerson instructed the water to be shut off in cell and provided Decedent with clean, dry clothing *Id.* ¶ 91-93. At 10:45 a.m., deputies transported Decedent by wheelchair to OPHU where he would be subject to 30-minute safety checks. *Id*. ¶¶95, 96. At 10:50 a.m. deputies arrived at the examination room in OPHU where Kaur advised Defendant Mahajan that she saw vomit all over Decedent's cell and that Decedent drank between 15-20 cups of water. *Id*. ¶¶97, 100. Mahajan asked Decedent whether his vomiting started this morning, Decedent nodded yes. *Id*. ¶101. Decedent denied ingesting drugs and alcohol. *Id.* ¶103. Mahajan prescribed Decedent with a shot of nausea medication and admitted Decedent to OPHU for a 4-hour medical observation. *Id.* ¶¶105, 106.

At 11:05 a.m., Defendants Tsang-Lee, Candelario and other deputies transported Decedent to a medical observation cell and removed the restraints from his arms, waist, and legs. *Id.* ¶¶111 & 112. At 11:09 a.m., Defendant Chagger, Tsang-Lee, and Candelario attempted to speak with Decedent, who did not respond. *Id.* ¶113. Tsang-Lee conducted wellbeing checks on Decedent at 11:12 a.m., 11:38 a.m., 12:05 p.m., 12:30 p.m., 1:07 p.m., and 1:37 p.m. *Id.* ¶¶123-125, 127, 128. At 2:10 p.m., Tsang-Lee conducted a wellbeing check where Decedent appeared unresponsive then Tsang-Lee requested Candelario to observe Decedent. *Id.* 129. Candelario kicked the cell door 3 times to get Decedent's attention, although Decedent did not respond, Candelario concluded Decedent's fingers were moving. *Id.* ¶130. At 2:46 p.m., Tsang-Lee conducted a wellbeing check of Decedent where he reported observing Decedent's chest slightly rising and falling. *Id.* ¶136. At 3:19 p.m., Tsang-Lee, Candelario, and Hundal conducted a safety check and found Decedent unresponsive to Candelario rattling Decedent's cell door, shouting his name, and nudging his left foot. *Id.* ¶¶139, 140. Candelario radioed a request for emergency response to Decedent's cell. *Id.* ¶141. At 3:26 p.m., Wellpath/CFMG's onsite staff responded and began performing life-saving measures on Decedent, including multiple injections of Narcan, and were joined by Alameda County Fire Department at 3:36 p.m. *Id.* ¶142-146. At 4:06 p.m., medical personnel discontinued life-saving efforts on Decedent and he was pronounced dead. *Id.* ¶147. The autopsy and coroner investigator's report determined Decedent's cause of death was acute water intoxication and the toxicology report noted no common controlled substances in his blood. *Id.* 148.

///

///

## III. LEGAL ARGUMENT

### A. The Complaint Fails To State Facts To Withstand Dismissal Under FRCP Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter…to 'state a claim to relief that is plausible on its face.' …A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged…The [allegations must show] more than a sheer possibility that a defendant has acted unlawfully…Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Iqbal*, 556 U.S. at 678. Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation…A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'…Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678. "Rule 8…does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-679. The Ninth Circuit expressly requires factual allegations that "plausibly suggest an entitlement to relief." *Eclectic Prop.'s East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014). Further, "leave to amend may be denied…if amendment of the complaint would be futile." *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988).

The FAC is full of irrelevant matters that do not assist in stating any claims against the County Defendants as to the First, Second, Third, Fourth, Eighth, Ninth and Eleventh Claims to satisfy Rule 8 pleading requirements and the FAC should be dismissed under Rule 12(b)(6).

### B. The First and Fourth Claim Fail to State §1983 Claims Against the Individual Defendants

With respect to the §1983 claims (First and Fourth), vicarious liability is inapplicable in §1983 actions, and plaintiffs must show that each defendant, through their own individual actions, violated the constitution as to each of the plaintiffs claiming injury. *Iqbal,* 556 U.S. at 676. A defendant cannot be held liable under §1983 based on a "team effort" theory, which "lump[s] all the defendants together, rather than requir[ing] [plaintiff] to base each individual's liability on his own conduct." *Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009). It is unclear to County Defendants what Plaintiffs are alleging in the First Claim. Assuming Plaintiffs are alleging a pretrial detainee's Fourteenth Amendment Claim for deliberate indifference to medical needs, they must show:

(1) The defendants made an intentional decision with respect to the conditions under which the plaintiff was confined [including a decision with respect to medical treatment];

(2) Those conditions put the plaintiff at substantial risk of serious harm;

(3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved – making the consequence of defendant's conduct obvious; and

(4) By not taking such measures, the defendant caused the plaintiff's injuries. *Sandoval v. County of San Diego*, 985 F.3d 657, 669 (9th Cir. 2021) citing *Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018).

"To satisfy the third element, the plaintiff must show that the defendant's actions were "objectively unreasonable," which requires a showing of "more than negligence but less than subjective intent—something akin to reckless disregard." *Sandoval*, 985 F.3d at 669. Corrections officers may defer to the medical opinions of qualified providers. *Lemire v. Cal. Dept. Corr. & Rehab.*, 726 F.3d 1062, 1084 (9th Cir. 2013) (finding corrections officers "did not act with deliberate indifference" because they "reasonably relied on the expertise of the prison's medical staff"). "However, failing to administer CPR or other life-saving measures to an inmate in obvious need can provide basis for liability under § 1983." *Id.* at 1042.

The FAC does not allege facts to state a §1983 claim against Martinez, Baker, Tsang-Lee, and Candelario ("Deputies") because the allegations do not show each of their conduct was "objectively unreasonable" as required under *Sandoval*. The Deputies acted immediately when observing Decedent was in medical distress. The FAC alleges Baker and Martinez, the deputies in Decedent's housing unit, immediately removed him from his cell and transferred him to the OPHU for medical treatment upon observing he was vomiting. The FAC does not allege facts showing Tsang-Lee and Candelario acted objectively unreasonably. The FAC fails to state facts showing Tsang-Lee and Candelario knew Decedent was in acute medical distress at any time before they summoned medical assistance. Accordingly, the First Claim fails against the Deputies.

The FAC does not allege facts showing Sanchez had any knowledge regarding Decedent and participated directly in the circumstances which allegedly led to his death and no facts are alleged showing Sanchez was deliberately indifferent to Decedents' medical needs. A supervisor is liable only when he or she has directly participated in or proximately caused the alleged deprivation. *See Palmer v.*

*Sanderson*, 9 F.3d 1433, 1437-38 (9th Cir. 1993). Under §1983, a supervisor may be held liable "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (citation and internal quotation marks omitted). The FAC does not state facts showing personal involvement in or a sufficient causal connection between Sanchez's conduct and any constitutional violation. Thus, the FAC fails to state a §1983 claim against Sanchez under any theory.

**C. The First Claim Fails To State A §1983 *Monell* Claim Against The County**

A public entity may be liable under §1983 only when a violation of a federally protected right can be attributed to (1) an express municipal policy, such as an ordinance, regulation, or policy statement *Monell v. New York Dept. of Soc. Servs.,* 436 U.S. 658 (1978); (2) a "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); (3) the decision of a person with "final policymaking authority" *Id.* at 123; or (4) inadequate training that is deliberately indifferent to an individual's constitutional rights *City of Canton v. Harris,* 489 U.S. 378 (1989). Plaintiffs must show a sufficient causal connection between the enforcement of the municipal policy or practice and the violation of their federally protected right. *Id.* at 389*; Connick v. Thompson*, 563 U.S. 51, 60 (2011). A municipality is "liable under § 1983 only where its policies are the moving force behind the constitutional violation." *Harris*, 489 U.S. at 389. "[R]igorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees." *Bd. of the Cnty. Comm'rs. of Bryan Cnty. v. Brown*, 520 U.S. 397, 405 (1996). Further, municipal liability is contingent on an underlying violation of rights. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). If no constitutional injury occurred, "the fact that the departmental regulations might have authorized [particular conduct] is quite beside the point." *Heller*, 475 U.S. at 799. To withstand dismissal, Plaintiffs are required to specifically plead supporting facts to state a *Monell* claim. *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012). "*Monell* allegations must be pleaded with specificity as required under Twombly and Iqbal." *Galindo v. City of San Mateo*, No.16-CV-03651-EMC, at *5 (N.D. Cal. 2016). Without allegations of plausible facts supporting a policy or custom, a *Monell* claim should be dismissed. *Sanchez v. City of Fresno*, 914 F.Supp.2d 1079,

1097, fn.7 (E.D. Cal. 2012). The FAC fails to state a claim for *Monell* liability against the County under any theory.

**1. No County Policy, Pattern Or Custom Is Shown**

To show municipal liability based on a pattern, custom or practice, the critical issue is whether there was a particular custom or practice that was so widespread as to have the force of law. *Brown,* 520 U.S. at 404. "The custom or policy must be a 'deliberate choice to follow a course of action…made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Castro v. Cnty. of Los Angeles,* 833 F.3d 1060 (9th Cir. 2016). "It is not sufficient for a plaintiff to identify a custom or policy, attributable to the municipality, that caused his injury. A plaintiff must also demonstrate that the custom or policy was adhered to with 'deliberate indifference to the constitutional rights of [parties]." *Castro,* 833 F.3d at 1076; *Harris,* 489 U.S at 392. Without allegations of plausible facts supporting a policy or custom, a *Monell* claim should be dismissed. *AE ex rel. Hernandez,* 666 F.3d at 637. "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1996), *modified by Navarro v. Block,* 250 F.3d 729 (9th Cir. 2001). The Ninth Circuit has found that one or two incidents of excessive force are inadequate to establish municipal liability. *See Davis v. Ellensburg,* 869 F.2d 1230, 1233-1234 (9th Cir. 1989). In *Henderson v. City & Cnty. of San Francisco,* No. C-05-234 VRW, 2006 WL 3507944 *1 at *10 (N.D. Cal. Dec. 1, 2006), Judge Walker concluded that six separate occasions of alleged excessive force over a year long period and evidence of 18 additional grievances submitted by other jail inmates reporting similar misconduct failed to support a *Monell* claim.

Unless the policy itself is unconstitutional, or an authorized policymaker committed the unconstitutional act, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents." *Johnson v. City of Vallejo*, 99 F.Supp.3d 1212, 1218 (E.D. Cal. 2015), *quoting Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1996) *holding modified by Navarro v. Block,* 250 F.3d 729 (9th Cir. 2001). No facts are stated showing any County policy is unconstitutional, or any facts showing that an authorized policymaker on behalf of the County committed an unconstitutional act, other similar

incidents to show a pattern or suggesting a "widespread practice" of sufficient duration, frequency and consistency that "is 'so permanent and well settled as to constitute a custom or usage' with the force of law." *Praprotnik*, 485 U.S. at 127. The FAC fails to state **facts** showing Decedent's constitutional rights were violated because of an official policy, pattern, practice or custom. FAC ¶176 is a mere list of conclusions without factual support. Plaintiffs cite 28 instances of alleged "Incidents of Inadequate Medical Care,", none of which involve an incident where another inmate died because of excessive water consumption due to schizophrenia in Alameda County and are irrelevant. FAC ¶184.

Additionally, Plaintiffs' citation to multiple grand jury reports does not assist in stating a *Monell* claim because the Grand Jury reports are factually dissimilar, as they do not involve deaths by acute water intoxication. Additionally, the Grand Jury's findings do not constitute a policy of the County. Accordingly, nothing cited by Plaintiffs is sufficient to show a *Monell* pattern or practice.

FAC ¶185 contains multiple news articles critical of Wellpath's operations in other jurisdictions around the United States, therefore does not constitute policies or practices of the County. Because none of the incidents in FAC ¶185 occurred in, or involved Alameda County, they cannot be imputed to the County for the purposes of *Monell* liability and do not constitute a policy. In the absence of other relevant occurrences, Decedent's alleged incident alone is insufficient to show a County pattern, practice, or custom as a matter of law.

More significantly, no facts are alleged showing a causal connection between a County custom or policy and any alleged violation. *Harris,* 489 U.S at 392. "That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee <u>will not alone permit an inference of municipal culpability and causation</u>; **the plaintiff will simply have shown that the *employee* acted culpably**." *Brown,* 520 U.S. at 406-407; original italics, other emphasis added. "Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability. … Congress did not intend municipalities to be held liable unless *deliberate* action <u>attributable to the municipality</u> directly caused a deprivation of federal rights." *Id.* at 415, (original italics, other emphasis added). The FAC states no facts showing any County policy existed, or that deliberate action by the County directly caused. a deprivation of Decedent or Plaintiffs' constitutional rights.

///

**2. No Facts Are Alleged To Show A Municipal Ratification Claim**

The FAC fails to state facts to state a *Monell* ratification claim. To show municipal liability based on ratification "a plaintiff must prove that the 'authorized policymakers approve a subordinate's decision and the basis for it.'" *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). Municipal policymakers must make a conscious, affirmative, deliberate choice to endorse a subordinate's decision and the basis for it. *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992). "[M]ere refusal to overrule a subordinate's completed act does not constitute approval. To hold cities liable under section 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle respondeat superior liability into section 1983." *Christie*, 176 F.3d at 1239-1240. "We decline to endorse this end run around *Monell*." *Gillette*, 979 F.2d at 1348. "The Ninth Circuit appears to require something more than a failure to reprimand to establish a municipal policy or ratification," *Kanae v. Hodson*, 294 F.Supp.2d 1179, 1189 (D. Haw. 2003). Rather, Plaintiffs must show municipal policymakers knew of unconstitutional conduct by subordinates before the constitutional violations ceased. *Christie*, 176 F.3d at 1239-1240.

The FAC states no facts showing the County's authorized policymakers knew of unconstitutional conduct by any correctional officer, before the alleged violations were completed, and approved it. Whether an official has final policy-making authority is an issue of law to be determined by the court by reference to state and local law. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). A court must "identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *McMillan v. Monroe Cnty.*, 520 U.S. 781, 784-785 (1997). The Court must "ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue." *Id.* at 785. The inquiry is dependent on an analysis of state law; however, state law may not answer the question simply by labeling someone a policymaker. *Id.* at 786. Rather, the Court must look at the actual function of a governmental official, in a particular area, while considering the definition of the official's functions under relevant state law. *Id.* The FAC fails to allege facts showing Sanchez is a policymaker in a relevant manner. The mere conclusions regarding her authority over the selection of CFMG as the County's corrections medical provider and her authority regarding its day-to-

day operations are inadequate. FAC ¶171. The FAC fails to allege facts that Sanchez knowingly approved unconstitutional acts before they were committed and fails to state a ratification claim.

**3. No Facts Are Stated To Show Municipal Liability For Inadequate Training**

The FAC fails to state an inadequate training claim. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick,* 563 U.S. at 61. Municipal liability on this theory attaches "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Harris,* 489 U.S. at 388. "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under §1983.…Municipal liability under §1983 attaches where–and only where–a deliberate choice to follow a course of action is made from among various alternatives by city policymakers." *Id.* at 389. The "focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* at 390-391. Deliberate indifference is shown when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights that the policymaker of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390; *Connick,* 563 U.S. at 62.

> "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'…A less stringent standard of fault for a failure-to-train claim would result in *de facto respondeat superior* liability on municipalities… [¶] A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train."

*Connick*, 563 U.S. at 61-62. While this is a high standard, "lesser standards of fault and causation would open municipalities to unprecedented liability under §1983. In virtually every instance…the city 'could have done' [something] to prevent the unfortunate incident.…[P]ermitting cases against cities for their 'failure to train' employees to go forward under §1983 on a lesser standard of fault would result in de facto respondeat superior liability…–a result [the Supreme Court] rejected in *Monell.*" *Harris*, 489 U.S. at 391-392. Inadequate training claims "will not be satisfied by merely alleging that the existing training

program for a class of employees, such as police officers, represents a policy for which the [entity] is responsible." *Id*. at 389.

The FAC fails to identify deficient training practices or any basis to show the need for more or different training of County employees that was so obvious, and the alleged inadequacy so likely, to result in constitutional violations, necessary to meet the high deliberate indifference standard. The FAC's conclusions that the County failed to adequately and properly train employees is inadequate. Further, no facts show any causal connection between County training, or inadequate training, and Decedent's death. Accordingly, Plaintiffs fail to state a *Monell* inadequate training claim.

**D. The Second and Third Claims Fail to State a Claim (ADA & the Rehabilitation Act)**

To state a claim under Title II of the ADA, a plaintiff must allege facts showing that: "'(1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.'" *Updike v. Multnomah Cnty.*, 870 F.3d 939, 949 (9th Cir. 2017); *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007). Under the ADA, a plaintiff must show that he was "excluded from participating in or denied the benefits of a program's services or otherwise discriminated against. '[C]ompensatory damages are not available under Title II or §504 absent a showing of discriminatory intent.'" *Updike*, 870 F.3d at 950 (original brackets) [The Rehabilitation Act] Section 504 [as amended 29 U.S.C. §794] similarly prohibits disability discrimination by recipients of federal funds. 29 U.S.C. § 794. The two laws are interpreted coextensively because 'there is no significant difference in the analysis of rights and obligations created by the two Acts.' *K.M.*, 725 F.3d at 1098 (citation omitted). To state a prima facie case for a violation of Title II, 'a plaintiff must show: (1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.' *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001) (citation omitted). The elements of a prima facie Section 504 claim are similar, with the additional requirement that the plaintiff prove that 'the program receives federal financial assistance.' *Id.*" *Payan v. Los Angeles*

*Cmty. Coll. Dist.,* 11 F.4th 729, 737-738 (9th Cir. 2021). The FAC states no facts showing Decedent was denied any services because of a disability. Indeed, the FAC states the County's employees immediately transported Decedent to the OPHU for medical evaluation and then followed Mahajan's instructions. The FAC's factually unsupported conclusions fail to show intentional disability discrimination and are inadequate to state any claim for violation of §12132 and the Rehabilitation Act against any Defendant.

**E. The Fourth Claim Fails to State a Claim (§ 1983: Interference with Familial Association)**

Duarte's claim for interference with familial relations in violation of the 14th Amendment fails for the same reasons the First claim fails. Where a claim for interference with familial relationships is integrally predicated upon, or entwined with, other allegedly unconstitutional conduct, a finding that the other conduct was not unconstitutional generally will preclude recovery for interference with familial relationship. *Gausvik v. Perez*, 392 F.3d 1006, 1008 (9th Cir. 2004); *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001). Duarte's claim for interference with familial association is integrally predicated upon and entwined with Decedent's §1983 claims because no conduct was directed at Duarte, and his claim arises out the alleged violation of Decedent's rights. Accordingly, Duarte's fourth claims for interference with familial relations against the individual Defendants and the County fail for the same reasons set forth in Sections B and C above.

**F. Duarte's State Claims Are Barred for Failure to Present a Government Tort Claim**

Duarte's Eighth (Bane Act), Eleventh (Spoliation of Evidence), and Twelfth (Wrongful Death) Claims ("State Claims") are barred by his failure to allege facts showing compliance with the Government Claims Act ("GCA") claim presentment requirement. "Complaints that do not allege facts demonstrating either that a claim was timely presented or that compliance with the claims statute is excused are subject to a general demurrer for not stating facts sufficient to constitute a cause of action." *Shirk v. Vista Unified Sch. Dist.,* 42 Cal. 4th 201, 209 (2007), *as modified* (Oct. 10, 2007). FAC ¶4 merely alleges the claim submitted by the Estate of Jesus Eric Magana and Duarte on October 10, 2023 ("Claim") complied with the GCA. FAC ¶4. Duarte did not comply with the GCA because the Claim does not identify Duarte and the FAC does not allege facts showing Duarte complied. *See* Defendants' Request for Judicial Notice In Support of Motion to Dismiss Plaintiffs' First Amended Complaint Exh. A; FAC ¶4. "Failure to comply with the mandatory requirements is fatal to the cause of action." *Nguyen*

*v. L.A. Cty. Harbor/UCLA Med. Ctr.*, 8 Cal. App. 4th 729, 732 (1992). Section 910(a) requires the claimant provide "[t]he name and post address of the claimant." "Where two or more persons suffer separate and distinct injuries from the same act or omission, each person must submit a claim, and one cannot rely on a claim presented by another." *Nelson v. Cnty. of Los Angeles*, 113 Cal.App.4th 783, 796 (Cal. Ct. App. 2003). Because he is not identified as a claimant Duarte's State law Claims are not included in the Claim. Leave to amend is futile because Duarte is time barred from submitting a claim more than a year after the incident. *Munoz v. California,* 33 Cal.App.4th 1767, 1779 (1995) (Failure to present an application for late claim within a year after the underlying incident is a jurisdictional defect.)

**G. The Fifth Cause Of Action Fails To State A Claim For Violation Of Govt. Code §845.6**

"In order to state a claim under § 845.6, a prisoner must establish: (1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care." *Jett v. Penner*, 439 F.3d 1091, 1099 (9th Cir. 2006). "California cases have repeatedly limited liability under the statute temporally 'to serious and obvious medical conditions requiring immediate care.'" *Castaneda v. Dept. of Corr. & Rehab.,* 212 Cal.App.4th 1051, 1074 (2013); *Kinney v. Contra Costa Cnty.,* 8 Cal.App.3d 761 (1970) (no liability for failure to provide medical care when prisoner complained of a bad headache and requested medication); *Lucas v. City of Long Beach,* 60 Cal.App.3d 341, 350 (1976) (intoxication due to drugs or alcohol did not impose duty to summon immediate medical care). The duty under Section 845.6 does not extend beyond summoning medical care when the need for immediate medical care arises–it does not include ensuring that medical staff properly diagnosed and treated the medical condition. *Watson v. California*, 21 Cal.App.4th 836, 842 (1993). The FAC fails to state facts showing that Decedent suffered a "**serious and obvious** medical condition requiring **immediate** care" during the time he was in custody, or facts showing any of the individual Defendants knew or had reason to know Decedent needed immediate medical care and failed to reasonably summon such care. Indeed, when it became obvious to Candelario and Tsang-Lee that Decedent was unresponsive, Candelario requested assistance. FAC ¶216 fails to establish liability as the existence of "policies/customs" is not an element or basis for liability under §845.6.

**H. The Eighth Claim Fails to State a Claim (Cal. Civ. C. § 52.1 (Bane Act))**

To state a Bane Act claim Plaintiffs must each allege sufficient facts showing that their respective

rights were interfered with by threats, intimidation, or coercion. Cal. Civ. Code § 52.1(a). "'The Bane Act requires that a defendant had a specific intent to violate the plaintiff's protected rights. This specific intent inquiry centers on two questions: "First, 'is the right at issue clearly delineated and plainly applicable under the circumstances of the case,' and second, 'did the defendant commit the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right?'" *Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 520 (9th Cir. 2018). Section "52.1 does not provide a right of action for [survivors]; rather, it only provides for a personal cause of action for the person who has been subjected to violence or threats which interfered with that person's constitutional rights." *Tolosko-Parker v. County of Sonoma,* 2009 WL 498099 at *5 (N.D. Cal. 2009), *citing Bay Area Rapid Transit Dist. v. Superior Court,* 38 Cal.App.4th 141, 144 (1995). Section 52.1(b) limits claims to persons "in his or her own name and on his or her own behalf." It "'is simply not a wrongful death provision.'" *City of Simi Valley v. Superior Court*, 111 Cal.App.4th 1077, 1085 (2003). The FAC does not allege facts showing Defendants intentionally interfered with Decedent or Duarte's rights through threat, intimidation, or coercion. The FAC fails to allege facts Defendants were even aware of Duarte. Moreover, the Bane Act claims cannot be saved by an amendment given the nature of this case because the facts alleged make clear that Decent's death was not caused by a use of threat, intimidation, or coercion by Defendants. Plaintiffs cannot allege facts which meet the plausibility standard in *Iqbal* that Defendants acted "with the particular purpose" required by §52.1, thus the claims should be dismissed without leave to amend. *Sandoval*, 912 F.3d at 520.

**I. The Ninth Claim Fails to State a Claim (Intentional Infliction of Emotional Distress)**

"The elements of a prima facie case of intentional infliction of emotional distress in California are: '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.' *Tekle v. United States,* 511 F.3d 839, 855 (9th Cir. 2007) (as amended) (quoting *Davidson v. City of Westminster,* 32 Cal.3d 197, 209… (1982)) (internal quotation omitted). The conduct must be more than "intentional and outrageous…directed at the plaintiff…" *Christensen v. Superior Court,* 54 Cal.3d 868, 903 (1991). The conduct also must be "motivated by ill

will or a desire to harm" (*Corales v. Bennet,* 567 F.3d 554, 572 (9th Cir. 2009)), "intended to inflict injury or engaged in with the realization that injury will result." *Potter v. Firestone Tire & Rubber Co.,* 6 Cal.4th 965, 1001 (1993). Plaintiffs fail to allege facts showing any of the County Defendants' individual conduct towards Decedent was sufficiently outrageous. Indeed, the FAC fails to allege facts that Sanchez were aware of Decedent's incident. Accordingly, the Ninth Claim fails to state a claim against any County Defendant.

**J. The Eleventh Claim Fails to State a Claim (Spoliation of Evidence)**

The California Supreme Court held that there is no tort for "the intentional spoliation of evidence by a party to the cause of action..." *Roach v. Lee*, 369 F. Supp. 2d 1194, 1200 (C.D. Cal. 2005). Intentional spoliation of evidence is addressed through discovery sanctions or a negative inference instruction. Defendants respectfully request the Court dismiss this claim without leave to amend.

**K. Sanchez is Immune From Liability From the Conduct of Others Under Govt. C. § 820.8**

Section 820.8 provides "Except as otherwise provided by statute, a public employee is not liable for an injury caused by the act or omission of another person. Nothing in this section exonerates a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission." Sanchez cannot be held liable for the unlawful conduct of others unless she was directly involved in the unlawful conduct. The FAC alleges no facts showing Sanchez was directly involved in the alleged conduct underlying the Fifth through Twelfth Claims. Accordingly, the FAC fails to state any state law claims against Sanchez.

## IV. CONCLUSION

For the reasons set forth above, the County Defendants respectfully submit that the instant motion to dismiss Plaintiffs' FAC should be granted.

Dated: August 8, 2025

BERTRAND, FOX, ELLIOT, OSMAN & WENZEL

By: */s/ John K. Salcedo*
Richard W. Osman
John K. Salcedo
Attorneys for Defendants
COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, LUIS MARTINEZ, ERIK BAKER, ZACHARY TSANG-LEE, & PETER CANDELARIO