Richard W. Osman, State Bar No. 167993
Sheila D. Crawford, State Bar No. 278292
BERTRAND, FOX, ELLIOT, OSMAN & WENZEL
2749 Hyde Street
San Francisco, California 94109
Telephone: (415) 353-0999
Facsimile: (415) 353-0990
Email: rosman@bfesf.com
scrawford@bfesf.com

Attorneys for Defendants
COUNTY OF ALAMEDA,
ALAMEDA COUNTY SHERIFF'S OFFICE,
YESENIA SANCHEZ, ERIK BAKER,
ZACHARY TSANG-LEE, PETER CANDELARIO,
and LUIS MARTINEZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF JESUS ERIC MAGANA, J. JESUS MAGANA DUARTE, and VERONICA DUARTE VACA,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANG-LEE, PETER CANDELARIO, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC & WELLPATH MANAGEMENT, INC., also known as WELLPATH LIQUIDATING TRUST, a nominal party, RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20,<br><br>Defendants. | Case No. 3:24-cv-04716-JD<br><br>**DEFENDANTS COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, LUIS MARTINEZ, ERIK BAKER, ZACHARY TSANG-LEE, AND PETER CANDELARIO'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Date: June 4, 2026<br>Time: 10:00 AM<br>Location: San Francisco Courthouse<br>Courtroom 11, 19th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br><br>**Hon. James Donato** |

## Table of Contents

NOTICE ........ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

I. SUMMARY OF ARGUMENT AND STATEMENT OF ISSUES TO BE DECIDED ........ 1

II. STATEMENT OF FACTS ALLEGED BY PLAINTIFFS ........ 2

III. LEGAL ARGUMENT ........ 3

A. The First and Fourth Claims Fail to State §1983 Claims Against the Individual Defendants ........ 3

B. The First Claim Fails To State A §1983 *Monell* Claim Against The County Under Any Theory ........ 4

1. No County Policy, Pattern Or Custom Is Shown ........ 5

2. No Facts Are Alleged To Show A Municipal Ratification Claim ........ 7

3. No Facts Are Stated To Show Municipal Liability For Inadequate Training ........ 8

C. The Second and Third Claims Fail to State a Claim (ADA & the Rehabilitation Act) ........ 8

D. The Fourth Claim Fails to State a § 1983 Claim For Interference with Familial Association ........ 9

E. The Fifth Cause Of Action Fails To State A Claim For Violation Of Govt. Code §845.6 ........ 9

F. Duarte And Vaca's State Law Claims Are Barred By Their Failure To Comply With The Claim Presentation Requirements Of The Government Claims Act ........ 10

G. The Eighth Claim Fails to State a Claim For Violation of Cal. Civ. C. § 52.1 (Bane Act) ........ 13

H. The Ninth Claim Fails to State A Claim For Intentional Infliction of Emotional Distress ........ 14

I. The Eleventh Claim For Wrongful Death Is Unsupported By Facts ........ 14

J. Individual Defendants Are Immune From Vicarious Liability From Under Govt. C. § 820.8 ........ 15

IV. CONCLUSION ........ 15

## Table of Authorities

**Cases**

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .......... 2, 3

*Austin B. v. Escondido Union Sch. Dist.*
149 Cal.App.4th 860 (2007) .......... 13

*Bay Area Rapid Transit Dist. v. Superior Court*
38 Cal.App.4th 141 (1995) .......... 13

*Bd. of the Cnty. Comm'rs. of Bryan Cnty. v. Brown*
520 U.S. 397 (1996) .......... 5, 6, 7

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007) .......... 2, 5

*Castaneda v. Dept. of Corr. & Rehab.*
212 Cal.App.4th 1051 (2013) .......... 9

*Castro v. Cnty. of Los Angeles,*
833 F.3d 1060 (9th Cir. 2016) .......... 5

*Cavey v. Tualla*
69 Cal.App.5th 310 (2021) .......... 11, 12

*Chavez v. Carpenter*
91 Cal.App.4th 1433 (2001) .......... 15

*Christensen v. Superior Court*
54 Cal.3d 868 (1991) .......... 14

*Christie v. Iopa*
176 F.3d 1231 (9th Cir. 1999) .......... 7

*City of Canton v. Harris*
489 U.S. 378 (1989) .......... 5, 6, 8

*City of Los Angeles v. Heller*
475 U.S. 796 (1986) .......... 5

*City of Simi Valley v. Superior Court*
111 Cal.App.4th 1077 (2003) .......... 13

*City of St. Louis v. Praprotnik*
485 U.S. 112 (1988) .......... 5, 6

*Connick v. Thompson*
563 U.S. 51 (2011) .......... 5, 8

*County of Los Angeles v. Superior Court*
127 Cal.App.4th 1263 (2005) ........ 10

*Davidson v. City of Westminster*
32 Cal.3d 197 (1982) ........ 14

*Davis v. Ellensburg*
869 F.2d 1230 (9th Cir. 1989) ........ 6

*DiCampli-Mintz v. Cnty. of Santa Clara*
55 Cal.4th 983 (2012) ........ 10

*Fall River Joint Unified School Dist. v. Superior Court*
206 Cal.App.3d 431 (1998) ........ 10

*Fisher v. San Pedro Peninsula Hosp.*
214 Cal.App.3d 590 (1989) ........ 14

*Foster v. City of Fresno*
392 F.Supp.2d 1140 (E.D. Cal. 2005) ........ 15

*Galindo v. City of San Mateo*
2016 WL 7116927 (N.D. Cal. 2016) ........ 5

*Gausvik v. Perez*
392 F.3d 1006 (9th Cir. 2004) ........ 9

*Gillette v. Delmore*
979 F.2d 1342 (9th Cir. 1992) ........ 7

*Gong v. City of Rosemead*
226 Cal.App.4th 363 (2014) ........ 11, 12

*Gordon v. County of Orange*
888 F.3d 1118 (9th Cir. 2018) ........ 4

*Henderson v. City & Cnty. of San Francisco*
2006 WL 3507944 (N.D. Cal. Dec. 1, 2006) ........ 6

*Hopkins v. Bonvicino*
573 F.3d 752 (9th Cir. 2009) ........ 3

*J.J. v. Cnty. of San Diego*
223 Cal.App.4th 1214 (2014) ........ 11, 12

*Jett v. Dallas Indep. Sch. Dist.*
491 U.S. 701 (1989) ........ 7

*Jett v. Penner*
439 F.3d 1091 (9th Cir. 2006) ........ 9

*Johnson v. City of Vallejo*
99 F.Supp.3d 1212 (E.D. Cal. 2015) .......... 6

*K.M. v. Tustin Unified Sch. Dist.*
725 F.3d 1088 (2013) .......... 9

*Kanae v. Hodson*
294 F.Supp.2d 1179 (D. Haw. 2003) .......... 7

*Karim-Panahi v. Los Angeles Police Department*
839 F.2d 621, 627 (9th Cir. 1988) .......... 10

*Kinney v. Contra Costa Cnty.*
8 Cal.App.3d 761 (1970) .......... 9

*Lee v. City of Los Angeles*
250 F.3d 668 (9th Cir. 2001) .......... 9

*Lemire v. Cal. Dept. Corr. & Rehab.*
726 F.3d 1062 (9th Cir. 2013) .......... 4

*Lucas v. City of Long Beach*
60 Cal.App.3d 341 (1976) .......... 9

*Mangold v. California Public Utilities Commission*
67 F.3d 1470, 1477 (9th Cir. 1995) .......... 10

*McMillan v. Monroe Cnty.*
520 U.S. 781 (1997) .......... 7

*Monell v. New York Dept. of Soc. Servs.*
436 U.S. 658 (1978) .......... passim

*Moreland v. Las Vegas Metro. Police Dept.*
159 F.3d 365 (9th Cir. 1998) .......... 14

*Munoz v. California*
33 Cal.App.4th 1767 (1995) .......... 11, 12, 13

*Navarro v. Block*
250 F.3d 729 (9th Cir. 2001) .......... 6

*O'Guinn v. Lovelock Corr. Ctr.*
502 F.3d 1056 (9th Cir. 2007) .......... 9

*Payan v. Los Angeles Cmty. Coll. Dist.*
11 F.4th 729 (9th Cir. 2021) .......... 9

*Potter v. Firestone Tire & Rubber Co.*
6 Cal.4th 965 (1993) .......... 14

*Raymond v. Martin*
2018 WL 4560686 (E.D. Cal., Sept. 20, 2018)........14

*Rosales v. Battle*
113 Cal. App.4th 1178 (2003)........14

*Sanchez v. City of Fresno*
914 F.Supp.2d 1079 (E.D. Cal. 2012)........5

*Sandoval v. County of San Diego*
985 F.3d 657 (9th Cir. 2021)........4

*Sandoval v. Cty. of Sonoma*
912 F.3d 509 (9th Cir. 2018)........13, 14

*Scott v. Thompson*
184 Cal.App.4th 1506 (2010)........14

*Starr v. Baca*
652 F.3d 1202 (2011)........4

*State of Cal. ex rel. Dept. of Transp. v. Superior Court*
159 Cal.App.3d 331 (1984)........11

*State of California v. Superior Court (Bodde)*
32 Cal.4th 1234 (2004)........10

*Stockett v. Assoc. of Cal. Water Agencies Joint Powers Ins. Auth.*
34 Cal.4th 441 (2004)........11

*Tolosko-Parker v. County of Sonoma*
2009 WL 498099 (N.D. Cal. 2009)........13

*Trevino v. Gates*
99 F.3d 911 (9th Cir. 1996)........5, 6

*Updike v. Multnomah Cnty.*
870 F.3d 939 (9th Cir. 2017)........9

*Watson v. California*
21 Cal.App.4th 836 (1993)........10

*Watson v. State of Cal.*
21 Cal.App.4th 836 (1993)........11

*Wong v. Tai Jing*
189 Cal.App.4th 1354 (2010)........14

**Statutes**

29 U.S.C. §794........9

42 U.S.C. §1983 ........ passim

Americans with Disabilities Act of 1990
42 U.S.C. §§ 12101 et seq. (1990) ........ 1, 2, 8

California Code, Civil Code § 52.1 ........ 2, 13, 14

California Code of Civil Procedure § 52.1(a) ........ 13

California Code of Civil Procedure § 377.30 ........ 12

California Code of Civil Procedure § 377.34 ........ 12

California Code of Civil Procedure § 377.60 ........ 12, 14, 15

California Code of Civil Procedure § 377.61 ........ 12

California Government Code § 820.8 ........ 10, 15

California Government Code § 845.6 ........ 2, 9, 10

California Government Code § 910 ........ 11, 12

California Government Code § 945.4 ........ 10

California Government Code § 950.2 ........ 10

**Rules**

Federal Rules of Civil Procedure, Rule 12(b) ........ 1

## NOTICE

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE that on June 4, 2026 at 10:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 11, 19th Floor of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants County Of Alameda, Alameda County Sheriff's Office, Yesenia Sanchez, Luis Martinez, Erik Baker, Zachary Tsang-Lee, and Peter Candelario will and hereby do move this Court for an order granting dismissal of the claims specified below and contained in Plaintiffs' Second Amended Complaint ("SAC"). This motion is brought pursuant to Federal Rules of Civil Procedure (FRCP), Rule 12(b)(6), as set forth more fully in the Memorandum of Points and Authorities below, on the grounds that dismissal is appropriate because the SAC fails to allege facts sufficient to state claims upon which relief can be granted against the County Defendants. This motion is based on this notice, the memorandum of points and authorities, the papers and pleadings on file herein, request for judicial notice, and on such oral and documentary evidence as may be adduced at the hearing of this matter. The County Defendants also hereby request a jury trial in this action.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. SUMMARY OF ARGUMENT AND STATEMENT OF ISSUES TO BE DECIDED

Plaintiffs the Estate of Jesus Eric Magana by and through Decedent Jesus Eric Magana's personal representative Zachary Young, and Jesus Magana Duarte ("Durate") and Veronica Duarte Vaca ("Vaca") in their individual capacities bring this action against the County of Alameda, Alameda County Sheriff's Office, Yesenia Sanchez, Erik Baker, Zachary Tsang-Lee and Peter Candelario ("County Defendants"), and co-Defendants California Forensic Medical Group dba Wellpath, Rajendra Mahajan, Sumeet Chagger and Harpreet Hundal ("Wellpath Defendants") for violation of civil rights under 42 U.S.C. §1983, violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act, and state law claims arising out of Jesus Eric Magana's ("Decedent") death while a pretrial detainee on April 27, 2023. Plaintiffs claim Defendants failed to properly monitor Decedent and failed to provide appropriate medical attention resulting in his death by acute water intoxication secondary to schizophrenia. Defendants moved to dismiss Plaintiffs' First Amended Complaint ("FAC"), however, before a decision was issued, the parties stipulated to allow Plaintiffs to file a Second Amended Complaint ("SAC") to add Decedent's mother Vaca as a plaintiff. The SAC filed on February 19, 2026 added Vaca as a plaintiff, deleted Luis Martinez as a defendant and deleted

the claim for spoliation of evidence. The pleading defects remain and the SAC fails to state facts to meet Plaintiffs' pleading burden to state facts showing a plausible right to relief on each claim asserted against the County Defendants. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Specifically:

(1) The First Claim fails to state a Section 1983 against the individual County Defendants;
(2) The First Claim fails to state a claim against the County under *Monell*;
(3) The Second and Third Claims for violation of the Americans with Disabilities Act and Rehabilitation Act are unsupported by facts to state a claim;
(4) The Fourth Claim for interference with familial association fails to state a claim;
(5) Duarte's Bane Act Claim and the Wrongful Death claim brought by Duarte and Vaca are barred by their failure to present a timely claim under the Government Claims Act;
(6) The Fifth Claim for violation of Govt. C. § 845.6 fails to state a claim;
(7) The Eighth Claim for Cal. Civ. C. § 52.1 (Bane Act) fails to state a claim;
(8) The Ninth Claim for intentional infliction of emotional distress fails to state a claim; and
(9) The Eleventh Claim for wrongful death fails to state a claim.

## II. STATEMENT OF FACTS ALLEGED BY PLAINTIFFS

Plaintiffs allege Decedent was arrested on suspicion of committing a burglary on March 18, 2023 and booked as a pre-trial detainee into the Santa Rita Jail. SAC ¶¶48-49. Decedent was identified as a Behavioral Health Inmate and classified for Restrictive Housing. *Id* ¶50. On April 26, 2023, Plaintiffs claim Decedent was ill inside his cell. *Id*. ¶52. At 4:47 p.m. Deputy Gilkerson observed trash littered in Decedent's cell and instructed him to pick up the trash, but he refused. *Id*. ¶¶54-55.

At 10:12 a.m. on April 27, 2023 Defendant Baker was serving lunch to Decedent's housing unit and was informed by an inmate that Decedent was "projectile vomiting" in his cell. *Id*. ¶¶ 56-57. Baker observed the cell floor was apparently covered in vomit. *Id*. ¶58. Decedent indicated to Baker he was throwing up and Baker advised Decedent he would contact a nurse but failed to do so until after 10:38 a.m. *Id*. ¶¶59-65, 68. At 10:38 a.m. Baker told Gilkerson Decedent was vomiting in his cell and asked Gilkerson to come to his cell. *Id*. ¶68. Upon arriving, Gilkerson contacted Sgt. Luis Martinez for assistance, who responded to Decedent's cell at 10:40 a.m. *Id*. ¶¶71-72. Martinez and Gilkerson saw Decedent drink copious amounts of water while vomiting. *Id*. ¶73. Martinez advised Nurse Kaur Decedent had been vomiting when she arrived at the cell. *Id*. ¶¶77-78. Decedent drank 15-20 8 oz cups of water from the sink despite Gilkerson's instructions to stop. *Id*. ¶¶79-80, 87. Martinez said Decedent should be removed from the cell. Gilkerson instructed the water to be shut off in his cell and provided Decedent with clean, dry clothes *Id*. ¶90-92. At 10:45 a.m., deputies moved Decedent by wheelchair to OPHU where he was subject to 30-minute safety checks. *Id*. ¶¶94-95. At 10:50

a.m. they arrived at the OPHU examination room where Kaur advised Dr. Mahajan she saw vomit all over Decedent's cell and he drank between 15-20 cups of water. *Id*. ¶¶96, 99. Mahajan asked Decedent if his vomiting started that morning, Decedent nodded yes. *Id*. ¶100. Decedent denied ingesting drugs and alcohol. *Id*. ¶102. Mahajan prescribed Decedent a shot of nausea medication and admitted him to OPHU for a 4-hour medical observation. *Id.* ¶¶104-105. At 11:05 a.m., Defendants Tsang-Lee, Candelario and others moved Decedent to a medical observation cell and removed restraints on his arms, waist, and legs. *Id.* ¶¶110-111. At 11:09 a.m., Chagger, Tsang-Lee, and Candelario tried to speak with Decedent, who did not respond. *Id.* ¶112. Tsang-Lee conducted wellbeing checks on Decedent at 11:12 a.m., 11:38 a.m., 12:05 p.m., 12:30 p.m., 1:07 p.m., and 1:37 p.m. *Id.* ¶¶122-127.) At the 2:10 p.m. wellbeing check, Decedent appeared unresponsive and Tsang-Lee requested Candelario to observe Decedent. *Id.* ¶128. Candelario kicked the cell door 3 times to get Decedent's attention. Decedent did not respond but Candelario saw Decedent's fingers were moving. *Id.* ¶129. At the 2:46 p.m. wellbeing check, Tsang-Lee reported observing Decedent's chest slightly rising and falling. *Id.* ¶135. At 3:19 p.m., Tsang-Lee, Candelario, and Hundal conducted a safety check and found Decedent unresponsive to Candelario rattling the cell door, shouting his name, and nudging his left foot. *Id.* ¶¶137-139. Candelario radioed for emergency response to Decedent's cell. *Id.* ¶140. At 3:26 p.m., Wellpath/CFMG's onsite staff responded and started life-saving measures on Decedent, including multiple injections of Narcan, and were joined by Alameda County Fire Department at 3:36 p.m. *Id.* ¶141-145. Decedent was pronounced dead at 4:06 p.m. *Id.* ¶146. The autopsy and coroner investigator's report found his cause of death was acute water intoxication and the toxicology report noted no common controlled substances in his blood. *Id.* 147.

## III. LEGAL ARGUMENT

### A. The First and Fourth Claims Fail to State §1983 Claims Against the Individual Defendants

Vicarious liability is inapplicable in §1983 actions, and plaintiffs must show that each defendant, through their own individual actions, violated the constitution as to each of the plaintiffs claiming injury. *Iqbal,* 556 U.S. at 676. A defendant cannot be held liable under §1983 based on a "team effort" theory, which "lump[s] all the defendants together, rather than requir[ing] [plaintiff] to base each individual's liability on his own conduct." *Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009). Plaintiffs' First Claim is unclear.

However, assuming they are alleging a 14th Amendment Claim for deliberate indifference to medical needs of a pretrial detainee, they must show:

(1) The defendants made an intentional decision with respect to the conditions under which the plaintiff was confined [including a decision with respect to medical treatment];
(2) Those conditions put the plaintiff at substantial risk of serious harm;
(3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved – making the consequence of defendant's conduct obvious; and
(4) By not taking such measures, the defendant caused the plaintiff's injuries. *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 669 (9th Cir. 2021) citing *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018).

"[P]laintiff must show that the defendant's actions were 'objectively unreasonable,' which requires a showing of 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Sandoval*, 985 F.3d at 669. Notably, corrections officers may defer to the medical opinions of qualified providers. *Lemire v. Cal. Dept. Corr. & Rehab*., 726 F.3d 1062, 1084 (9th Cir. 2013).

The SAC fails to state §1983 claims against Baker, Tsang-Lee, and Candelario ("Deputies") because the allegations fail to show each of their individual conduct was "objectively unreasonable" as required under *Sandoval*. The SAC shows Baker and the deputies in Decedent's housing unit immediately removed him from his cell and transferred him to the OPHU for medical treatment upon observing he was vomiting. The SAC also fails to show Tsang-Lee and Candelario knew Decedent was in acute medical distress at any time before they summoned medical assistance, and fails to show either deputy acted objectively unreasonably. The SAC likewise fails to state any claim against Sheriff Sanchez. Under §1983, a supervisor may be held liable only "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011); *Palmer v. Sanderson*, 9 F.3d 1433, 1437-38 (9th Cir. 1993). No facts show Sanchez had any knowledge of Decedent, that she participated in any circumstances related to his death and no facts showing she was deliberately indifferent his medical needs. No facts show Sanchez's personal involvement in or a sufficient causal connection between her conduct and any constitutional violation.

**B. The First Claim Fails To State A §1983 *Monell* Claim Against The County Under Any Theory**

A public entity may be liable under §1983 only when a violation of a federally protected right can be attributed to (1) an express municipal policy, such as an ordinance, regulation, or policy statement [*Monell v.*

*New York Dept. of Soc. Servs.,* 436 U.S. 658 (1978)]; (2) a "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law" [*City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)]; (3) the decision of a person with "final policymaking authority" [*Id.* at 123]; or (4) inadequate training that is deliberately indifferent to an individual's constitutional rights [*City of Canton v. Harris,* 489 U.S. 378 (1989)]. Plaintiffs must show a sufficient causal connection between the enforcement of the municipal policy or practice and the violation of their federally protected right. *Id.* at 389*; Connick v. Thompson*, 563 U.S. 51, 60 (2011). A municipality is "liable under § 1983 only where its policies are the moving force behind the constitutional violation." *Harris*, 489 U.S. at 389. "[R]igorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees." *Bd. of the Cnty. Comm'rs. of Bryan Cnty. v. Brown*, 520 U.S. 397, 405 (1996). Municipal liability also is contingent on an underlying violation of rights. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). To avoid dismissal, Plaintiffs must specifically plead facts to state a *Monell* claim as required under *Twombly* and *Iqbal*. *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012). Without allegations of plausible facts supporting a policy or custom, a *Monell* claim should be dismissed. *Sanchez v. City of Fresno*, 914 F.Supp.2d 1079, 1097, fn.7 (E.D. Cal. 2012).

**1. No County Policy, Pattern Or Custom Is Shown**

To show municipal liability based on a pattern, custom or practice, the critical issue is whether there was a particular custom or practice that was so widespread as to have the force of law. *Brown,* 520 U.S. at 404. "The custom or policy must be a 'deliberate choice to follow a course of action…made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Castro v. Cnty. of Los Angeles,* 833 F.3d 1060 (9th Cir. 2016). "It is not sufficient for a plaintiff to identify a custom or policy, attributable to the municipality, that caused his injury. A plaintiff must also demonstrate that the custom or policy was adhered to with 'deliberate indifference to the constitutional rights of [parties]." *Castro,* 833 F.3d at 1076; *Harris,* 489 U.S at 392. "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1996), *modified by Navarro v. Block,* 250 F.3d 729

(9th Cir. 2001). The Ninth Circuit has found that one or two incidents of excessive force are inadequate to establish municipal liability. *See Davis v. Ellensburg,* 869 F.2d 1230, 1233-1234 (9th Cir. 1989), *see also Henderson v. City & Cnty. of San Francisco,* No. C-05-234 VRW, 2006 WL 3507944 *1 at *10 (N.D. Cal. Dec. 1, 2006). Unless the policy itself is unconstitutional, or an authorized policymaker committed the unconstitutional act, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents." *Johnson v. City of Vallejo*, 99 F.Supp.3d 1212, 1218 (E.D. Cal. 2015), *quoting Trevino,* 99 F.3d at 918.

The SAC states no facts showing any unconstitutional County policy, that an authorized policymaker on behalf of the County committed an unconstitutional act, or other similar incidents to show a pattern or suggesting a "widespread practice" of sufficient duration, frequency and consistency that "is 'so permanent and well settled as to constitute a custom or usage' with the force of law." *Praprotnik*, 485 U.S. at 127. No **facts** are alleged showing Decedent's constitutional rights were violated *because of* an official policy, practice or custom. SAC ¶175 is a mere list of conclusions without factual support. The reference to 28 instances of alleged "Incidents of Inadequate Medical Care," none of which involve an incident where another inmate died because of excessive water consumption due to schizophrenia in Alameda County, is irrelevant. SAC ¶183. Plaintiffs' citation to multiple grand jury reports likewise fails to state a *Monell* claim, as the reports are factually dissimilar, and do not involve deaths by acute water intoxication or similar conduct. The Grand Jury's findings also do not constitute County policies. Plaintiffs' recitation of dissimilar incidents fails to show any *Monell* pattern or practice. Plaintiffs' reliance on various news articles regarding Wellpath's operations in other jurisdictions nationwide similarly fails to show any policy, pattern, custom or practice of the County. SAC ¶184. None of the incidents referenced in SAC ¶184 occurred in, or involved Alameda County, and cannot be imputed to the County or constitute County policy. Decedent's alleged incident alone is insufficient to show a County pattern, practice, or custom as a matter of law.

More significantly, no facts show a causal connection between a County custom or policy and any alleged violation. *Harris,* 489 U.S at 392. "That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee <u>will not alone permit an inference of municipal culpability and causation</u>; **the plaintiff will simply have shown that the *employee* acted culpably**." *Brown,* 520 U.S. at 406-407; original italics, other emphasis added. "Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability. … Congress did not intend

municipalities to be held liable unless *deliberate* action attributable to the municipality directly caused a deprivation of federal rights." *Id.* at 415, (original italics, other emphasis added). The SAC states no facts showing any County policy existed, or that deliberate action by the County directly caused a deprivation of Decedent or Plaintiffs' constitutional rights.

**2. No Facts Are Alleged To Show A Municipal Ratification Claim**

To show municipal ratification "a plaintiff must prove that the 'authorized policymakers approve a subordinate's decision and the basis for it.'" *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). Municipal policymakers must make a conscious, affirmative, deliberate choice to endorse a subordinate's decision and the basis for it. *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992). "[M]ere refusal to overrule a subordinate's completed act does not constitute approval. To hold cities liable under section 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle respondeat superior liability into section 1983." *Christie*, 176 F.3d at 1239-1240. "We decline to endorse this end run around *Monell*." *Gillette*, 979 F.2d at 1348. "The Ninth Circuit …requires something more than a failure to reprimand to establish a municipal policy or ratification," *Kanae v. Hodson*, 294 F.Supp.2d 1179, 1189 (D. Haw. 2003). Rather, Plaintiffs must show municipal policymakers knew of unconstitutional conduct by subordinates before the constitutional violations ceased. *Christie*, 176 F.3d at 1239-1240. The SAC states no facts showing the County's authorized policymakers knew of unconstitutional conduct by any correctional officer, before the alleged violations were completed, and approved it. To determine whether an official has final policy-making authority "concerning the action alleged to have caused the particular constitutional or statutory violation at issue," the Court must look to state law and "ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue." *McMillan v. Monroe Cnty.*, 520 U.S. 781, 784-786 (1997); *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). The SAC fails to allege facts showing Sanchez is a policymaker in a *relevant* manner. Bare conclusions that she is a final policymaker are insufficient. Her position as Sheriff and conclusions regarding her authority over the selection of CFMG as the jail's medical provider and her general authority over day-to-day operations are inadequate. SAC ¶170. Moreover, the SAC fails to show Sanchez or any official policymaker knowingly approved unconstitutional acts that caused a violation of Plaintiffs' rights before any alleged violations ceased.

### 3. No Facts Are Stated To Show Municipal Liability For Inadequate Training

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train," which requires a showing of "deliberate indifference." *Connick,* 563 U.S. at 61*; Harris,* 489 U.S. at 388-389. The "focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* at 390-391. Deliberate indifference is shown when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights that the policymaker of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390; *Connick,* 563 U.S. at 62.

> "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'… [¶] A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 61-62.

"[L]esser standards of fault and causation would open municipalities to unprecedented liability under §1983. In virtually every instance…the city 'could have done' [something] to prevent the unfortunate incident.…[P]ermitting cases against cities for their 'failure to train' employees to go forward under §1983 on a lesser standard of fault would result in de facto respondeat superior liability…a result [the Supreme Court] rejected in *Monell*." *Harris*, 489 U.S. at 391-392. Inadequate training claims "will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the [entity] is responsible." *Id.* at 389. The SAC is devoid of facts as to any County training practice. No facts show what the County's training programs were, prior similar acts or any basis to show the need for more or different training of County employees was so obvious, and the alleged inadequacy so likely, to result in constitutional violations, which are necessary to meet the high deliberate indifference standard. Conclusions that the County failed to adequately and properly train employees is inadequate. Further, no facts show any causal connection between County training, inadequate training, and Decedent's death. No *Monell* inadequate training claim is stated.

## C. The Second and Third Claims Fail to State a Claim (ADA & the Rehabilitation Act)

To state a claim under Title II of the ADA, a plaintiff must show: "'(1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's

services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.'" *Updike v. Multnomah Cnty.*, 870 F.3d 939, 949 (9th Cir. 2017); *O'Guinn v. Lovelock Corr. Ctr*., 502 F.3d 1056, 1060 (9th Cir. 2007). "[The Rehabilitation Act] Section 504 [as amended 29 U.S.C. §794] similarly prohibits disability discrimination by recipients of federal funds. 29 U.S.C. § 794. The two laws are interpreted coextensively because "'there is no significant difference in the analysis of rights and obligations created by the two Acts.'" *K.M.*, 725 F.3d at 1098 (citation omitted). Section 504 includes the additional requirement that "the program receives federal financial assistance." *Payan v. Los Angeles Cmty. Coll. Dist.,* 11 F.4th 729, 737-738 (9th Cir. 2021). "'[C]ompensatory damages are not available under Title II or §504 absent a showing of discriminatory intent.'" *Updike*, 870 F.3d at 950. The SAC states no facts showing Decedent was denied any services because of a disability. Indeed, the SAC states County employees immediately moved Decedent to the OPHU for medical evaluation and then followed Dr. Mahajan's instructions. The SAC's factually unsupported conclusions fail to show intentional disability discrimination and are inadequate to state any claim for violation of the ADA or the Rehabilitation Act.

**D. The Fourth Claim Fails to State a § 1983 Claim For Interference with Familial Association**

The SAC shows no conduct directed at Duarte. His claim for interference with familial relations is predicated on Decedent's claims and fails for the same reasons Decedent's claims fail as set forth in Sections B and C above. *Gausvik v. Perez*, 392 F.3d 1006, 1008 (9th Cir. 2004); *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001).

**E. The Fifth Cause Of Action Fails To State A Claim For Violation Of Govt. Code §845.6**

To state a claim under §845.6, "a prisoner must establish: (1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care." *Jett v. Penner*, 439 F.3d 1091, 1099 (9th Cir. 2006). "California cases have repeatedly limited liability under the statute temporally 'to serious and obvious medical conditions requiring immediate care.'" *Castaneda v. Dept. of Corr. & Rehab.,* 212 Cal.App.4th 1051, 1074 (2013); *Kinney v. Contra Costa Cnty.,* 8 Cal.App.3d 761 (1970) (no liability for failure to provide medical care for complaints of a bad headache); *Lucas v. City of Long Beach,* 60 Cal.App.3d 341, 350 (1976) (intoxication imposed no duty to summon immediate medical care). The duty under §845.6 does not extend beyond summoning medical care when the need for immediate

medical care arises–it does not include ensuring medical staff properly diagnose and treat the medical condition. *Watson v. California*, 21 Cal.App.4th 836, 842 (1993). The SAC fails to state facts showing Decedent suffered a "**serious and obvious** medical condition requiring **immediate** care" while in custody, or facts showing any of the individual Defendants knew or had reason to know he needed immediate medical care and failed to reasonably summon such care. Indeed, when it was obvious to Candelario and Tsang-Lee that Decedent was unresponsive, Candelario promptly requested assistance. The SAC states no §845.6 claim against Sanchez, as the facts make clear Sanchez was not present and had no involvement with Decedent, and Sanchez cannot be held vicariously liable for the conduct of others as a matter of law. (Govt. Code §820.8.) Vague, conclusory allegations of "policies or customs of action and inaction" add nothing to state a viable claim, as "policies/customs" is not an element or basis for liability under §845.6. SAC §215.

**F. Duarte And Vaca's State Law Claims Are Barred By Their Failure To Comply With The Claim Presentation Requirements Of The Government Claims Act**

Duarte and Vaca's Eighth and Eleventh claims under state law are barred by their failure to comply with the claim presentation requirements of the Government Claims Act ("GCA"). Plaintiffs' conclusion that a claim submitted by Decedent's Estate on October 10, 2023 ("Claim") complied with the GCA is inadequate. SAC ¶4.)The claim presented on behalf of Decedent's estate fails to satisfy Duarte or Vaca's obligation to file claims on their own behalf for their personal claims. "Under [Govt. Code §§ 945.4 and 950.2 of] the Act, no person may sue a public entity or public employee for 'money or damages' unless a timely written claim has been presented to and denied by the public entity." *Cnty. of Los Angeles v. Super. Ct.* (2005) 127 Cal.App.4th 1263, 1267. Failure to comply with the claim requirements of the GCA precludes any civil action against the public entity or public employee. *Fall River Joint Unified School Dist. v. Superior Court* (1998) 206 Cal.App.3d 431, 434; *DiCampli-Mintz v. Cnty. of Santa Clara* (2012) 55 Cal.4th 983, 990. Plaintiffs must allege facts demonstrating or excusing compliance with the claim requirements. *State of Cal. v. Superior Court (Bodde)*, 32 Cal.4th 1234, 1249 (2004). In federal court, the failure to allege facts that either demonstrate or excuse compliance with the GCA will subject a state law claim to dismissal. *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995); *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 627 (9th Cir. 1988).

The "**<u>purpose of the claims is not 'to prevent surprise [but rather] to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation</u>** … It is well-settled that claims statutes must be satisfied even in the face of the public entity's actual knowledge of the circumstances surrounding the claim." *J.J. v. Cnty. of San Diego,* 223 Cal.App.4th 1214, 1219 (2014), original brackets, emph. added; *Gong v. City of Rosemead,* 226 Cal.App.4th 363, 374 (2014). Presentation of a written claim also serves the purpose of "inform[ing] the public entity of potential liability **so it can better prepare for the upcoming fiscal year**." *Cavey v. Tualla*, 69 Cal.App.5th 310, 328 (2021), emphasis added (citing *Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1776). "Courts have consistently interpreted the Tort Claims Act to bar actions alleging matters not included in the claim filed with the public entity." *State of Cal. ex rel. Dept. of Transp. v. Superior Court,* 159 Cal.App.3d 331, 336 (1984).) It is well established that "**each cause of action must [be] reflected in a timely claim. In addition, the factual circumstances set forth in the written claim must correspond with the facts alleged in the complaint**." *Watson v. State of Cal.,* 21 Cal.App.4th 836, 844 (1993), emph. added; *Munoz,* 33 Cal.App.4th at 1776. A complaint is subject to "demurrer if it alleges a factual basis for recovery which is not fairly reflected in the written claim." *Stockett v. Assoc. of Cal. Water Agencies Joint Powers Ins. Auth.,* 34 Cal.4th 441, 447 (2004).

The claim presented by Decedent's estate fails to satisfy the procedural requirements or primary purposes of the GCA for claims by Duarte or Vaca. (*See* Defendants' Request for Judicial Notice In Support of Motion to Dismiss Plaintiffs' SAC Exh. A.) Government Code §910 specifically states:

> **A claim shall be presented <u>by the claimant</u>** or by a person acting on his or her behalf and shall show all of the following:
>
> (a) **the name** and post office address **of the claimant**.
>
> (b) The post office address to which the person presenting the claim desires notices to be sent.
>
> (c) The date, place and other **circumstances of the occurrence or transaction which gave rise to the claim asserted**.
>
> (d) A **general description of the indebtedness, obligation, injury, damage or loss incurred** so far as it may be known at the time of presentation of the claim.
>
> (e) The name or names of the public employee or employees causing the injury, damage, or loss, if known.
>
> (f) The **amount claimed** if it totals less than ten thousand dollars ($10,000) … [or if it] exceeds ten thousand dollars ($10,000), no dollar amount shall be included in the claim. However, it **shall indicate whether the claim would be a limited civil case**.(Govt. Code §910, emphasis added.)

First, the Claim presented fails to identify Duarte or Vaca as claimants as required by subsec. (a). The

Claim specifically states only, "1. *Claimant's Name:* Young, Zachary as Special Representative of the Estate of Jesus Eric Magana." (Exh. A, p. 2, ¶ 1.) The Claim does not even mention or reference "Duarte," "Vaca," parent(s), father or mother anywhere in the Claim. Second, the Claim states no facts showing Duarte or Vaca's relationship to Decedent or "circumstances" giving rise to any claim on Duarte or Vaca's personal behalf. Third, the Claim states no amount claimed by Duarte or Vaca, or if claims by them would be a limited civil case. Accordingly, nothing in the Claim presented on behalf of Decedent satisfies the procedural requirements of §910 to qualify as a Claim on behalf of Duarte or Vaca.

Significantly, Decedent's Claim utterly fails to satisfy the important legislative purposes of the GCA, which is to "**provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation"** (*J.J.,* 223 Cal.App.4th at 1219; *Gong,* 226 Cal.App.4th at 374.) Decedent's claim gave no indication, much less, "sufficient information," that would have enabled the County to investigate or settle claims on Duarte or Vaca's behalf, as it provides no indication at all that either Plaintiff had any relation to Decedent or that they even existed. Duarte and Vaca's failure to present GCA Claims on their own behalf also failed to inform the County of potential liability as to them and precluded the County's ability to consider or account for such potential exposure in its fiscal planning. (*Cavey,* 69 Cal.App.5th at 328; *Munoz*, 33 Cal.App.4th at 1776.) Decedent's Claim does not satisfy the procedural requirements or purposes of the GCA and does not constitute a Claim on behalf of Duarte or Vaca.

Moreover, no wrongful death claim on behalf of Duarte or Vaca is reflected in the factual allegations of Decedent's GCA Claim. In California, survivorship claims on behalf of a decedent and wrongful death claims on behalf of his heirs are governed by statute, and the claims as to each and the damages recoverable are mutually exclusive. (Cal. Code of Civ. Proc. §§377.30, 377.34, 377.60, 377.61.) Code of Civ. Proc §377.34 specifies that Decedent's damages are limited to injuries or damages he incurred up to the time of his death. By contrast, under C.C,P, §377.61 wrongful death damages expressly "may not include damages recoverable under Section 377.34." Accordingly, the County's potential exposure is distinctly different for claims by Decedent versus surviving heirs, and the Claim filed only on Decedent's behalf failed to provide the County any notice that potential exposure for wrongful death claims by Duarte or Vaca should be included or even considered in its fiscal planning.

To the extent Plaintiffs may argue that Decedent's claim included the vague phrase that his "survivors contemplate bringing" state law claims for violation of the Bane Act and wrongful death, it is inadequate to satisfy Duarte and Vaca's obligation to present Claims on their own behalf. (See Exh. A. p. 5.) The Claim states no facts suggesting such claims on Duarte or Vaca's behalf. Whether unspecified "survivors" may "contemplate" bringing claims, on unstated factual bases at some unknown future time is plainly inadequate to satisfy Duarte and Vaca's claim filing obligations. Public entities like the County cannot be expected to discern the number or identity of potential "survivors" who *might* bring claims in the future, whether they have standing to bring such claims, the bases or validity of such claims, potential liability or exposure, necessary investigation, possibility of early settlement or how to fiscally plan for such claims. Vague indications that unidentified survivors are *considering* possibly bringing claims does not meet the GCA claim presentation requirements or transform Decedent's GCA Claim into a claim on behalf of Duarte or Vaca. Duarte and Vaca's eighth and eleventh claims asserted on their own behalf are barred by their failure to present GCA Claims on their own behalf. Leave to amend these claims is futile, as they are now time barred from presenting a claim more than a year after the incident. *Munoz,* 33 Cal.App.4th at 177.

**G. The Eighth Claim Fails to State a Claim For Violation of Cal. Civ. C. § 52.1 (Bane Act)**

Section 52.1 proscribes interference or attempted interference by any person by threats, intimidation or coercion with rights secured by the Constitution or laws of the United States. CCP §52.1(a); *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal.App.4th 860, 883 (2007.) Plaintiffs must show the "defendant had a specific intent to violate the plaintiff's protected rights," which requires showing "the defendant commit[ted] the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by [the particular right in question]." *Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 520 (9th Cir. 2018). Notably, §52.1 "does not provide a right of action for [survivors]; rather, it only provides for a personal cause of action for the person who has been subjected to violence or threats which interfered with that person's constitutional rights." *Tolosko-Parker v. Cty. of Sonoma,* 2009 WL 498099 at *5 (N.D. Cal. 2009); *Bay Area Rapid Transit Dist. v. Superior Court,* 38 Cal.App.4th 141, 144 (1995). Section 52.1(b) limits claims to persons "in his or her own name and on his or her own behalf." It "'is simply not a wrongful death provision.'" *City of Simi Valley v. Superior Court*, 111 Cal.App.4th 1077, 1085 (2003). The SAC states no facts showing Defendants intentionally interfered with Decedent or Duarte's rights through threat,

intimidation, or coercion. Even if Duarte's state law claims were not barred by his failure to file a GCA Claim, he still cannot assert a derivative claim under §52.1 based on Decedent's alleged wrongful death as a matter of law. No facts are stated showing Defendants took any action as to Duarte or were even aware of him, and Duarte's §52.1 claim fails at the outset. The Bane Act claims cannot be cured by amendment, as the facts make clear Decedent's death was not caused by threat, intimidation, or coercion by Defendants and fail to show Defendants acted "with the particular purpose" required by §52.1. *Sandoval*, 912 F.3d at 520.

**H. The Ninth Claim Fails to State A Claim For Intentional Infliction of Emotional Distress**

Intentional infliction of emotional distress ("IIED") requires (1) outrageous conduct, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation. *Wong v. Tai Jing* (2010) 189 Cal.App.4th 1354, 1376. The "[c]onduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 209. Extreme and outrageous conduct is of a nature that is especially calculated to cause, and does cause, mental distress. *Fisher v. San Pedro Peninsula Hosp.* (1989) 214 Cal.App.3d 590, 617. It also must be "directed at the plaintiff" and "intended to inflict injury or engaged in with the realization that injury will result." *Christensen v. Sup. Court* (1991) 54 Cal.3d 868, 903; *Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 1001. The SAC states no facts showing any County Defendants' conduct towards Decedent was sufficiently outrageous, and fails to show Sanchez even was aware of the incident. The SAC fails to show sufficiently egregious conduct.

**I. The Eleventh Claim For Wrongful Death Is Unsupported By Facts**

The SAC fails to show that Duarte or Vaca have standing to assert wrongful death claims. Wrongful death claims in California are "'a pure creature of statute' and 'exist[ ] only so far and in favor of such person as the legislative power may declare.'" *Rosales v. Battle*, 113 Cal. App.4th 1178, 1182 (2003); *Scott v. Thompson,* 184 Cal.App.4th 1506, 1510, *as mod. on denial of reh'g* (June 25, 2010). Standing to sue for wrongful death is governed by C.C.P. §377.60, which authorizes causes of action "to be brought by…any of a defined list of persons that includes a decedent's spouse, children, or heirs." (*Moreland v. Las Vegas Metro. Police Dept.,* 159 F.3d 365, 370 (9th Cir. 1998), *as amended* (Nov. 24, 1998), citing §377.60(a).) "If there is no surviving issue of the decedent, a wrongful death claim may be brought by the persons 'who would be entitled to the property of the decedent by intestate succession.'" *Raymond v. Martin,* 2018 WL

4560686 at *2 (E.D. Cal., Sept. 20, 2018), citations omitted.

If a decedent leaves issue, "his parents would not be his heirs at all and …not entitled to maintain [a wrongful death] action at all." *Chavez v. Carpenter,* 91 Cal.App.4th 1433, 1440 (2001). However, "[r]egardless of their status as heirs, parents may sue for the wrongful death of their child 'if they were dependent on the decedent.'" *Id.* at 1445, C.C.P. §377.60(b); *Foster v. City of Fresno,* 392 F.Supp.2d 1140, 1146 (E.D. Cal. 2005). "'Dependence' refers to financial rather than emotional dependency...a parent 'must show that they were actually dependent, to some extent, upon the decedent for the necessaries of life.'" *Foster,* 392 F.Supp.2d at 1146. "Financial dependency [is] the test for parents who are not heirs of the decedent." *Chavez,* 91 Cal.App.4th at 1445. Thus, under §377.60, a "parent may only assert a wrongful death claim if there are no children or issue or if ... she is 'dependent on the decedent.'" *Foster,* 392 F.Supp.2d at 1146. Plaintiffs' SAC fails to show Decedent had no surviving spouse, domestic partner or children, and fails to show Duarte or Vaca were financially dependent on him. Allegations that Decedent was 26 years old and that Duarte and Vaca are his biological parents is inadequate. (SAC ¶¶7-8, 23.) No facts show Duarte or Vaca are proper plaintiffs with standing to assert wrongful death claims under C.C.P. §377.60 and no cognizable wrongful death claim is stated.

**J. Individual Defendants Are Immune From Vicarious Liability From Under Govt. C. § 820.8**

Sanchez and all individual Defendants may not be held liable for the unlawful conduct of CFMG employees or anyone else as a matter of law. Govt. Code §820.8.

## IV. CONCLUSION

For the reasons set forth above and the supporting papers filed concurrently herewith, the County Defendants respectfully submit that the instant motion to dismiss the SAC should be granted, and should be granted without leave to amend as to the state law claims asserted by Duarte and Vaca.

Dated: April 30, 2026

BERTRAND, FOX, ELLIOT, OSMAN & WENZEL

By: */s/ Richard W. Osman*
Richard W. Osman
Sheila D. Crawford
Attorneys for Defendants
COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, LUIS MARTINEZ, ERIK BAKER, ZACHARY TSANG-LEE, and PETER CANDELARIO