Lindsey M. Romano (SBN: 337600)
Kendra N. Stark (SBN: 363663)
Bailey M. Frank (*Pro Hac Vice*)
Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111
Telephone: (415) 875-4126
Facsimile: (415) 986-8054
Email: lromano@grsm.com
kstark@grsm.com
bfrank@grsm.com

***Attorneys for Defendants***
***CALIFORNIA FORENSIC MEDICAL GROUP, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, and HARKAMALJIT HUNDAL***

GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF JESUS ERIC MAGANA, J. JESUS MAGANA DUARTE, and VERONICA DUARTE VACA,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, YESENIA SANCHEZ, ERIK BAKER, ZACHARY TSANGLEE, PETER CANDELARIO, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC & WELLPATH MANAGEMENT, INC., also known as WELLPATH LIQUIDATING TRUST, a nominal party, RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20,<br><br>Defendants. | CASE NO. 3:24-cv-04716-JD<br><br>**DEFENDANTS RAJENDRA MAHAJAN, SUMEET CHAGGER, AND HARKAMALJIT HUNDAL'S NOTICE OF MOTION, MOTION FOR SUMMARY JUDGMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: October 15, 2026<br>Judge: Honorable James Donato |

**TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on October 15, 2026, at 11:00 a.m. PST, or as soon thereafter as this matter may be heard, before the Honorable James Donato, United States District Judge, in the United States District Court for the Northern District of California, Defendants Rajendra Mahajan, M.D., Sumeet Chagger, R.N., and Harkamaljit Hundal, R.N. (collectively, the "CFMG

Defendants") respectfully will and hereby do move the Court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The individual CFMG Defendants move for summary judgment on all remaining claims asserted against them in Plaintiffs' operative complaint, including:

- **First and Fourth Causes of Action:** The Fourteenth Amendment claims under 42 U.S.C. § 1983 for deliberate indifference to serious medical needs asserted against Dr. Mahajan, Nurse Chagger, and Nurse Hundal;
- **Eighth Cause of Action:** The claim under the Tom Bane Civil Rights Act, California Civil Code section 52.1, asserted against Dr. Mahajan, Nurse Chagger, and Nurse Hundal; and
- **Ninth Cause of Action:** The claim for Intentional Infliction of Emotional Distress asserted against Dr. Mahajan, Nurse Chagger, and Nurse Hundal.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the declarations and exhibits submitted in support thereof, all pleadings and papers on file in this action, all matters properly subject to judicial notice, and upon such other evidence and argument as may be presented before or at the hearing on this Motion.

The individual CFMG Defendants move the Court to enter judgment in their favor and against Plaintiffs on all claims asserted against them because there is no genuine dispute as to any material fact, and they are entitled to judgment as a matter of law.

Dated: August 31, 2026

GORDON REES SCULLY MANSUKHANI, LLP

By: */s/ Kendra N. Stark*
Lindsey M. Romano
Kendra N. Stark
Bailey M. Frank
***Attorneys for Defendants***
***CALIFORNIA FORENSIC MEDICAL GROUP, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, and HARKAMALJIT HUNDAL***

GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111

GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ v

I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 2

III. LEGAL STANDARD ........ 4

A. Deliberate Indifference Is A Stringent Standard That Requires Significantly More Evidence Than Plaintiffs Have Produced. ........ 5

1. Plaintiffs have no evidence of a Fourteenth Amendment claim of deliberate indifference against the individual CFMG Defendants. ........ 6

i. Plaintiffs have no evidence of a Fourteenth Amendment violation for deliberate indifference against Dr. Mahajan, and summary judgment should be granted in his favor. ........ 8

a. Plaintiffs have failed to present evidence that Dr. Mahajan disregarded a known or obvious risk in his treatment of Mr. Magana. ........ 8

b. At most, the undisputed evidence establishes negligence or misdiagnosis, *not* a constitutional violation. ........ 11

ii. Plaintiffs cannot establish deliberate indifference against Nurse Chagger as a matter of law, and summary judgment should be granted in his favor. ........ 11

a. Plaintiffs have no evidence that Nurse Chagger made an intentional decision that exposed Mr. Magana to a substantial risk of serious harm ........ 12

b. Plaintiffs have failed to produce evidence that Nurse Chagger violated any standard of care, let alone that he acted with reckless indifference. ........ 13

iii. Plaintiffs cannot establish deliberate indifference against Nurse Hundal as a matter of law, and summary judgment should be granted in her favor. ........ 15

a. Nurse Hundal did not make an intentional decision that exposed Mr. Magana to a substantial risk of serious harm. ........ 15

b. No evidence shows that Nurse Hundal failed to take reasonable available measures in response to a known risk. ........ 16

B. Plaintiffs cannot establish the elements of a Bane Act Claim against the individual CFMG Defendants as a matter of law.................................................. 18

C. Plaintiffs cannot establish intentional infliction of emotional distress against the individual CFMG Defendants as a matter of law. ............................... 19

IV. CONCLUSION ........................................................................................................ 21

GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111

GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Borges v. City of Eureka*,
No. 15-CV-00846-YGR, 2017 WL 363212 (N.D. Cal. Jan. 25, 2017) .......... 4

*Brayton v. Cnty. of Los Angeles*,
No. CV 13-5638 AG (VBKX), 2015 WL 13915732 (C.D. Cal. May 18, 2015) .......... 6, 11

*Brown v. Cnty. of Mariposa*,
No. 118CV01541LJOSAB, 2019 WL 1993990 (E.D. Cal. May 6, 2019) .......... 6

*Bulgara v. Cnty. of Stanislaus*,
No. 118CV00804DADSAB, 2020 WL 5366306 (E.D. Cal. Sept. 8, 2020), *report and recommendation adopted*, No. 118CV00804DADSABPS, 2021 WL 1105255 (E.D. Cal. Mar. 23, 2021) .......... 5

*Cano v. Taylor*,
739 F.3d 1214 (9th Cir. 2014).......... 7, 10, 11

*Castro v. County of Los Angeles*,
833 F.3d 1060 (9th Cir. 2016).......... *passim*

*Celotex Corp. v. Catrett*,
477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) .......... 4, 5

*Chaudhry v. Aragon*,
68 F.4th 1161 (9th Cir. 2023).......... 7

*Cnty. of Sacramento v. Lewis*,
523 U.S. 833, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998) .......... 6

*Connick v. Thompson*,
563 U.S. 51, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011) .......... 1, 5, 8, 18

*Cousins v. Lockyer*,
568 F.3d 1063 (9th Cir. 2009).......... 5

*Est. of Nunis by & through Nunis v. City of Chula Vista*,
676 F. Supp. 3d 867 (S.D. Cal. 2023) .......... 7

*Estelle v. Gamble*,
429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) .......... 5, 6, 8

*Gordon v. County of Orange*,
6 F.4th 961 (9th Cir. 2021).......... 1, 7, 8, 10

*Gordon v. County of Orange*,
888 F.3d 1118 (9th Cir. 2018)........................................................................................ 11

*Herbert v. Vertucci*,
621 F. App'x 371 (9th Cir. 2015) ...................................................................................... 5

*Hughes v. Pair*,
46 Cal. 4th 1035 (2009) ............................................................................... 18, 19, 20

*Jackson v. McIntosh*,
90 F.3d 330 (9th Cir. 1996) *overruled in part on other grounds by Peralta*,
744 F.3d 1076 ........................................................................................................... 7, 8

*Kingsley v. Hendrickson*,
576 U.S. 389, 135 S. Ct. 2466, 192 L. Ed. 2d 416 (2015) ................................................. 7

*Mooring v. San Francisco Sheriff's Dep't*,
289 F. Supp. 2d 1110 (N.D. Cal. 2003) ............................................................................ 7

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos*.,
210 F.3d 1099 (9th Cir. 2000)...................................................................................... 4, 5

*Reyes v. Meyer*,
No. C 13-0980 RMW(PR), 2014 WL 3058426 (N.D. Cal. July 3, 2014). ......................... 5

*Russell v. Lumitap*,
31 F.4th 729 (9th Cir. 2022)........................................................................................ *passim*

*Sandoval v. Cnty. of San Diego*,
985 F.3d 657 (9th Cir. 2021)......................................................................................... 6, 8

*Toguchi v. Chung*,
391 F.3d 1051 (9th Cir. 2004)........................................................................................... 5

*Vazquez v. Conanan*,
No. 21-16731, 2023 WL 2624782 (9th Cir. Mar. 23, 2023)........................................ 6, 11

**Court Rules**

Fed. R. Civ. P. 56 ................................................................................................................ 4

GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111

GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111

## I. INTRODUCTION

This action concerns medical care provided to pretrial detainee Jesus Eric Magana on April 27, 2023, at Santa Rita Jail. After custody staff observed Mr. Magana vomiting and reportedly consuming large amounts of water on the morning of April 27, he was brought to the Medical Unit, evaluated by Dr. Mahajan, treated, and placed under observation. During the observation period, nursing staff implemented the treatment plan, monitored Mr. Magana, and communicated with the treating physician. When Mr. Magana was later found unresponsive, medical staff immediately initiated an emergency response and undertook resuscitative efforts. Although the parties disagree regarding the significance of Mr. Magana's symptoms and whether different medical decisions should have been made, the undisputed material facts do not support a constitutional claim of deliberate indifference.

The fundamental defect in Plaintiffs' case is that it conflates alleged negligence, diagnostic error, and disagreements regarding treatment with deliberate indifference. But deliberate indifference is a "stringent standard of fault." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). It requires substantially more than evidence that a provider reached the wrong diagnosis, failed to order additional testing, selected one treatment option over another, or could have exercised better medical judgment. Rather, Plaintiffs must produce evidence that each individual defendant failed to take reasonable available measures in the face of a known or obvious risk of serious harm and that the individual's conduct caused the alleged constitutional injury. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016); *Gordon v. County of Orange*, 6 F.4th 961, 970 (9th Cir. 2021).

Plaintiffs cannot satisfy that burden. As to Dr. Mahajan, the undisputed evidence shows that he evaluated Mr. Magana, considered potential diagnoses, formulated a treatment plan, provided treatment, and ordered continued observation. Plaintiffs' experts criticize those medical judgments, but repeatedly acknowledge that their disagreements concern diagnosis, assessment, testing, and treatment choices. As to Nurses Chagger and Hundal, Plaintiffs cannot identify evidence that either nurse consciously disregarded an obvious risk of serious harm, and they have no qualified expert who opines that either nurse violated an applicable nursing standard of care. The record instead

GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111

demonstrates that both nurses followed physician-directed care, communicated with treating providers, monitored Mr. Magana, and responded appropriately to the circumstances presented to them.

Ultimately, Plaintiffs' evidence amounts to a retrospective disagreement with medical judgment. Their experts contend that providers should have ordered different tests, reached different conclusions, and provided different treatment. But evidence of alleged negligence, misdiagnosis, or a difference of medical opinion is not evidence of deliberate indifference. Nor does it constitute the threats, intimidation, coercion, or outrageous conduct necessary to support Plaintiffs' Bane Act and intentional infliction of emotional distress claims. Because Plaintiffs cannot produce evidence establishing the stringent constitutional or state-law standards governing their claims, summary judgment should be entered in favor of the Medical Defendants.

## II. STATEMENT OF FACTS

Jesus Eric Magana was arrested on or about March 29, 2023, and booked into the Santa Rita Jail in Alameda County as a pretrial detainee. (Ex. A at 000104). Mr. Magana had a documented history of severe psychiatric illness accompanied by violent, aggressive, and impulsive behavior. His medical records reflect reports that he had attacked approximately ten staff members during the month preceding the events at issue. (Ex. A at 000466.) Mr. Magana was twenty-six years old when he died in custody on April 27, 2023. (Ex. A at 000467).

On the morning of April 27, 2023, Mr. Magana was evaluated at approximately 8:08 a.m. following a use-of-force incident. Deputies reported that he was continuously drinking copious amounts of water while vomiting, including approximately fifteen to twenty cups of water from the sink in his cell, and that he continued drinking despite being instructed to stop. (Ex. A at 000467). CFMG Nurse Par Kaur was called to assist. She documented vomit containing food on the toilet, floor, and wall of the cell, water covering the floor, and that Mr. Magana had been observed "drinking continuously water at least 15 glass." (Ex. A at 000467.)

Following these observations, Mr. Magana was transported by wheelchair to the trauma room, where he was evaluated by Dr. Mahajan. Dr. Mahajan testified that he was informed Mr.

GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111

Magana had consumed approximately fifteen cups of water. (Ex. B at. 60:10-16, 143:11-13.) Dr. Mahajan further testified that water intoxication was "one of the possibilities" he considered as part of his differential diagnosis, but he concluded that Mr. Magana exhibited no signs or symptoms consistent with water intoxication, including no edema, swelling, altered mental status, breathing difficulty, or neurological abnormalities. (Ex. B at 61:10-66:16, 90:14-91:1, 148:24-149:17.) Dr. Mahajan recorded normal vital signs, including blood pressure of 133/96, respiratory rate of 16, temperature of 98.7°F, heart rate of 96, and oxygen saturation of 98 percent, together with an otherwise unremarkable physical examination. (Ex. A at 000466; Ex. B at 71:5-73:23.) Based on his evaluation, Dr. Mahajan assessed: "(1) Acute gastritis with vomiting, (2) severe mental health issues, and (3) high safety risk." (Ex. A at 000466; Ex. B at 89:9-24.) His treatment plan included administration of intramuscular Zofran, Gatorade three times daily to maintain hydration, and four hours of observation in the OPHU, with return to the housing unit if Mr. Magana remained stable. (Ex. A at 000466; Ex. B at 90:7-91:18.) Despite multiple attempts by staff, Mr. Magana refused Protonix and Mylanta. (Ex. A at 000466.)

At approximately 1:20 p.m., Dr. Mahajan and Nurse Sumeet Chagger interacted with Mr. Magana at his cell door. (Ex. A at 000466; Mahajan Dep. 97:20-98:23, 103:1-104:25.) They documented that he had a steady gait, normal breathing and coloration, was able to verbalize his needs, and again refused treatment. (Ex. A at 000466.) Mr. Magana requested to return to his housing unit, and Dr. Mahajan informed him that he needed to remain in observation. (Ex. A at 000466; Ex. B at 95:24-96:16, 103:1-104:25.) Dr. Mahajan testified that Mr. Magana walked to the cell door under his own power, communicated that he wanted to return to his housing unit, and appeared clinically stable. (Ex. B at 102:1-103:25, 171:1-22, 172:1-173:24.)

Later that afternoon, Nurse Hundal was conducting rounds in the OPHU when she observed a deputy attempting to elicit a response from Mr. Magana through the cell door. (Ex. C at 44:8-45:16.) Nurse Hundal approached the cell and attempted to assess Mr. Magana but testified that she could not determine whether he was breathing while viewing him through the cell door. (Ex. C at 44:8-45:16, 48:4-49:18.) Because custody staff would not permit entry into the cell without

GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111

additional security personnel, Nurse Hundal notified Dr. Mahajan and sought assistance from the Medical Director, the Health Services Administrator, and the evening nursing supervisor while awaiting authorization to enter the cell. (Ex. C at 45:17-50:5.) Dr. Mahajan testified that Nurse Hundal urgently summoned him after observing that Mr. Magana was not responding and that there was no visible chest movement. (Ex. B at 116:5-117:20.) A Code 3 emergency was initiated and cardiopulmonary resuscitation commenced. (Ex. A at 000467; Ex. B at 121:4-24.) Once entry to the cell was authorized, Nurse Hundal participated in the resuscitative efforts. (Ex. C at 50:5-51:3.) Unfortunately, resuscitative efforts were unsuccessful, and at approximately 4:06 p.m. medical personnel discontinued life-saving measures and pronounced Mr. Magana deceased. (SAC ¶ 146; Ex. B at 122:1-12.) The Alameda County Coroner determined that Mr. Magana's cause of death was acute water intoxication. (Ex. K).

## III. LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when the pleadings and evidence in the records show that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law on a particular cause of action. If the moving party makes such a showing, the court shall grant summary judgment in the movant’s favor. *See* FRCP 56. “Any party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.” *Borges v. City of Eureka*, No. 15-CV-00846-YGR, 2017 WL 363212, at *4 (N.D. Cal. Jan. 25, 2017). “Defendants, in their motions, have the burden of producing evidence negating an essential element of each claim on which they seek judgment or showing that plaintiff cannot produce evidence sufficient to satisfy their burden of proof at trial.” *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos*., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden on the moving party to produce evidence “may be discharged by “showing”—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.” *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986). A moving party may show that “after suitable discovery,” the “nonmoving party does not have enough

GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111

evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd.*, 210 F.3d at 1106; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25 (1986).

Once the moving party meets its burden, the burden shifts to the plaintiff to show specific, material facts that demonstrate there is a genuine issue for trial. *Reyes v. Meyer*, No. C 13-0980 RMW(PR), 2014 WL 3058426, at *3–4 (N.D. Cal. July 3, 2014). "A party cannot oppose a properly made motion for summary judgment by merely relying on the allegations in his pleadings, but must come forward with evidence to demonstrate that a genuine issue of material fact exists." *Bulgara v. Cnty. of Stanislaus*, No. 118CV00804DADSAB, 2020 WL 5366306, at *7 (E.D. Cal. Sept. 8, 2020), *report and recommendation adopted*, No. 118CV00804DADSABPS, 2021 WL 1105255 (E.D. Cal. Mar. 23, 2021). A deliberate indifference claim cannot survive summary judgment if a plaintiff cannot produce evidence other than that of mere negligence. *Herbert v. Vertucci*, 621 F. App'x 371, 372 (9th Cir. 2015) (citing *Toguchi v. Chung*, 391 F.3d 1051, 1057-60 (9th Cir. 2004)) (Difference of opinion regarding medical care or negligent misdiagnosis or treatment dose not rise to the level of deliberate indifference); (also citing *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009)) (The failure to follow an internal policy does not rise to the level of deliberate indifference); (see also *Estelle v. Gamble*, 429 U.S. 97, 107, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)) (Whether "additional diagnostic techniques or forms of treatment" are appropriate "is a classic example of a matter for medical judgment" that is outside the scope of a deliberate indifference claim).

**A. Deliberate Indifference Is A Stringent Standard That Requires Significantly More Evidence Than Plaintiffs Have Produced.**

A claim of deliberate indifference is a demanding constitutional standard that requires substantially more than a showing that providers could have exercised better judgment or selected a different course of treatment. *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011) (internal citations omitted) ("'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."). Liability for deliberate indifference has typically only been found in extreme cases, such

GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111

as where providers or officers discovered an inmate unconscious after a suicide attempt and failed to administer CPR "despite an obvious need […] [or] failed to call paramedics to assist an inmate who was unresponsive and having a seizure, because it was clearly established that 'every reasonable nurse' would have understood that paramedics were necessary in such a situation." *Russell v. Lumitap*, 31 F.4th 729, 741 (9th Cir. 2022) (internal citations omitted).

**1. Plaintiffs have no evidence of a Fourteenth Amendment claim of deliberate indifference against the individual CFMG Defendants.**

In *Castro v. County of Los Angeles*, the court articulated a four-part test for deliberate indifference requiring a plaintiff to show that: "(1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable [provider] in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries." *Castro,* 833 F.3d at 1071.

Moreover, plaintiffs must provide evidence of "more than negligence but less than subjective intent—something akin to reckless disregard." *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 669 (9th Cir. 2021). A mere "difference of medical opinion […] [is] insufficient, as a matter of law, to establish deliberate indifference." *Vazquez v. Conanan*, No. 21-16731, 2023 WL 2624782, at *1 (9th Cir. Mar. 23, 2023). Longstanding precedent is clear that negligence does not rise to the level of deliberate indifference simply because a person is incarcerated. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976); *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 834, 118 S. Ct. 1708, 1710–11, 140 L. Ed. 2d 1043 (1998) ("Liability for negligently inflicted harm is categorically beneath the constitutional due process threshold."); *Brown v. Cnty. of Mariposa*, No. 118CV01541LJOSAB, 2019 WL 1993990 (E.D. Cal. May 6, 2019) ("An inadvertent failure to provide adequate medical care does not, by itself, state a deliberate indifference claim for § 1983 purposes."); *Brayton v. Cnty. of Los Angeles*, No. CV 13-5638 AG (VBKX), 2015 WL 13915732, *5 (C.D. Cal. May 18, 2015) ("Plaintiff's lists of complaints

concerning a misdiagnosis and improper medication smack of mere negligence…not the basis of a deliberate indifference claim.”).

Additionally, for pretrial detainees asserting deliberate indifference claims under the Fourteenth Amendment, the Ninth Circuit requires proof that each individual defendant's conduct actually caused the plaintiff's injury. *Castro*, 833 F.3d at 1071. The fourth element requires both actual and proximate causation. *Est. of Nunis by & through Nunis v. City of Chula Vista*, 676 F. Supp. 3d 867, 882 (S.D. Cal. 2023) (deliberate indifference causation “closely resembles the standard ‘foreseeability’ formulation of proximate cause.”). Actual causation demands proof that the constitutional injury would not have occurred but for the defendant's deliberate indifference. *Chaudhry v. Aragon,* 68 F.4th 1161, 1172 (9th Cir. 2023. In addition, causation must be assessed *individually* as to each defendant, focusing on that person's specific duties, authority, and role in the events at issue. *See Mooring v. San Francisco Sheriff's Dep't*, 289 F. Supp. 2d 1110, 1118 (N.D. Cal. 2003). Accordingly, liability cannot be imposed based on generalized allegations of inadequate care; rather, a plaintiff must demonstrate that each defendant's own acts or omissions were a foreseeable and direct cause of the alleged constitutional deprivation.

Moreover, in cases involving “choices between alternative courses of treatment,” a plaintiff “must show that the course of treatment the doctors chose was medically unacceptable under the circumstances” and that “they chose this course in conscious disregard of an excessive risk to plaintiff's health.” *Gordon*, 6 F.4th at 970 (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) *overruled in part on other grounds by Peralta*, 744 F.3d at 1076).

Further, as the Ninth Circuit held in *Cano v. Taylor,* a “claim regarding inadequate medical care amounts to a difference of opinion as to […] medical treatment, which is not actionable.” *Cano v. Taylor*, 739 F.3d 1214, 1217 (9th Cir. 2014). Although *Cano* was specifically addressing a claim under the Eighth Amendment, the analysis of the facts and evidentiary support for deliberate indifference is still material to the question of whether a provider is “objectively” unreasonable. *Kingsley v. Hendrickson*, 576 U.S. 389, 397, 135 S. Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015) (“objective reasonableness turns on the ‘facts and circumstances of each particular case.’”).

GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111

GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111

**i. Plaintiffs have no evidence of a Fourteenth Amendment violation for deliberate indifference against Dr. Mahajan, and summary judgment should be granted in his favor.**

Even viewing the evidence in the light most favorable to Plaintiffs, the record does not support a finding that Dr. Mahajan acted with the type of reckless disregard required for a Fourteenth Amendment deliberate indifference claim. Deliberate indifference is a "stringent standard of fault" requiring substantially more than negligence, a mistaken diagnosis, or a disagreement regarding treatment. *Connick*, 563 U.S. at 61; *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Sandoval*, 985 F.3d at 669. Indeed, where a provider evaluates a patient, exercises medical judgment, and selects one of several available treatment options, a plaintiff must establish both that the chosen treatment was medically unacceptable under the circumstances and that it was selected in conscious disregard of an excessive risk to the patient's health. *Gordon*, 6 F.4th at 970; *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). Plaintiffs cannot satisfy any of those requirements here.

**a. Plaintiffs have failed to present evidence that Dr. Mahajan disregarded a known or obvious risk in his treatment of Mr. Magana.**

The undisputed record establishes that once medical staff were notified of Mr. Magana's condition, he was promptly brought to medical for evaluation. Nurse Kaur reported to Dr. Mahajan that Mr. Magana had been "forcefully drinking water," consuming approximately fifteen to twenty glasses of water, and had experienced multiple episodes of projectile vomiting before being transported to the trauma room for assessment. (Ex. A at 000466-67; Ex. B at 60:10-16, 143:11-13, 146:1-148:17.) Dr. Mahajan personally evaluated Mr. Magana upon his arrival, obtaining a history, reviewing the information relayed by nursing and custody staff, performing a physical examination, and assessing his clinical presentation. (Ex. A at 000466; Ex. B at 69:1-71:25, 74:19-76:1.)

Importantly, Dr. Mahajan testified that he specifically considered water intoxication and psychogenic polydipsia as part of his differential diagnosis. (Ex. B at 61:10-62:8, 91:20-25, 148:24-149:17.) He explained that excessive water consumption raised concerns regarding hyperhydration and water intoxication and that he evaluated Mr. Magana for signs and symptoms associated with

GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111

those conditions, including edema, swelling, dizziness, shortness of breath, altered mental status, seizures, and other neurological abnormalities. (Ex. B at 61:10-66:18, 90:14-91:1, 148:24-149:17.) Dr. Mahajan testified that he found none of those signs or symptoms present during his examination. Specifically, he observed no edema, no swelling, no mental-status changes, no neurological deficits, no respiratory distress, and no other objective findings consistent with water intoxication. (Ex. B at 90:14-91:1, 148:24-149:17.)

Instead, Dr. Mahajan testified that Mr. Magana's clinical presentation was most consistent with acute gastritis accompanied by vomiting. (Ex. A at 000466; Ex. B at 89:9-24.) In reaching that assessment, Dr. Mahajan noted that Mr. Magana was awake, alert, oriented, responsive to questioning, and not exhibiting signs of toxicity or acute medical distress. (Ex. A at 000466; Ex. B at 70:20-71:25, 74:23-77:24.) His vital signs were stable, including a blood pressure of 133/96, respiratory rate of 16, temperature of 98.7°F, heart rate of 96, and oxygen saturation of 98 percent. (Ex. A at 000466; Ex. B at 71:5-73:23.) Dr. Mahajan further documented an otherwise unremarkable physical examination, including normal respiratory effort, no neurological deficits, no abdominal tenderness, normal bowel sounds, and no clinical signs of hypervolemia or fluid overload. (Ex. A at 000466; Ex. B at 77:1-88:24.)

Based upon those findings, Dr. Mahajan treated the symptoms Mr. Magana was actually exhibiting, namely nausea and vomiting. (Ex. A at 000466; Ex. B at 58:1-59:25, 89:9-24, 112:24-113:16.) He ordered and administered Zofran, directed that Mr. Magana receive Gatorade for hydration and electrolyte replacement, and placed him in the OPHU for four hours of observation. (Ex. A at 000466; Ex. B at 90:7-91:18.) Dr. Mahajan testified that because he observed no signs of water intoxication, but *did* observe a patient who had experienced repeated vomiting, his primary concern was monitoring for complications associated with continued vomiting and potential dehydration while simultaneously observing for any developing neurological or medical symptoms that could suggest a different diagnosis. (Ex. B at 90:14-91:18, 91:1-18, 149:8-150:19.)

Thus, the undisputed evidence demonstrates that Dr. Mahajan recognized and considered water intoxication as a potential diagnosis, evaluated Mr. Magana for the objective signs and

symptoms of that condition, concluded that those signs and symptoms were absent, diagnosed acute gastritis with vomiting based on the presentation before him, treated the symptoms Mr. Magana was exhibiting, and ordered continued medical observation to monitor for any change in condition. (Ex. A at 000466; Ex. B at 89:9-24, 90:14-91:25, 148:24-150:19.)

These facts alone defeat any claim that Dr. Mahajan consciously disregarded Mr. Magana's medical condition. This was not a situation where a provider ignored an unconscious inmate, refused treatment, failed to respond to an emergency, or declined to assess a patient altogether. *Compare Russell* 31 F.4th at 741. Rather, Dr. Mahajan evaluated the patient, reached a diagnosis, initiated treatment, and arranged continued monitoring.

Indeed, Plaintiffs' expert Dr. Puerini conceded that Dr. Mahajan did provide treatment. He acknowledged that his criticism was not actually that "no treatment" was rendered, but rather that, in his opinion, no "appropriate or useful treatment" was provided. (Ex. D at 43:20-24.) At most, Dr. Puerini contends that Dr. Mahajan should have ordered laboratory testing, obtained a sodium level, or selected a different course of treatment. Such opinions amount to a retrospective disagreement with Dr. Mahajan's medical judgment. Courts have repeatedly held that disagreements regarding diagnosis, testing, monitoring, and treatment do not establish deliberate indifference. *Gordon*, 6 F.4th at 970; *Cano*, 739 F.3d at 1217.

Nor do Plaintiffs' other experts identify objective findings demonstrating that severe, life-threatening hyponatremia was obvious during Dr. Mahajan's evaluation. Dr. Xiong admitted that, after reviewing the video of the examination, he did not observe signs or symptoms of water intoxication. When asked directly whether there was anything on the video that appeared to be a sign or symptom of water intoxication, he answered: "Not from watching the video." (Ex. E at 57:11-14.)

Thus, despite extensive criticism of Dr. Mahajan's clinical judgments, Plaintiffs' experts ultimately could not identify objective findings observed during the examination that would have made severe hyponatremia obvious to a reasonable physician. Their opinions instead rely on hindsight knowledge that Mr. Magana later died from water intoxication and the belief that reports

GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111

GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111

of water consumption should have prompted a different workup. Such retrospective criticism is insufficient to establish deliberate indifference. The relevant question is not what can be inferred after the autopsy, but what a reasonable physician could conclude from the information available at the time. *Gordon v. County of Orange*, 888 F.3d 1118 (9th Cir. 2018).

At most, Plaintiffs contend that Dr. Mahajan should have interpreted the available information differently or selected a different course of treatment. Such allegations amount to a disagreement with medical judgment, which is insufficient as a matter of law to establish deliberate indifference. *Vazquez v. Conanan*, No. 21-16731, 2023 WL 2624782, at *1 (9th Cir. Mar. 23, 2023); *Cano v. Taylo*r, 739 F.3d 1214, 1217 (9th Cir. 2014).

**b. At most, the undisputed evidence establishes negligence or misdiagnosis, *not* a constitutional violation.**

Notably, this case closely mirrors *Brayton*. As in *Brayton*, Plaintiffs' criticisms of Dr. Mahajan amount to hindsight disagreements over diagnosis and treatment, not evidence of constitutionally deficient care. In *Brayton*, the plaintiff claimed jail medical staff acted with deliberate indifference by misdiagnosing him, improperly treating him for tuberculosis, and administering medication that he contended was unnecessary. The court rejected those allegations as a matter of law, holding that complaints regarding "a misdiagnosis and improper medication smack of mere negligence ... not the basis of a deliberate indifference claim." *Brayton*, 2015 WL 13915732 at 4. The court emphasized that "[d]eliberate indifference requires more" and reiterated that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner.*" Id.*

That is precisely what Plaintiffs argue here. The undisputed evidence demonstrates that Dr. Mahajan did not ignore Mr. Magana, refuse to evaluate him, or decline to provide treatment. Like the providers in *Brayton*, Dr. Mahajan evaluated the patient, formed a diagnosis, prescribed treatment, and ordered continued observation. Whether those decisions were right or wrong does not transform them into a constitutional violation.

**ii. Plaintiffs cannot establish deliberate indifference against Nurse Chagger as a matter of law, and summary judgment should be granted in his favor.**

Plaintiffs' claim against Nurse Chagger fails for an even more fundamental reason: not only

GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111

is there no evidence that Nurse Chagger acted with deliberate indifference, there is no expert testimony establishing that anything he did even fell below the applicable nursing standard of care, let alone rises to the level of reckless indifference.

**a. Plaintiffs have no evidence that Nurse Chagger made an intentional decision that exposed Mr. Magana to a substantial risk of serious harm**

Plaintiffs likewise cannot establish deliberate indifference against Nurse Chagger. The undisputed evidence shows that Nurse Chagger responded to Mr. Magana's medical complaints, participated in his evaluation, communicated with Dr. Mahajan, followed Dr. Mahajan's orders, and continued to observe Mr. Magana in accordance with the physician's care plan. Whatever criticisms Plaintiffs may level at the ultimate diagnosis or treatment decisions, the record does not support the conclusion that Nurse Chagger consciously disregarded a substantial risk of serious harm.

The Ninth Circuit's decision in *Russell v. Lumitap* is directly instructive. There, the court held that Nurse Trout was entitled to judgment because she assessed the detainee, recognized symptoms requiring medical attention, contacted the on-call physician, relayed the detainee's condition, administered treatment, and followed the physician's recommendations. 31 F.4th at 744. The court held that "[n]o clearly established law would have put a reasonable nurse in Nurse Trout's position on notice that she could violate [the detainee's] constitutional rights even while relying on [the physician's] evaluation and recommendation." *Id.* Most importantly, the Ninth Circuit explained that even if Nurse Trout "perhaps ... should have called paramedics," her conduct in promptly consulting the physician and following his instructions "cannot be categorized as deliberate indifference." *Id.*

That reasoning applies here. Nurse Chagger did precisely what *Russell* found constitutionally sufficient. The medical record reflects that Dr. Mahajan ordered Protonix, Gatorade, and four hours of observation. Nurse Chagger carried out those orders, attempted multiple times to administer the prescribed medication, informed Dr. Mahajan when Mr. Magana refused treatment, monitored him during the observation period, and communicated his observations back to Dr. Mahajan. (CFMG 000466). Specifically, Nurse Chagger documented that

GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111

he attempted to provide the ordered Protonix and Gatorade, advised Dr. Mahajan that Mr. Magana refused treatment, performed rounds at regular intervals, and observed Mr. Magana with a steady gait, normal breathing, no visible injury, no vomiting, and the ability to communicate his needs. (CFMG 000466).

Thus, like Nurse Trout, Nurse Chagger consulted the treating physician, relayed information regarding the patient, and relied on the physician's evaluation and recommendations. Nurse Chagger testified that when working in the OPHU, the physician "tell[s] you what the treatment plan is gonna be" and the nurse carries out those orders. (Ex. F at 32:24-33:5). He further testified that, in the OPHU, he deferred to the physician because "the M.D. is there" and takes the lead in patient management. *Id*.

Plaintiffs' theory necessarily requires the jury to conclude that Nurse Chagger should have independently rejected Dr. Mahajan's diagnosis, overridden his treatment decisions, recognized an alternative diagnosis that the physician himself did not identify, and initiated emergency intervention despite the physician's judgment that Mr. Magana was stable for observation. But *Russell* rejects that very theory of liability. A nurse does not act with deliberate indifference merely by relying on the treating physician's medical judgment. *Russell*, 31 F.4th at 744. On the contrary, every material step Nurse Chagger took involved obtaining physician involvement or implementing physician-directed care. Under *Russell*, that conduct cannot be characterized as deliberate indifference as a matter of law. *See Russell*, 31 F.4th at 744.

**b. Plaintiffs have failed to produce evidence that Nurse Chagger violated any standard of care, let alone that he acted with reckless indifference.**

Plaintiffs have no qualified expert who opines that Nurse Chagger violated any applicable nursing standard of care. Dr. Puerini is a physician, not a nurse, and although he criticizes aspects of the overall medical response, he never identifies a correctional nursing standard, explains what a reasonably prudent correctional nurse should have done differently, or opines that Nurse Chagger departed from any recognized nursing practice. Likewise, Dr. Xiong expressly disclaimed any nursing opinions, testifying: "No. I'm not offering anything about nursing care or the nursing standard of care." (Ex. E at 63:2-7.) He further testified that he was retained to evaluate Dr.

GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111

Mahajan's medical care and behavioral-health issues, not nursing conduct. (Ex. E at 15:24-16:12). Dr. Sperry similarly testified that he was not offering opinions regarding nursing care or nursing standards and expressly stated: “No. I'm not offering anything about nursing care or the nursing standard of care. Of course not.” (Ex. G at 63:2-8). Nor does Plaintiffs' correctional-practices expert, Phil Stanley, provide any nursing opinions; as a former correctional administrator rather than a healthcare provider, his opinions concern jail operations and custody practices, not professional nursing standards. (Ex. H at 1-14).

Defendants' correctional medicine expert, Dr. Meagher, specifically opines that Nurse Chagger’s conduct was appropriate and within the standard of care. Dr. Meagher notes that Nurse Chagger properly assisted Dr. Mahajan, repeatedly attempted to administer treatment, monitored Mr. Magana during the observation period, observed no further vomiting or clinical deterioration, and had no involvement beyond those interactions. (Ex. I at 9-10). Dr. Meagher concludes that Nurse Chagger's actions “were reasonable under the circumstances and within the accepted standard of correctional medical practice.” (Ex. I at 9-10).

As a result, after the close of expert discovery, Plaintiffs are left without a single expert willing or qualified to testify that Nurse Chagger violated an applicable nursing standard of care. No expert identifies a nursing assessment that should have been performed, an intervention that was required, or any accepted nursing practice from which Nurse Chagger allegedly deviated. At most, Plaintiffs offer generalized criticisms of the overall medical response and disagreement with Dr. Mahajan’s clinical judgment. That is insufficient to establish that Nurse Chagger’s conduct was medically unacceptable and falls far short of the much more demanding constitutional showing that he acted with objective recklessness or conscious disregard of an obvious risk of serious harm.

Nor can Plaintiffs establish causation. *Castro* requires proof that each individual defendant's conduct caused the alleged constitutional injury. *Castro*, 833 F.3d at 1071. Nurse Chagger’s involvement was limited to carrying out physician orders, attempting medication administration, performing periodic observations, and reporting information back to Dr. Mahajan. (CFMG 000466). Plaintiffs have no expert testimony identifying any act Nurse Chagger should have taken,

GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111

when he should have taken it, or how such action would more likely than not have prevented Mr. Magana's death. Indeed, Dr. Puerini's causation opinions are directed generally at the course of care and emergency response and never provide an individualized causation analysis as to Nurse Chagger. Such generalized criticisms are insufficient under *Castro* and *Chaudhry*.

**iii. Plaintiffs cannot establish deliberate indifference against Nurse Hundal as a matter of law, and summary judgment should be granted in her favor.**

Plaintiffs' deliberate indifference claim against Nurse Hundal fails because the undisputed evidence demonstrates that she had virtually no involvement in Mr. Magana's care before he was found unresponsive, took immediate action when a potential emergency arose, and participated in resuscitation efforts until emergency personnel assumed control. No reasonable jury could conclude that such conduct constitutes deliberate indifference.

**a. Nurse Hundal did not make an intentional decision that exposed Mr. Magana to a substantial risk of serious harm.**

As with Nurse Chagger, Plaintiffs have no expert testimony establishing that Nurse Hundal violated any applicable nursing standard of care. Plaintiffs' expert Dr. Puerini did not identify any nursing standard governing Nurse Hundal's conduct, did not perform any nursing-specific analysis, and did not explain how her actions were medically unacceptable under the circumstances. Nor did any other retained expert offer opinions regarding the standard of care applicable to OPHU nursing staff. This omission is particularly significant because Nurse Hundal's role was limited to that of a registered nurse who assumed responsibility for the OPHU at the beginning of her shift and followed instructions provided by the treating physician and outgoing nurse. Without competent expert testimony establishing what a reasonably prudent correctional nurse should have done differently, Plaintiffs cannot transform routine nursing conduct into a constitutional violation.

The undisputed facts demonstrate that Nurse Hundal came on duty at approximately 3:00 p.m., after Mr. Magana had already been evaluated by Dr. Mahajan, monitored by Nurse Chagger for several hours, and medically cleared for return to his housing unit. Nurse Hundal testified that, during shift handoff, both Nurse Chagger and Dr. Mahajan informed her that Mr. Magana was stable, medically cleared to return to his housing unit, and was awaiting transfer only because

GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111

custody wished to delay transport until after count. (Ex. C at 38:3-39:12). She further testified that she received no report that Mr. Magana required ongoing monitoring, no report that he was unstable, and no task directing her to perform additional assessments. (Ex. C at 41:1-18). In fact, she specifically testified that Mr. Magana had no active tasks because he was considered stable and no longer acute. *Id*. Most significantly, Mr. Magana was found unresponsive only a short time after Nurse Hundal assumed her shift. She had not even completed an initial round of the unit before the emergency occurred. (Ex. C at 44:8-22).

Plaintiffs therefore cannot establish that Nurse Hundal consciously disregarded an obvious risk because, by the time she assumed responsibility for the unit, she had been affirmatively informed by both the treating physician and outgoing nurse that Mr. Magana was stable and cleared for discharge from OPHU. Nothing in the record suggests she possessed information indicating otherwise. On the contrary, she testified that she did not receive any report suggesting clinical deterioration, was not informed of any diagnosis of water intoxication, and was not told how much water Mr. Magana had allegedly consumed. (Ex. C at 40:4-5, 74:17-75:6).

The case for summary judgment is even stronger here than in *Russell v. Lumitap*. Unlike Nurse Trout, Nurse Hundal did not independently evaluate Mr. Magana and then decide upon a course of treatment. By the time she arrived for her shift, Dr. Mahajan had already evaluated Mr. Magana, diagnosed him, ordered treatment, and determined that he was stable for return to housing. (Ex. C at 38:3-39:12). Nurse Hundal was expressly advised during shift handoff that Mr. Magana was stable, medically cleared, and awaiting return to his housing unit. (Ex. C at 38:3-39:12, 41:1-18). *Russell* squarely rejects the proposition that a nurse acts with deliberate indifference by relying on a physician's evaluation and recommendations. *See Russell*, 31 F.4th at 744.

**b. No evidence shows that Nurse Hundal failed to take reasonable available measures in response to a known risk.**

Moreover, once Nurse Hundal encountered circumstances suggesting a potential emergency, she did precisely what *Russell* found constitutionally sufficient: she immediately escalated the issue to the responsible physician and sought additional medical assistance. During rounds approximately twenty to twenty-five minutes into her shift, she observed a deputy

GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111

attempting to elicit a response from Mr. Magana. (Ex. C at 44:8-45:16). She immediately approached the cell, attempted to assess the situation, notified Dr. Mahajan, sought assistance from supervisory medical personnel, and initiated an emergency response. (Ex. C at 44:8-45:16, 45:17-50:5). Once entry to the cell was authorized, she helped initiate CPR and continued resuscitation efforts until emergency responders assumed control. (Ex. C at 50:5-51:3, 60:1-66:23).

This conduct is the exact opposite of deliberate indifference. Unlike the cases where liability has been imposed because providers ignored an unconscious inmate or failed to respond to an obvious medical emergency, Nurse Hundal immediately escalated the situation, summoned additional medical personnel, initiated emergency procedures, participated in CPR, assisted in applying AED pads, and continued resuscitation efforts until fire and paramedics assumed treatment. (Ex. C at 48:4-50:19; 60:1-66:23). No evidence suggests she delayed treatment, ignored symptoms, or refused care.

Plaintiffs also cannot establish causation. Under *Castro*, deliberate indifference liability must be assessed individually as to each defendant and requires proof that the defendant's conduct actually caused the alleged constitutional injury. *Castro*, 833 F.3d at 1071. Here, there is no evidence that any act or omission by Nurse Hundal caused Mr. Magana's death. By the time of her arrival at the beginning of the swing shift, Mr. Magana had already been evaluated, diagnosed, treated, monitored, and medically cleared by Dr. Mahajan. (Ex. C at 38:3-39:12). Plaintiffs have no expert testimony explaining what additional action Nurse Hundal should have taken during the twenty to twenty-five minutes between the start of her shift and discovery of Mr. Magana unresponsive, nor do they have any admissible evidence demonstrating that any such action would more likely than not have changed the outcome.

Defendants' correctional medicine expert, Dr. Meagher, specifically concludes that Nurse Hundal's conduct complied with the applicable standard of care. He notes that Nurse Hundal arrived for duty at approximately 3:00 p.m., was informed of Mr. Magana's status, observed the emergency when he became unresponsive, notified appropriate personnel, and participated in lifesaving efforts. He concludes that "the care provided to the patient by Nurse Hundal met the

standard of care, with no deviations or issues identified." (Ex. I at 10).

In sum, Plaintiffs seek to impose constitutional liability on a nurse whose first meaningful interaction with Mr. Magana occurred when she discovered a potential medical emergency and immediately attempted to save his life. That evidence cannot satisfy the "stringent standard" required for deliberate indifference. See *Connick*, 563 U.S. at 61. Because Plaintiffs cannot establish objective unreasonableness, conscious disregard of an obvious risk, or causation, summary judgment should be entered in Nurse Hundal's favor.

**B. Plaintiffs cannot establish the elements of a Bane Act Claim against the individual CFMG Defendants as a matter of law.**

Plaintiffs' Bane Act claim also fails because they cannot establish either of the required elements. To prevail under California Civil Code section 52.1, Plaintiffs must prove: (1) intentional interference or attempted interference with a constitutional or statutory right, by threats, intimidation, or coercion, and (2) that the defendant acted with the specific intent to violate the plaintiff's rights. *Reese v. County of Sacramento*, 888 F.3d 1030, 1040-44 (9th Cir. 2018); *Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766, 799-803 (2017). In the context of a deliberate indifference claim, courts have recognized that the coercion element is satisfied, if at all, by the underlying constitutional violation itself, such that the viability of the Bane Act claim depends upon the existence of a constitutional violation and the requisite specific intent. *Reese*, 888 F.3d at 1043; *Scalia v. County of Kern*, 493 F. Supp. 3d 890, 902-04 (E.D. Cal. 2019). Thus, where a plaintiff cannot establish deliberate indifference to serious medical needs, the derivative Bane Act claim necessarily fails as well. *Cravotta v. County of Sacramento*, 717 F. Supp. 3d 941, 964-67 (E.D. Cal. 2024) (dismissing Bane Act claims against defendants for whom the deliberate indifference claim failed).

For the reasons discussed above, Plaintiffs cannot establish an underlying Fourteenth Amendment violation by Dr. Mahajan, Nurse Chagger, or Nurse Hundal. At most, Plaintiffs present a disagreement with medical judgment and treatment decisions. Such evidence does not satisfy the "stringent standard" required to establish deliberate indifference and, therefore, cannot support the predicate constitutional violation required under the Bane Act. See *Connick v. Thompson*, 563 U.S.

GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111

51, 61 (2011); *Gordon v. County of Orange*, 6 F.4th 961, 970 (9th Cir. 2021); *Cravotta*, 717 F. Supp. 3d at 964-67.

Nor can Plaintiffs establish the Bane Act's separate specific-intent requirement. Under *Cornell* and *Reese*, specific intent may be shown only where a defendant acted with reckless disregard for a clearly established constitutional right. *Cornell*, 17 Cal. App. 5th at 803; *Reese*, 888 F.3d at 1045. A genuine dispute regarding deliberate indifference may create a dispute regarding Bane Act intent, but the converse is equally true: where the evidence does *not* support deliberate indifference, there is no basis from which a jury could infer the reckless disregard necessary to establish specific intent. *Scalia*, 493 F. Supp. 3d at 902. Here, the record is devoid of evidence that any of the individual CFMG Defendants acted with the purpose of depriving of depriving Mr. Magana of constitutional rights or with reckless disregard of an obvious risk of constitutional injury. Because Plaintiffs cannot establish either an underlying constitutional violation or the specific intent required by section 52.1, summary judgment should be entered in favor of Dr. Mahajan, Nurse Chagger, and Nurse Hundal on Plaintiffs' Bane Act claim.

### C. Plaintiffs cannot establish intentional infliction of emotional distress against the individual CFMG Defendants as a matter of law.

Plaintiffs' claim for intentional infliction of emotional distress fails as a matter of law because the record contains no evidence that any of the individual CFMG Defendants engaged in the type of extreme and outrageous conduct required under California law. To prevail on an IIED claim, a plaintiff must establish "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) severe or extreme emotional distress; and (3) actual and proximate causation." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009). Conduct is "outrageous" only when it is so extreme as to exceed all bounds tolerated in a civilized community, and liability does not extend to ordinary negligence, poor judgment, or even gross negligence. *Id.* at 1050-51.

Plaintiffs cannot satisfy that standard as to Dr. Mahajan. The undisputed evidence demonstrates that after Mr. Magana was transferred to the Medical Unit, Dr. Mahajan personally evaluated him, diagnosed gastritis, prescribed Zofran and Gatorade, and ordered that he be housed

GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111

in a medical observation cell for monitoring. (SAC ¶ at 17-18; Ex. A at 000466.) Even accepting Plaintiffs' criticism that Dr. Mahajan should have reached a different diagnosis or ordered different treatment, such allegations amount at most to a disagreement over medical judgment. Disputed medical decisions, misdiagnoses, or alleged failures to provide optimal care do not constitute the type of atrocious or intolerable conduct necessary to support an IIED claim. *Hughes*, 46 Cal. 4th at 1050-51.

The claim likewise fails against Nurse Chagger. The undisputed record establishes that Nurse Chagger communicated with Dr. Mahajan, carried out physician-ordered treatment, and continued his observation in the OPHU. (SAC ¶ at 16-19; Ex. A at 000466-000467). Plaintiffs may contend that additional steps should have been taken, but there is no evidence that Nurse Chagger intended to cause harm, acted for the purpose of causing emotional distress, or engaged in conduct that exceeds all bounds tolerated in a civilized society. On the contrary, the undisputed evidence shows that he was actively involved in obtaining and implementing medical care for Mr. Magana.

Nor can Plaintiffs establish outrageous conduct by Nurse Hundal. The evidence shows that Nurse Hundal did not begin her shift until approximately 3:00 p.m., after Mr. Magana had already been evaluated by Dr. Mahajan, observed for several hours, and medically cleared for return to his housing unit. (Ex. C at 38:3-39:12, 41:1-17). During shift handoff, both Dr. Mahajan and Nurse Chagger informed her that Mr. Magana was stable and awaiting transport back to housing. (Ex. C at 38:3-39:12). When Nurse Hundal later observed deputies attempting to elicit a response from Mr. Magana, she immediately approached the cell, attempted to assess him, contacted Dr. Mahajan, sought assistance from supervisory medical personnel, and participated in the ensuing Code 3 response and resuscitative efforts. (Ex. C at 44:8-51:3, 60:1-66:24). Such conduct is the opposite of outrageous behavior. The record shows a nurse responding to a perceived medical emergency and attempting to provide aid, not one intentionally or recklessly inflicting emotional injury.

Further, there is no evidence that any individual CFMG Defendant acted with the intent to cause emotional distress or with reckless disregard of the probability of causing emotional distress. Every action challenged by Plaintiffs concerns the provision of medical care, the implementation

GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111

GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111

of a treatment plan, the monitoring of a patient, or efforts to respond to an emergent situation. Plaintiffs' theory is that different medical decisions should have been made. But even if Plaintiffs could prove negligence or a constitutional violation, that alone would not establish the intent or outrageousness necessary for IIED liability. *Hughes*, 46 Cal. 4th at 1050-51.

Because Plaintiffs have produced no evidence that Dr. Mahajan, Nurse Chagger, or Nurse Hundal engaged in conduct so extreme as to exceed all bounds tolerated in a civilized community, and no evidence that any of them intended to cause emotional distress or acted with reckless disregard of that result, Plaintiffs' IIED claim fails as a matter of law.

**IV. CONCLUSION**

In sum, Plaintiffs have failed to produce evidence sufficient to create a triable issue of fact as to any claim asserted against the individual CFMG Defendants. The undisputed record establishes that Dr. Mahajan evaluated, diagnosed, treated, and monitored Mr. Magana; that Nurse Chagger implemented physician-directed care, monitored Mr. Magana, and communicated with the treating physician; and that Nurse Hundal promptly escalated concerns and participated in emergency resuscitative efforts when Mr. Magana was discovered unresponsive. Plaintiffs' criticisms amount to nothing more than retrospective disagreement with medical judgment and allegations of negligence or misdiagnosis, neither of which is sufficient to establish deliberate indifference as a matter of law. Likewise, Plaintiffs have produced no evidence of the threats, intimidation, coercion, extreme and outrageous conduct, or individualized causation necessary to support their state-law claims. Because no reasonable jury could find that any of the individual CFMG Defendants acted with the objective recklessness required by the Fourteenth Amendment or otherwise engaged in actionable misconduct, summary judgment should be granted in favor of Dr. Mahajan, Nurse Chagger, and Nurse Hundal on all claims.

Dated: August 31, 2026 GORDON REES SCULLY MANSUKHANI, LLP

*By: Kendra N. Stark*
Lindsey M. Romano
Kendra N. Stark
Bailey M. Frank

*Attorneys for Defendants California Forensic Medical Group. Inc., Rajendra Mahajan, Sumeet Chagger, and Harkamaljit Hundal*

GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111

GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111

**CERTIFICATE OF SERVICE**

*Estate of Jesus Eric Magana v. County of Alameda, et al.*

U.S.D.C., Northern District of California, Case No.: 3:24-cv-04716

I, Kendra N. Stark, certify that this document, filed through the Court's ECF system on **August 31, 2026**, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Kendra N. Stark*