Yolanda Huang, SBN 104543
LAW OFFICES OF YOLANDA HUANG
2748 Adeline Street, Suite A
Berkeley, CA 94703
Tele: (510) 329-2140
Fax: (510) 580-9410
Email: yhuang.law@gmail.com

Mark E. Merin, SBN 043849
Paul H. Masuhara, SBN 289805
LAW OFFICES OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, CA 95814
Tele: (916) 443-6911
Fax: (916) 447-8336
Email: mark@markmerin.com
paul@markmerin.com

Attorneys for Plaintiffs
ESTATE OF JESUS ERIC MAGANA,
J. JESUS MAGANA DUARTE,
and VERONICA DUARTE VACA

Lindsey M. Romano (SBN: 337600)
Allison J. Becker (*Pro Hac Vice*)
Gregory Rousso (SBN: 353157)
Sarah A. Kilgore (*Pro Hac Vice*)
GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111
Telephone: (415) 875-4126
Facsimile: (415) 986-8054
Email: lromano@grsm.com
abecker@grsm.com
grousso@grsm.com
skilgore@grsm.com

Attorneys for Defendants
CALIFORNIA FORENSIC MEDICAL GROUP, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, and HARKAMALJIT HUNDAL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ESTATE OF JESUS ERIC MAGANA,
J. JESUS MAGANA DUARTE,
and VERONICA DUARTE BACA,

Plaintiffs,

vs.

CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC & WELLPATH MANAGEMENT, INC., also known as LIQUIDATING TRUST, a nominal party, RAJENDRA MAHAJAN, SUMEET CHAGGER, HARKAMALJIT HUNDAL, and DOE 1 to 20,

Defendants.

Case No. 3:24-cv-04716-JD

**JOINT PRETRIAL STATEMENT**

Pursuant to the Court's scheduling order, ECF No. 54, and standing order, the Estate of Jesus Eric Magana, J. Jesus Magana Duarte, and Veronica Duarte Vaca (collectively, "Plaintiffs") and the California Forensic Medical Group, Inc., Rajendra Mahajan, Sumeet Chagger, and Harkamaljit Hundal (collectively, "Defendants") submit the following joint pretrial statement.

## 1. SUBSTANCE OF THE ACTION

Generally, this action arises from the April 27, 2023, in-custody death of pre-trial detainee Jesus Eric Magana at the Santa Rita Jail in Dublin, California.

Plaintiffs' claims that remain to be tried are: (1) Deliberate Indifference (U.S. Const. Amend. XIV; 42 U.S.C. § 1983); (2) Unwarranted Interference with Familial Association (U.S. Const. Amend. XIV; 42 U.S.C. § 1983); (3) Failure to Produce Patient Records (Cal. Evid. Code § 1158)[1]; (4) Tom Bane Civil Rights Act (Cal. Civ. Code § 52.1); and (5) Intentional Infliction of Emotional Distress.

## 2. RELIEF REQUESTED

### A. Plaintiffs' Position

Plaintiffs seek compensatory, nominal, and punitive damages and statutory penalties.

The decedent's estate seeks compensatory (pre-death and loss-of-life) damages for: (1) Deliberate Indifference (U.S. Const. Amend. XIV; 42 U.S.C. § 1983); (2) Tom Bane Civil Rights Act (Cal. Civ. Code § 52.1); (3) Intentional Infliction of Emotional Distress; and (4) Negligence. The decedent's estate seeks statutory penalties under the Tom Bane Civil Rights Act (Cal. Civ. Code § 52.1). The decedent's estate seeks fees and costs under Cal. Evid. Code § 1158(d).

The decedent's parents seek compensatory (loss-of-child) damages in association with the claims: (1) Unwarranted Interference with Familial Association (U.S. Const. Amend. XIV; 42 U.S.C. § 1983); (2) Tom Bane Civil Rights Act (Cal. Civ. Code § 52.1); and (3) Wrongful Death (Cal. Code Civ. Proc. § 377.60).

Plaintiffs also seek to recover punitive damages and attorneys' fees and costs, pursuant to 42 U.S.C. § 1988, California Civil Code § 52.1, and/or California Code of Civil Procedure § 1021.5.

---

[1] Please see the parties' Pre-Trial Briefs for additional details as to this claim, as requested in the Court's November 6, 2026 Order. [Dkt. 141].

**B. Defendants' Position**

Defendants seek that they be held not liable under all of the above causes of action and that Plaintiffs recover nothing. Defendants also seek to recover costs of the suit incurred herein. Should Defendants be held liable for any of the above causes of action, they seek for Plaintiff to be awarded only nominal damages.

Defendants also seek any further relief that the Court deems proper.

**3. UNDISPUTED FACTS**

- County-CFMG Contract: At all relevant times, the County of Alameda ("County") contracted with California Forensic Medical Group, Inc. DBA Wellpath ("CFMG") to "provide comprehensive medical services," not including mental-health care services, for inmates housed at the Santa Rita Jail (SRJ) facility.
- Booking: On March 28, 2023, 26-year-old Jesus Eric Magana was arrested and booked as a pre-trial detainee into the Santa Rita Jail. On March 29, 2023, CFMG employee Olivia Nacis, LVN performed a "Receiving Screening" on Magana and documented Magana's "[c]urrent or past mental health diagnosis" to include "Hx Schizoaffective Disorder per record."
- Criminal Charges: On March 28, 2023, Jesus Eric Magana was charged with one count of commercial burglary and one count of vandalism.
- Illness: On the morning of April 27, 2023, deputy sheriff Erik Baker was reportedly informed by an inmate that Magana was "projectile vomiting" inside of his cell. Baker approached Magana's cell and reported seeing vomit. Baker asked Magana "if he had been throwing up" and Magana responded by "nodding his head [']yes.[']" Baker reportedly told Magana that he "would contact a nurse to check on him." Baker reported Magana "projectile vomiting" inside of his cell later. Baker again told Mr. Magana that he "would contact a nurse." Baker reportedly called deputy sheriff Zachary Gilkersonw who reportedly responded to the cell and observed a "clear liquid" in the cell, although he did not see Magana vomit. Gilkerson notified his supervising sergeant.
- Sergeant Response: Around 10:40 a.m., sergeant Luis Martinez reportedly responded to Magana's cell. Gilkerson reported that he was "unsure how much water [Magana] drank."
- Nurse Response: After Gilkerson walked to the sick call room and asked CFMG nurse Par

Kaur to medically evaluate Magana, they arrived back at Magana's cell, and Martinez informed Kaur that Magana "had been projectile vomiting." Kaur asked Magana if he was "ok" but Magana did not respond. At that time, Martinez ordered that the water supply inside of the cell be shut-off. Gilkerson reportedly walked to the control tower and a technician turned-off the water supply in the cell. Kaur asked the custody staff to transport Magana to the OPHU.

- <u>Transport to OPHU</u>: Custody staff applied restraints to Magana's arms, waist, and legs and secured him in a wheelchair. Sergeant Martinez and deputy sheriffs Christopher Krol, Shaun Williams, and Gilkerson transported Mr. Magana by wheelchair to the OPHU. Kaur telephoned CFMG physician Dr. Rajendra Mahajan and informed him that Magana "had been projectile vomiting in his cell."

- <u>Mahajan Exam</u>: Dr. Mahajan examined Magana.

- <u>OPHU Housing</u>: After the evaluation, per Dr. Mahajan's orders, Magana was housed in an OPHU medical observation cell, OPHU-WEST-11, "for a four[-]hour medical observation." Magana was "placed on the bed face down" in the cell by County staff and the restraints were removed from his arms, waist, and legs.

- <u>Cell Checks</u>: At 11:12 a.m., Tsang-Lee reported conducting a "Well-Being Check Inmate and Cell" on Magana which lasted less than four seconds. At 11:38 a.m., Tsang-Lee reported conducting a "Well-Being Check Inmate and Cell" on Magana which lasted less than five seconds. At 12:05 p.m., Tsang-Lee reported conducting a "Well-Being Check Inmate and Cell" on Magana which lasted less than six seconds. At 12:30 p.m., Tsang-Lee reported conducting a "Well-Being Check Inmate and Cell" on Magana which lasted less than four seconds. At 1:07 p.m., Candelario reported conducting a "Well-Being Check Inmate and Cell" on Magana which lasted less than 18 seconds. At 1:37 p.m., Tsang-Lee reported conducting a "Well-Being Check Inmate and Cell" on Magana which lasted less than eight seconds. *Id*.

- <u>Unresponsive Cell Check</u>: Around 2:10 p.m., Tsang-Lee observed Magana was unresponsive in his cell. Tsang-Lee requested Candelario to come to Magana's cell and observe him. Candelario observed Magana through a window in the cell door. Candelario kicked the cell door three times in attempt to elicit a response from Magana but received none. Candelario said, "Yeah, his fingers

are moving. Yeah, look. You can see his fingers moving." Tsang-Lee looked through the cell door window. Candelario said, "The one that's by his chin." Tsang-Lee watched Magana for about 25 seconds. Candelario said, "You don't see them?" Tsang-Lee said, "No." Candelario kicked the cell door three more times and Magana remained unresponsive. Candelario watched Magana for about one minute and 30 seconds. Candelario said, "Yeah, he is moving. I can see his fingers moving." Tsang-Lee and Candelario walked away from the cell. At 2:46 p.m., Candelario reported conducting a "Well-Being Check Inmate and Cell" on Magana which lasted less than 31 seconds.

- Death: Around 3:19 p.m., Candelario, Tsang-Lee, and Hundal reportedly observed Magana inside of his cell, lying face-up on a mattress with his eyes closed, "unresponsive," and without "any signs of life" such as "respiratory activity" or a rise-and-fall of the chest. Candelario reported that he "rattled" the cell door of Magana's cell but he did not move or respond, and that he "shouted" Magana's name and "nudged his left foot" but he did not respond. Candelario used his radio to request a "Code 3" emergency medical response to the cell.

- Medical personnel reportedly responded and began life-saving measures on Magana. Mr. Magana was thereafter pronounced deceased.

- Autopsy: Magana's autopsy and coroner investigator's report determined his cause of death to be "Acute Water Intoxication," and the toxicology report "did not show any common controlled substances in his blood."

## 4. DISPUTED FACTUAL ISSUES

- Water Cup Size: The parties dispute the size of the water cup that Magana had in his cell. Plaintiffs assert the cup was an 8 ounce coffee cup. Defendants' expert claims it was a 3 ounce cup.
- Plaintiffs claim that Nurse Kaur observed decedent Eric Magana drink 15 cups of water.
- Plaintiffs claim that Nurse Kaur informed Defendant Mahajan that Decedent drank 15 cups of water.
- Defendants dispute what Nurse Kaur saw and what was told to Defendant Mahajan.
- Dr. Mahajan's Evaluation: The parties dispute whether Dr. Mahajan considered water intoxication and psychogenic polydipsia as part of his diagnosis. The parties also dispute to what extent

Magana was exhibiting symptoms of water intoxication. Further, the parties dispute whether Dr. Mahajan evaluated the following as to Magana: (1) whether oriented, (2) eyes, (3) facial sensory motor loss, (4) facial sensation, and (5) neurological function.

- The parties dispute whether defendant Chaggers and Mahajan actually had an interaction with decedent Eric Magana at either 12:20 or 40 minutes before 911 was called,
- The parties dispute whether decedent Eric Magana, was walking and talking at these prior interactions,
- The parties dispute whether decedent Eric Magana was in fact deceased or very close to being deceased around 2 p.m.
- CFMG's Communication to OPHU Custody Staff: The parties dispute what information was communicated to OPHU custody staff regarding Magana's medical condition.
- CFMG Check-Ups: The parties dispute whether medical checks were conducted while Magana was in the OPHU. Additionally, the parties dispute whether the physical and cognitive behaviors of Magana documented by defendant Chagger that allegedly occurred around 1:20 p.m. were physiologically impossible.
- The parties dispute whether the late entered medical note by defendant Chagger at 6:10 p.m. on the date of the Incident was a false entry.
- Emergency Response: The parties dispute the cause of the delay in providing emergency medical care.

## 5. DISPUTED LEGAL ISSUES

Deliberate Indifference (U.S. Const. Amend. XIV; 42 U.S.C. § 1983): Whether decedent's estate can prevail on a claim for violation of the Fourteenth Amendment against Defendants. Specifically, the parties dispute Plaintiffs' ability to demonstrate the following:

- Whether there was an underlying constitutional violation;
- Whether CFMG maintained a deliberately indifferent policy;
- Whether CFMG maintained a deliberately indifferent custom;
- Whether such a deliberately indifferent custom or policy was the moving force behind Magana's death;

- Whether CFMG's training or supervision was inadequate to prevent constitutional violations;
- Whether CFMG's training was inadequate to prepare employees for the usual and recurring situations they encounter;
- Whether CFMG was deliberately indifferent to the known or obvious consequences of the alleged training inadequacy
- Whether the alleged failure to train or supervise was the moving force behind Magana's death;
- Whether Dr. Mahajan, Nurse Chagger, and/or Nurse Hundal acted in reckless disregard of a known or obvious risk to Magana;
- Whether Dr. Mahajan, Nurse Chagger, and/or Nurse Hundal failed to take reasonable available measures to abate a substantial risk of serious harm to Magana,
- Whether a reasonable practitioner in the position of Dr. Mahajan, Nurse Chagger, and/or Nurse Hundal would have appreciated the high degree of risk involved;
- Whether Dr. Mahajan, Nurse Chagger, and/or Nurse Hundal caused Magana's death; and
- Whether Dr. Mahajan, Nurse Chagger, and/or Nurse Hundal were merely negligent or merely misdiagnosed Magana.

Unwarranted Interference with Familial Association (U.S. Const. Amend. XIV; 42 U.S.C. § 1983): Whether decedent's parents can prevail on a claim for violation of the Fourteenth Amendment against Defendants. Specifically, the parties dispute Plaintiffs' ability to demonstrate the following:

- Whether CFMG is liable under *Monell* as outlined above;
- Whether Dr. Mahajan, Nurse Chagger, and/or Nurse Hundal were deliberately indifferent as outlined above; and
- Whether Plaintiff Duarte had an enduring relationship with Magana.

Failure to Produce Patient Records (Cal. Evid. Code § 1158): Whether decedent's estate can prevail on a claim for violation of Cal. Evid. Code § 1158 against CFMG.

Tom Bane Civil Rights Act (Cal. Civ. Code § 52.1): Whether Plaintiffs can prevail on a claim for violation of Cal. Civ. Code § 52.1 against Defendants. Specifically, the parties dispute Plaintiffs' ability

to demonstrate the following:

- Whether Dr. Mahajan, Nurse Chagger, and/or Nurse Hundal intentionally interfered or attempted to interfere with Magana's constitutional rights;
- Whether Dr. Mahajan, Nurse Chagger, and/or Nurse Hundal employed threats, intimidation, or coercion;
- Whether Dr. Mahajan, Nurse Chagger, and/or Nurse Hundal acted with specific intent to violate Magana's rights.

<u>Intentional Infliction of Emotional Distress</u>: Whether decedent's estate can prevail on a claim for intentional infliction of emotional distress against Defendants. Specifically, the parties dispute Plaintiffs ability to demonstrate the following:

- Whether Dr. Mahajan, Nurse Chagger, and/or Nurse Hundal engaged in extreme and outrageous conduct;
- Whether Dr. Mahajan, Nurse Chagger, and/or Nurse Hundal acted in reckless disregard of the probability of causing Magana extreme emotional distress;
- Whether Magana suffered from severe or extreme emotional distress;
- Whether Dr. Mahajan, Nurse Chagger, and/or Nurse Hundal were the actual cause of Magana's death; and
- Whether Magana's death was a foreseeable result of Dr. Mahajan, Nurse Chagger, and/or Nurse Hundal's conduct.

## 6. STIPULATIONS

The parties stipulate as follows:

1. Defendants, including CFMG, Mahajan, Chagger, and Hundal, each acted under color of state law.
2. Plaintiffs' subpoenas as to County employees apply to all parties.
3. Records are considered authenticated, but all evidentiary issues exist.
4. The parties will not reference Magana's mental health conditions or care, except as explicitly noted in the Undisputed Facts section above.
5. The parties will not comment on Plaintiffs' physical absence at trial.

6. The parties' experts will not provide opinions in addition to or differing from those contained in their expert reports.

7. Counsel for both parties will not provide their opinions as to witness credibility.

8. The parties will not present documents that were not produced in discovery.

9. Defendants will produce the individual defendants and a CFMG corporate representative at trial without subpoena, on these conditions:

- (a) the stipulation does not extend to non-party current or former CFMG employees;
- (b) Plaintiffs provide at least 48 hours' notice of the date each witness will be called, and the parties cooperate on witnesses' professional schedules;
- (c) the stipulation is reciprocal, and Plaintiffs will likewise produce Plaintiff J. Jesus Magana Duarte and Veronica Magana Vaca within their control without subpoena.

10. Reference or testimony on Awards, Accolades, And Commendations Received by Any Parties or Witnesses shall be excluded. This applies to all witnesses except that expert witness' education, training, licensure, board certification, and professional experience are not "awards, accolades, or commendations" and are not excluded.

## 7. BIFURCATION

### A. Plaintiffs' Position

Bifurcation is not necessary or appropriate, except as to the *amount* of punitive damages if the jury finds punitive damages are to be awarded. *See*, *e.g.*, *Nash-Perry v. City of Bakersfield*, 2023 U.S. Dist. LEXIS 212232, at *7–8 (E.D. Cal. Nov. 29, 2023); *Motley v. City of Fresno*, 2020 U.S. Dist. LEXIS 118160, at *4 n.1 (E.D. Cal. July 5, 2020) ("Courts routinely bifurcate liability and punitive damages claims in 42 U.S.C. § 1983 actions like this one.").

### B. Defendants' Position

Bifurcation of the liability and damages is feasible and appropriate. Specifically, bifurcation would avoid any prejudice caused by discussion of the value of Magana's life and other damages. *See* Fed. R. Civ. P. 42(b). "While there is a 'strong presumption that jurors follow instructions,' a limiting instruction may not sufficiently mitigate the prejudicial impact of evidence in all cases." *Diaz v. City of Anaheim*, 840 F.3d 592, 602 (9th Cir. 2016). For example, details as to any alleged pain and suffering by Magana, only relevant to damages, would risk inflaming the jury.

Likewise, bifurcation would expedite and economize the proceedings, as any evidence solely

related to damages would be rendered unnecessary should Defendants be found not liable. *See id* ("Bifurcating from the liability phase the testimony actually relevant to compensatory damages would have cost little, if any, court time—none, if the jury had returned a defense verdict."); *see also* Fed. R. Civ. P. 42(b). Bifurcation is customarily granted precisely for these reasons. *See, e.g.*, *Diaz*, at 602–04; *Quintanilla v. City of Downey*, 84 F.3d 353, 356 (9th Cir. 1996) ("The district court . . . in the interest not only of convenience and judicial economy but also the avoidance of potential prejudice and confusion, bifurcated the trial . . . ."); *see also* Fed. R. Civ. P. 42(b).

## 8. SETTLEMENT

The parties attended settlement conferences before Magistrate Judge Beeler on April 9, 2026, and November 3, 2026. ECF No. 82 & 137. No settlement was reached. Defendants contend that they are open to continuing good-faith settlement negotiations.

## 9. ESTIMATE OF TRIAL LENGTH

The parties previously estimated that "trial is expected to last approximately 8 through 10 court days." ECF No. 30 at 19. That estimate remains valid.

Dated: November 19, 2026

Respectfully Submitted,
LAW OFFICES OF YOLANDA HUANG

*/s/ Yolanda Huang*

By: _*/s/ Yolanda Hua*ng_____________
Yolanda Huang

LAW OFFICE OF MARK E. MERIN

By: */s/ Mark Merin*______________________
Mark Merin

Attorney for Plaintiffs
ESTATE OF JESUS ERIC MAGANA,
J. JESUS MAGANA DUARTE,
and VERONICA DUARTE VACA

Dated: November 19, 2026

Respectfully Submitted,
GORDON REES SCULLY MANSUKHANI, LLP

*/s/*
(as authorized on November 19, 2026)
By: ___________________________________
Lindsey M. Romano
Allison J. Becker
Gregory Rousso
Sarah A. Kilgore

Attorneys for Defendants
CALIFORNIA FORENSIC MEDICAL GROUP, INC., RAJENDRA MAHAJAN, SUMEET CHAGGER, and HARKAMALJIT HUNDAL